Pardalis & Nohavicka LLP
950 Third Avenue, 11th Floor
New York, New York  10022
Tel. No. 718.777.0400
Joseph D. Nohavicka
Norma E. Ortiz, Of Counsel
*Proposed Counsel to the Debtor and*
*Debtor-in-Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
                                                       :
In re                                                  :
                                                       :
ZHANG MEDICAL P.C. d/b/a                               :
                                                       :  Case No. 23-10678-pb
NEW HOPE FERTILITY CENTER                              :
                                                       :  Sub-Chapter V Chapter 11
                                                       :
                                          Debtor.      :
-------------------------------------------------------x

# DEBTOR'S MOTION FOR THE ENTRY OF AN ORDER AUTHORIZING THE DEBTOR TO REJECT ITS COMMERCIAL LEASE WITH BVK COLUMBUS CIRCLE  LLC AS OF JUNE 30, 2023

Zhang Medical P.C., doing business as New Hope Fertility Center (the "Debtor"), the above-captioned debtor and debtor-in-possession (the "Debtor"), hereby requests through its proposed attorneys, Pardalis & Nohavicka LLP, the entry of an order granting this motion (the "Motion") pursuant to Sections 105(a) and 365(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), Rule 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 6006-1 of the Local Bankruptcy Rules of the Southern District of New York (the "Local Rules") authorizing the Debtor to reject its unexpired commercial lease with GLL BVK Columbus Circle LLC (the "Landlord") for the space occupied by the Debtor located at Four Columbus Circle in New York County, New York.  In support of

this Motion, the Debtor respectfully states as follows:

## FACTUAL BACKGROUND

1. On April 30, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code as a Sub-Chapter V small business debtor. The Debtor is authorized to operate its business and manage its affairs as a debtor-in-possession pursuant to Sections 1182, 1107(a) and 1108 of the Bankruptcy Code.

2. Eric M. Huebscher was appointed as the Chapter 11 Subchapter V Trustee by the United States Trustee on May 2, 2023.

3. The Debtor operates a fertility clinic in Manhattan. It operates from the premises known as Four Columbus Circle, New York, New York 10019 (the "Building"). In addition to rendering routine services for its patients' infertility-related medical needs, the Debtor provides sophisticated and cutting-edge laboratory services, medical procedures and medical testing for its patients. It employs specialized technicians and medical personnel to perform in vitro fertilization and to oversee the storage of approximately 40,000 embryos and male and female gametes.

4. As set forth in the annexed Declaration of Adnan Tahirovic, the Debtor leases the entire second, third, fourth and fifth floors of the Building pursuant to an Agreement of Lease dated December 31, 2018 and amendments thereto (collectively, the "Lease"). The Debtor operated from the third and fourth floors in the Building for many years prior to entering into the Lease. Each floor consists of approximately 18,000 square feet of space. In late 2018, the Debtor entered into the Lease that expanded its occupancy to two additional floors: the second and fifth floors. The Debtor has a small lab located on the second floor, that occupies less than

1,000 square feet, but it has been unable to sublet or utilize the two additional floors since it entered into the Lease. The base rent under the Lease is approximately $409,000.00 a month.

5. The Debtor entered into the Lease before the COVID-19 business shut-down. It could not have anticipated the resulting loss of revenue it would experience and the change in the commercial office market in Manhattan. The Debtor has attempted unsuccessfully to sub-let the second and fifth floors since it entered into the Lease. Moreover, the nature of the Debtor's business has changed as a result of COVID-19. Fewer patients are visiting its office for office visits and thirty percent of patient visits are now being conducted virtually. As a result, the Debtor no longer uses a notable portion of the space it occupies on the third and fourth floors.

6. The Debtor's bankruptcy filing was caused by the Debtor's inability to meet its rental obligations to the Landlord under the Lease under its present circumstances. The Landlord is the Debtor's largest creditor. Based upon the Debtor's efforts to locate a smaller and more affordable location, the Debtor estimates that it can relocate its center for no less than 50% of the amount of rent it is paying under the Lease. Since the Lease expires in 2035, the Debtor estimates the savings on rental obligations to be close to $29,000,000 through 2035.

7. The Debtor asserts that the Lease is burdensome and detrimentally impacts the Debtor's operations and ability to reorganize its affairs. Under the present circumstances, there is no benefit to the Debtor, the bankruptcy estate and creditors for the Debtor to pay a significant amount of rent for space it can not utilize to generate revenue for operations and its creditors.

**JURISDICTION AND VENUE**

8. Pursuant to 28 U.S.C. § 1334, the Court has jurisdiction over this Motion, which

is a core proceeding within the meanings of 28 U.S.C. § 157(b)(2). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

**RELIEF REQUESTED**

9. The Debtor requests that the Court authorize it to reject the Lease as of June 30, 2023. As set forth above, the Debtor has determined that the Lease is burdensome to the bankruptcy estate as it requires the Debtor to pay a significant amount of rent for space it is not utilizing and does not generate revenue for its operations and creditors. The Debtor has located suitable alternative spaces that would permit it to continue to operate its business with less square footage and for less than 50% of the amount of rent and additional rent that is due under the Lease. For this reason, the Debtor's decision to reject the Lease is an exercise of its sound business judgment and the rejection should be approved.

10. Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). "The purpose behind allowing the assumption or rejection of executory contracts is to permit the trustee or debtor-in-possession to use valuable property of estate and to 'renounce title to and abandon burdensome property." In re Orion Pictures Corp., 4 F.3d 1095, 1098 (2d Cir. 1993) (citation omitted); NLRB v. Bildisco & Bildisco, 465 U.S. 513, 528 (1984) ("[T]he authority to reject an executory contract is vital to the basic purpose to a Chapter 11 reorganization, because rejection can release the debtor's estate from burdensome obligations that can impede a successful reorganization."); see also In re The Great Atlantic & Pacific Tea Company, Inc., 544 B.R. 43 (2016).

11. The majority of the courts review a debtor's proposed rejection of a lease by determining whether the debtor is properly exercising its business judgment in seeking to reject

4

the lease.  E.g., In re The Great Atlantic & Pacific Tea Company, Inc., 544 B.R. 43, 48 (2016) ("[T]he court should focus on the business judgment of the trustee or debtor in possession, not on its own business judgment.") (citing 3 Collier on Bankruptcy ¶ 365.03[2] (16th ed.2015) at 365–27); Grp. of Institutional Inv'rs, Inc. v. Chi., Milwaukee, St. Paul & Pac. R.R., 318 U.S. 523, 550 (1943) (noting that "the question whether a lease should be rejected . . . is one of business judgment"); In re Penn Traffic Co., 524 F.3d 373, 383 (2d Cir. 2008).  If the Court finds that the Debtor's request to reject the Lease reflects sound business judgment, the proposed lease rejection should be approved.  See NLRB v. Bildisco & Bildisco, 465 U.S. at 523; In re Enron Corp., 2006 WL 898033, at *4 (Bankr. S.D.N.Y. Mar. 24, 2006) (stating that a court applies the 'business judgment' test if the rejection is beneficial to the estate.") (citation omitted); In re Orion Pictures Corp., 4 F.3d 1095, 1098 (2d Cir. 1993) ("At heart, a motion to assume [or reject] should be considered a summary proceeding, intended to efficiently review the trustee's or debtor's decision to adhere to or reject a particular contract in the course of the swift administration of the bankruptcy estate.")

12. The Debtor asserts that its proposed rejection of the Lease will benefit its creditors and the bankruptcy estate.  E.g., In re Genco Shipping & Trading Ltd., 509 B.R. 455, 463 (Bank. S.D.N.Y. 2014) ("A court will generally not second-guess a debtor's business judgment regarding whether the assumption or rejection of a contract will benefit the debtor's estate.").  Moreover, the Court has the authority to grant the relief requested by the Debtor.  In addition to the authority set forth in Section 365, the Court is empowered to rely upon Section 105(a) of the Bankruptcy Code to grant the relief requested.  Section 105(a) allows a court to issue any order is necessary or appropriate to carry out the provisions of the Bankruptcy Code.

13. The Debtor submits that the rejection of the Lease effective as of June 30, 2023 is a proper exercise of the Debtor's business judgment and is in the best interests of its estate and

its creditors. The Lease for the four floors in the Building is neither necessary for, nor benefitting, the Debtor's operations and constitutes an unnecessary and burdensome expense for the Debtor's estate. The continuing expense to pay the Landlord what is required under the Lease for post-petition amounts due is unnecessary and not beneficial for the Debtor's business. The Debtor has paid the Landlord over $800,000.00 for the full base rent for May and June and is liable for additional rent, costs, and legal fees. The rejection of the Lease will permit that Debtor to save a significant amount of administrative expenses while it relocates to a new location.

14. The Debtor requests that the Court grant the Motion as of June 30, 2023 because it is in the best interests of creditors. Although Section 365(a) does not directly address whether a bankruptcy court may enter an order providing for the retroactive rejection of leases, such a request is often approved. E.g., Adelphia Bus. Sols., Inc. v. Abnos, 482 F.3d 602, 607 (2d Cir. 2007) (Second Circuit did not disturb lower court's finding that it had the authority to retroactively reject a lease.) See also, BP Energy Co. v. Bethlehem Steel Corp., No. 02 CIV. 6419 (NRB), 2002 WL 31548723, at *3 (S.D.N.Y. Nov. 15, 2002) ("[W]e cannot conclude . . . that a bankruptcy court's assignment of a retroactive rejection date falls outside of its authority when the balance of the equities favors this solution."); In re Jamesway Corp., 179 B.R. at 38 ("[A] court can, where appropriate, can approve rejection retroactively."); see also In re Thinking Machines Corp., 67 F.3d 1021, 1028 (1st Cir. 1995) (concluding that "bankruptcy courts may enter retroactive orders of approval, and should do so when the balance of equities preponderates in favor of such remediation."). More recent cases illustrate that the courts have granted these requests, for example, in the following cases: In re Buyk, Case No. 22-10328 (MEW) (May 25, 2022), D.I.226 (authorizing debtors to reject certain unexpired leases nunc pro tunc to the date specified in the motion); In re GBG USA Inc., Case No. 21-11369 (MEW) (Sept. 1, 2021), D.I.

6

151 (authorizing rejection of certain executory contracts and unexpired leases *nunc pro tunc* to the petition date); In re Skill Capital, Case No. 21-11369 (DSJ) (Aug. 10, 2021), D.I. 33 (authorizing nunc pro tunc rejection); In re Solstice Marketing Concepts LLC, Case No. 21-10306 (MG) (Mar. 18, 2021), D.I. 96 (same); In re KB US Holdings, Inc., Case No. 20-22962 (SHL) (Nov. 12, 2020), D.I. 355 (same).

15. The Court may consider the costs that will be borne by the estate when considering whether or not it should grant the retroactive relief requested by the Debtor. In considering the balance of equities, a bankruptcy court may consider the costs the Debtor may incur as a result of a delayed rejection date.

16. Under the circumstances of this case, the balance of the equities favors the rejection of the Lease *nunc pro tunc* to June 30, 2023. Without a retroactive date of rejection, the Debtor will potentially be forced to incur unnecessary administrative costs for the Lease that do not provide any benefit to the Debtor and its estate. The Landlord may oppose this request but it can not argue that there is any benefit to the estate for the Debtor to pay an administrative expense for two floors it does not fully occupy and do not generate revenue that is a benefit to the creditors of the estate other than itself. Based upon the foregoing, the Debtor submits that the *nunc pro tunc* rejection of the Lease is supported by the equities of this case.

17. The Debtor respectfully requests a waiver of the 14-day stay under Bankruptcy Rule 6004(h). Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until expiration of 14 days after entry of the order, unless the court orders otherwise." For the reasons stated above, the relief requested is essential to prevent potentially irreparable damage to the Debtor's operations, ongoing value and its ability to reorganize.

18. Bankruptcy Rule 6006(f) establishes requirements for a motion to reject multiple executory contracts or unexpired leases that are not between the same parties. Rule 6006(f). This rule does not apply to the Debtor's request because it is directed to the Lease. For this reason, the Debtor asserts that the relief requested in the Motion complies with the requirements of Bankruptcy Rule 6006(f).

## RESERVATION OF RIGHTS

19. Nothing in this Motion (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtor or its estate; (b) shall impair, prejudice, waive, or otherwise affect the rights of the Debtor or its estate to contest the validity, priority, or amount of any claim against the Debtor or its estate; (c) shall impair, prejudice, waive, or otherwise affect the rights of the Debtor or its estate with respect to any and all claims or causes of action against any third party; or (d) shall be construed as a promise to pay a claim or continue any applicable program postpetition, which decision shall be in the discretion of the Debtor. Any payment made pursuant to an order of the Court granting the relief requested herein is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtor's rights to subsequently dispute such claim.

## NOTICE

20. Notice of this Motion has been provided to: (a) the Office of the U.S. Trustee; (b) counsel to the Landlord; (c) the PBGC; (d) the Office of the U.S. Trustee; (e) the Sub Chapter V Trustee and (f) any person or entity that has filed a notice or appearance or who has appeared in this case by filing a proof of claim. The Debtor submits that, in the light of the nature of the relief requested, no other or further notice need be provided.

**CONCLUSION**

WHEREFORE, for the reasons set forth herein, the Debtor respectfully requests that the Court enter the proposed order, substantially in the form attached hereto, and grant such other and further relief as is just and proper.

Dated: New York, New York
      June 30, 2023

Respectfully submitted,

*By: /s/ Norma E. Ortiz*
Norma E. Ortiz, Of Counsel
JOSEPH D. NOHAVICKA
Pardalis & Nohavicka LLP
950 Third Avenue, 11th Floor
New York, New York 10022
Tel. No. 718.777.0400
bankruptcypn@gmail.com
jnfirm@aol.com
Proposed Counsel to the Debtor