RUBIN LLC
Paul A. Rubin
Hanh V. Huynh
11 Broadway, Suite 715
New York, New York 10004
Tel: 212.390.8054
Fax: 212.390.8064
prubin@rubinlawllc.com
hhuynh@rubinlawllc.com

*Counsel for GLL BVK Columbus Circle LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| | : | |
| In re: | : | Sub-Chapter V Chapter 11 |
| | : | |
| ZHANG MEDICAL P.C., d/b/a NEW HOPE | : | Case No.: 23-10678-pb |
| FERTILITY CENTER, | : | |
| | : | |
| Debtor. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### NOTICE OF HEARING ON LANDLORD'S OBJECTION PURSUANT TO RULE 1020(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE TO DEBTOR'S DESIGNATION AS A SUBCHAPTER V DEBTOR

**PLEASE TAKE NOTICE** that a hearing (the "Hearing") to consider the objection (the

"Objection") of GLL BVK Columbus Circle LLC (the "Landlord"), by its counsel, Rubin LLC,

pursuant to Rule 1020(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

to the designation by Zhang Medical P.C., d/b/a New Hope Fertility Center (the "Debtor") as a

debtor as defined in section 1182(1) of title 11 of the United States Code (the "Bankruptcy Code")

and the Debtor's election to proceed under subchapter V of chapter 11 of the Bankruptcy Code,

shall be held before the Honorable Philip Bentley, Bankruptcy Judge, United States Bankruptcy

Court for the Southern District of New York, One Bowling Green, New York, NY 10004, on

**September 7, 2023 at 10:00 a.m.**, or as soon thereafter as counsel may be heard (the "Hearing").

**PLEASE TAKE FURTHER NOTICE** that the Hearing will be held remotely via Zoom for Government. Parties requiring active participant access must register appearances through eCourt Appearances in advance of the Hearing. Instructions for registering appearances are available on the Court's website at www.nysb.uscourts.gov/ecourt-appearances.

**PLEASE TAKE FURTHER NOTICE** that responses to the Objection, if any, must be in writing, shall conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court, shall be filed with the Bankruptcy Court, and shall be served upon (a) counsel for the Landlord, Rubin LLC, 11 Broadway, Suite 715, New York, NY 10004 (Attn.: Paul A. Rubin); and (b) all parties who have timely filed requests for notice under Rule 2002 of the Bankruptcy Rules, so as to be received no later than **August 31, 2023 at 4:00 p.m.** (the "Objection Deadline").

**PLEASE TAKE FURTHER NOTICE** that if a response to the Objection is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Court may enter an order granting the relief sought without a hearing.

**PLEASE TAKE FURTHER NOTICE** that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: New York, New York
      August 15, 2023

RUBIN LLC

By:    */s/ Paul A. Rubin*   
      Paul A. Rubin
      Hanh V. Huynh
11 Broadway, Suite 715
New York, New York 10004
Tel: 212.390.8054
Fax: 212.390.8064
prubin@rubinlawllc.com
hhuynh@rubinlawllc.com

*Counsel for GLL BVK Columbus Circle LLC*

RUBIN LLC
Paul A. Rubin
Hanh V. Huynh
11 Broadway, Suite 715
New York, New York 10004
Tel:  212.390.8054
Fax: 212.390.8064
prubin@rubinlawllc.com
hhuynh@rubinlawllc.com

*Counsel for GLL BVK Columbus Circle LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| In re: | : Sub-Chapter V Chapter 11 |
| | : |
| ZHANG MEDICAL P.C., d/b/a NEW HOPE FERTILITY CENTER, | : Case No.:  23-10678-pb |
| | : |
| Debtor. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**LANDLORD'S OBJECTION PURSUANT TO RULE 1020(b)**
**OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**
**TO DEBTOR'S DESIGNATION AS A SUBCHAPTER V DEBTOR**

GLL BVK Columbus Circle LLC (the "Landlord"), by its undersigned counsel, hereby

files this objection (the "Objection"), pursuant to Rule 1020(b) of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), to the designation by Zhang Medical P.C., d/b/a New Hope

Fertility Center (the "Debtor") as a debtor as defined in section 1182(1) of title 11 of the United

States Code (the "Bankruptcy Code") and the Debtor's election to proceed under subchapter V of

chapter 11 of the Bankruptcy Code.  In support of this Objection, the Landlord respectfully

represents as follows:

<u>**PRELIMINARY STATEMENT**</u>[1]

1.	This Debtor looks nothing like a subchapter V small business debtor.  The Debtor was described at the "first day" hearing held on May 11, 2023 as possibly the most preeminent fertility clinic in the world.  The Debtor has over 90 employees and paid its principal more than $2.6 million in annual compensation and benefits in the year preceding the Petition Date.  The Debtor generated gross revenue of over $27 million between January 23, 2022 through February 22, 2023, and over $28 million between January 23, 2021 through February 22, 2022.  It should come as no surprise, therefore, that this Debtor is not eligible to be a subchapter V debtor because it has aggregate liquidated noncontingent debts totaling more than the statutory debt limit of $7.5 million.

2.	The Debtor has grossly understated its debt to the Landlord in order to be able to proceed under subchapter V.  The Debtor should not be permitted to enjoy the additional benefits afforded subchapter V debtors when it does not qualify to be a subchapter V debtor.  As set forth below, the Landlord holds a liquidated, noncontingent claim as of the Petition Date in the amount of $7,056,806.49.  The Landlord's claim, together with the claims that the Debtor itself has scheduled, puts the Debtor well above the $7.5 million debt limit for subchapter V debtors.  Accordingly, the Court should revoke the Debtor's designation as a subchapter V debtor and its election to proceed under subchapter V.

3.	The Debtor is also not entitled to proceed under subchapter V for the separate, independent reason that it has failed to comply with the statutory deadline to file a subchapter V plan.  The Plan that the Debtor has filed at the last possible moment is at best a mere placeholder plan that is facially deficient and unconfirmable and was filed simply to create the illusion of

---

[1] Capitalized terms not defined in the Preliminary Statement have the meaning ascribed to them in this Objection.

compliance with the 90-day deadline. The most critical documents required by statute to be included in a Plan—a liquidation analysis and projections—were not filed. The Debtor could have, but did not, request an extension of time in which to file its subchapter V plan. The Debtor should not be permitted to enjoy the additional benefits afforded subchapter V debtors without timely complying with the procedural requirements enacted under subchapter V of the Bankruptcy Code. For this separate reason, the Court should revoke the Debtor's election to proceed under subchapter V.

## BACKGROUND

### The Lease

4. The Landlord is the owner of real property located at 4 Columbus Circle, New York, New York (the "Building"). The Landlord leased to the Debtor the entire second, third, fourth and fifth floors (the "Leased Premises") in the Building pursuant to that certain Agreement of Lease dated December 31, 2018 (together with all amendments, the "Lease").[2]

5. Following the Debtor's defaults under the Lease beginning in or about July 2020, on or about March 10, 2021, the Landlord commenced an action in the Supreme Court of the State of New York, County of New York (the "State Court"), asserting claims against the Debtor for failure to pay rent, failure to provide a security deposit, failure to discharge a lien filed on the Building, and for improperly subletting and/or permitting others to use the Leased Premises. The Debtor and the Landlord were able to negotiate a consensual resolution of the 2021 State Court action, as memorialized in that certain Second Amendment of Lease dated December 31, 2021.

---

[2] The Lease, together with other Lease-related documents referenced herein are annexed as exhibits to the Declaration of Alin T. Sigheartau [ECF No. 25] in support of the Landlord's motion to compel the Debtor to pay post-petition Lease obligations pursuant to section 365(d)(3) of the Bankruptcy Code.

6. Beginning in October 2022, however, the Debtor again defaulted under the terms of the Lease by, among other things, failing to pay rent, failing to make certain payments to replenish the security deposit, and allowing a new mechanic's lien to be filed against the Building in the amount of over $1.3 million for unpaid construction work on the Leased Premises.

7. As a result of the Debtor's numerous defaults under the Lease, on April 18, 2023, the Landlord commenced a new action in the State Court for, among other things, the Debtor's breaches of the Lease. A copy of the Complaint dated April 17, 2023 filed by the Landlord in the State Court (the "Complaint") is annexed as Exhibit A to the Rider to the Landlord Claim (defined below).

**The Subchapter V Case**

8. On April 30, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.[3] The Debtor designated itself as a debtor as defined in section 1182(1) of the Bankruptcy Code and elected to proceed under subchapter V of chapter 11. Eric Huebscher was appointed as the subchapter V trustee (the "Subchapter V Trustee") for the Debtor's case.

9. On June 1, 2023, the United States Trustee held a meeting of creditors pursuant to section 341 of the Bankruptcy Code. The section 341 meeting has been continued multiple times, with the next continued meeting scheduled for September 5, 2023. The Debtor's section 341 meeting, therefore, has not been concluded.

10. On June 30, 2023, the Debtor filed a motion [ECF No. 74] to reject the Lease *nunc pro tunc* to June 30, 2023. The Court held a hearing on the rejection motion on July 25, 2023, and

---

[3] The Debtor filed an Amended Petition on June 6, 2023 [ECF No. 43]. The Amended Petition was filed solely to correct the Debtor's d/b/a name.

on July 27, 2023, the Court entered an order [ECF No. 96] authorizing the rejection of the Lease effective as of July 20, 2023.

11. On August 4, 2023, the Court entered an order [ECF No. 102] establishing September 11, 2023 as the deadline for claims (other than claims of governmental units) against the Debtor to be filed.

**The Subchapter V Plan**

12. On July 31, 2023, at eleven minutes before midnight, the Debtor filed its *Small Business Subchapter V Chapter 11 Reorganization Plan* (the "Plan") [ECF No. 98]. Not coincidentally, the 90-day deadline for the Debtor to file a subchapter V plan pursuant to section 1189 of the Bankruptcy Code was July 31, 2023.

13. The Plan suffers from a number of material deficiencies rendering it facially unconfirmable. For example, although the Plan referenced a liquidation analysis and projections annexed as exhibits thereto, no liquidation analysis or projections were filed.[4] The Plan states that "[a]s set forth in the analysis set forth in Exhibit A, the Debtor estimates that its relocation will result in moving costs of approximately $750,000.00, a loss in revenue during the relocation, and a loss in patient and employees during the relocation of its business." Plan p.3. But there is no "Exhibit A" to disclose the methodology for arriving at the relocation cost of $750,000, the magnitude of the lost revenue, or the extent of patient and employee reductions. The Plan further provides that general unsecured creditors will receive "up to" 5% of their allowed claims, but there is no basis to determine whether this payment is based on all of the Debtor's projected disposable income. Nor is there any basis to calculate any range in the amount of potential distributions that

---

[4] The Debtor filed a document at ECF No. 99 described on the docket as "*Exhibits In Support of Plan of Reorganization*," but that document is a one-page "Exhibit A" cover sheet.

creditors might receive if the Plan were confirmed. The Plan does not provide remedies, such as liquidation of assets, in the event that payments under the Plan are not made. Instead, the Plan provides for a vague right, upon the occurrence of an uncured default under the Plan, for a creditor to seek relief from the Court to enforce the Plan. Lastly, the Plan does not provide for the Subchapter V Trustee to remain in place in the event the Plan is confirmed on a non-consensual basis.

**The Schedules and Filed Proofs of Claim**

14. The Debtor has filed its Schedules of Assets and Liabilities (the "Schedules") [ECF No. 28]. The Debtor's Schedules set forth, under penalty of perjury, claims against the Debtor in the total amount of $5,797,128.17, including the Landlord's claim which was scheduled at only $3,222,290.66. Notably, the Debtor did not identify any claim in its Schedules as "Contingent" or "Unliquidated."[5]

15. A number of creditors have filed proofs of claim in the Debtor's case, including the Landlord (as described below). Many of the creditors that filed proofs of claim also had their claims scheduled by the Debtor in its Schedules, and the remaining creditors that filed proofs of claim were not scheduled by the Debtor at all. The sum of the filed proofs of claims is $4,679,838.96 greater than the amount at which the Debtor scheduled these claims. Thus, once the claims scheduled by the Debtor in its own Schedules are reconciled against the proofs of claims filed in the Debtor's claims register, the total amount of noncontingent unliquidated claims against the Debtor as of the Petition Date is $10,476,967.13—well above the statutory debt limit of $7.5 million for subchapter V debtors. This amount does not include the Landlord's claim for Lease

---

[5] The Debtor did indicate that the claims of the following creditors (with the scheduled amounts) were "Disputed": CooperSurgical, Inc. ($1,428.97); c/o Joel Rubenstein (unknown amount); Georgette Fleischer (unknown amount); Guo Qiang Chen (unknown amount); Juan Cheng (unknown amount); Skyland Construction ($1,030,824.97); and the Landlord ($3,222,290.66).

rejection damages described in greater detail below. A summary of the analysis of the reconciliation of scheduled and filed claims is annexed hereto as Exhibit A.

**The Landlord Claim**

16. On August 15, 2023, the Landlord filed its proof of claim, designated as claim number 34 on the Debtor's claims register (the "Landlord Claim"). A copy of the Landlord Claim is annexed hereto as Exhibit B. The Landlord Claim asserts a claim in the total amount of $17,301,956.17 as of the Petition Date, comprised of the following:

| Description | Amount |
|---|---|
| Rent and Additional Rent | $1,628,745.54 |
| Rent Credit Clawback | $1,418,147.50 |
| Security Deposit Claim | $2,458,665.00 |
| Mechanic's Lien Claim | $1,338,757.27 |
| Late Fees | $3,500.00 |
| Interest | $152,344.65 |
| STB Legal Fees | $9,167.00 |
| YS Legal Fees | $47,479.53 |
| **Subtotal** | **$7,056,806.49** |
| | |
| Rejection Damages Claim | $10,245,149.68 |
| | |
| **TOTAL** | **$17,301,956.17** |

17. Rent and Additional Rent. The Landlord Claim includes a claim in the total amount of $1,628,745.54 as of the Petition Date for unpaid fixed monthly rent, and additional rent charges, including but not limited to, charges for electricity, HVAC, condenser water, water, real estate taxes and miscellaneous maintenance costs, all pursuant to the terms of the Lease. The amount of this component of the Landlord Claim was calculated based on the amount of fixed monthly rent set forth in the Lease (*see* Lease Art. 1E), and the tenant ledger for the Leased Premises maintained by the Landlord. *See also* Complaint ¶¶ 21-26, 107-112.

18. <u>Rent Credit Clawback</u>. The Landlord Claim includes a claim in the amount of $1,418,147.50 for the clawback of certain rent credits that were provided to the Debtor pursuant to the terms of the Second Amendment of Lease dated December 31, 2021 (the "<u>Second Amendment</u>"). Pursuant to the express terms of the Second Amendment, the Landlord's agreement to provide the Debtor a rent credit in the amount of $1,418,147.50 is null and void *ab initio* if the Debtor, at any time prior to the third anniversary of the Second Amendment, was in default under the Lease, and the Landlord is entitled to clawback the rent credit. *See* Second Amendment § 3; Complaint ¶¶ 27-37. As a result of the Debtor's defaults under the Lease beginning in or about October 2022 (prior to the third anniversary of the Second Amendment), the Landlord is entitled to clawback the rent credit.

19. <u>Security Deposit Claim</u>. The Landlord Claim includes a claim in the amount of $2,458,665.00 in connection with the Debtor's breach of its obligation under the Lease to replenish the security deposit. The Lease required the Debtor to furnish a security deposit in the amount of $2,458,665.00, and to replenish the security deposit within ten days of the Landlord's application of all or portion of the security deposit against any defaults under the Lease. *See* Lease Art. 32A. The Lease contains a contractual payment obligation for the Debtor to deposit with the Landlord cash or a new letter of credit for the amount of the security deposit in order for the Debtor to satisfy its requirement to furnish and maintain a security deposit in the amount of $2,458,665.00. *See* Lease Art. 32B. As of the Petition Date, all of the security deposit was depleted because a substantial portion of the security deposit was drawn down and applied to rent arrears under the Lease, and the remaining portion of the security deposit was in the form of a letter of credit that expired and improperly was not renewed by the Debtor. *See* Complaint ¶¶ 50-74, 113, 121-125. As of the Petition Date, and currently, the Landlord is not holding any security deposit.

20. <u>Mechanic's Lien Claim</u>.  The Landlord Claim includes a claim in the amount of $1,338,757.27 in connection with the Debtor's breach of its obligation under the Lease to "do all things reasonably necessary to prevent the filing of any mechanic's or other lien against the demised premises or the Building."  Lease Art. 8D; *see also* Complaint ¶¶ 75-76.  The Lease contains a contractual payment obligation requiring that "[i]f any such lien shall at any time be filed, Tenant shall cause the same to be bonded or vacated and canceled of record within thirty (30) days after notice to Tenant."  Lease Art. 8D.  As a result of the Debtor's failure to pay for services performed or materials supplied by Skyland Development Corp. ("<u>Skyland</u>"), on or about March 17, 2023, Skyland caused to be filed a Notice of Mechanic's Lien against the Building asserting a lien against the Landlord's building for Skyland's claim in the amount of $1,338,757.27.  *See* Complaint ¶¶ 114-115; *see also* Skyland's proof of claim filed on August 3, 2023, designated as claim number 31 on the Debtor's claims register, and the exhibits thereto.  As set forth in the Complaint, the Landlord provided to the Debtor notice of the Skyland lien on or about March 22, 2023, but the lien was never bonded, vacated, or canceled of record.  *See* Complaint ¶ 99.

21. <u>Late Fees</u>.  The Landlord Claim includes a claim in the amount of $3,500.00 in pre-petition late fees to which the Landlord is entitled pursuant to Article 21B of the Lease.  *See* Lease Art. 21B; *see also* Complaint ¶¶ 79.

22. <u>Interest</u>.  The Landlord Claim includes a claim in the amount of $152,344.65 for pre-petition interest on the Lease arrearages to which the Landlord is entitled pursuant to Article 21B of the Lease.  *See* Lease Art. 21B; *see also* Lease Art. 25(xv) & (xvi); Complaint ¶¶ 77-78.

23. <u>Legal Fees</u>.  The Landlord Claim includes a claim in the total amount of $56,646.53 for pre-petition legal fees in connection with enforcement of the Landlord's rights and remedies

under the Lease.  The award of attorney's fees is expressly provided for in the Lease.  *See* Lease Art. 20C; *see also* Complaint ¶¶ 80, 117-120.

24.      <u>Rejection Damages Claim</u>.  The Landlord Claim includes a claim in the amount of $10,245,149.68 for damages resulting from the rejection of the Lease (the "<u>Rejection Damages Claim</u>").  To reiterate, the Landlord has not included any portion of the Rejection Damages Claim for the purposes of the analysis of the amount of noncontingent liquidated claims against the Debtor as of the Petition Date to determine the Debtor's eligibility to proceed as a subchapter V debtor.

## ARGUMENT

25.      The Debtor is not eligible to be a subchapter V debtor because its aggregate noncontingent liquidated debts as of the Petition Date exceed the statutory limit of $7,500,000.00.  The Debtor also should not be permitted to proceed as a subchapter V debtor because it failed to file a facially confirmable plan within the 90-day statutory deadline to file a subchapter V plan.

**I.      The Debtor Is Ineligible To Be A Subchapter V Debtor Because Its Debts Exceeded The $7.5 Million Debt Limit As Of The Petition Date**

26.      Bankruptcy Rule 1020(b) provides that, within 30 days of the conclusion of a debtor's section 341 meeting, a party in interest may object to a debtor's statement in its voluntary petition that it elects to proceed under subchapter V of chapter 11.  *See* Fed. R. Bankr. P. 1020(b).  Section 1182 of the Bankruptcy Code governs the eligibility of a debtor to proceed under subchapter V of the Bankruptcy Code.  Among other things, that section defines a subchapter V debtor as "a person engaged in commercial or business activities … that has aggregate noncontingent liquidated secured and unsecured debts as of the date of the filing of the petition or the date of the order for relief in an amount not more than $7,500,000."  11 U.S.C. § 1182(1)(A).

Thus, a debtor who has aggregate noncontingent liquidated secured and unsecured debts[6] greater than $7.5 million as of the petition date is not eligible to be a subchapter V debtor. Such is the case with this Debtor, and the Landlord timely brings this objection to the Debtor' designation as a subchapter V debtor.

27.     Here, as shown below, the Court may (i) look to the proofs of claim filed in the Debtor's case in addition to the claims listed by the Debtor in its Schedules, (ii) include disputed debts in considering the $7.5 million debt limit, (iii) allow the Landlord's claim for replenishment of the security deposit to count towards the $7.5 million debt limit, and (iv) allow the Landlord's claim for damages arising from the Debtor's breach of its obligations under the Lease resulting from the filing of the Skyland mechanic's lien against the Building. Taking all of the foregoing into account, the Debtor has aggregate noncontingent liquidated secured and unsecured debts as of the Petition Date in the amount of $10,476,967.13, which is well-above the $7.5 statutory debt limit for subchapter V debtors.[7] The Debtor is therefore not eligible to proceed under subchapter V and its designation as a subchapter V debtor should be revoked.

    A.    **The Court May Consider The Proofs**
                 **Of Claim Filed In The Debtor's Case**

28.     The Court's inquiry into the $7.5 million debt limit under section 1182 is not limited to the information contained in the Debtor's Schedules. *See In re Hall*, 650 B.R. 595, 600 (Bankr. M.D. Fla. 2023) (considering proofs of claim filed in case in finding that debtor ineligible to be a

---

[6] "Debt" is defined in the Bankruptcy as "liability on a claim." 11 U.S.C. § 101(12). "Claim" in turn is very broadly defined as "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." `11 U.S.C. § 101(5); *see also In re Mazzeo*, 131 F.3d 295, 302 (2d Cir. 1997) ("We agree that the term 'claim' is sufficiently broad to encompass any possible right to payment. … In sum, by defining 'claim' so broadly and by defining 'debt' in terms of 'claim,' Congress has adopted the broadest possible definition of debt.") (quotations and citation omitted).

[7] This calculation does not include additional claims which may be filed before the September 11, 2023 deadline set by the Court for the filing of claims.

subchapter V debtor for exceeding $7.5 million debt limit and noting that "[w]hile the schedules offer some probative value, the Court will not restrict its inquiry solely to the schedules"); *see also In re Stebbins*, Case No. 15-CV-1196, 2016 WL 1069077, at *4 (Bankr. E.D.N.Y. Mar. 17, 2016) ("Though a Section 109(e) analysis generally begins with a review of the debtor's schedules, a court may also consider materials outside of the debtor's schedules. Neither Appellant nor Appellees contend that the Bankruptcy Court erred in considering materials outside of Stebbins' schedules, and the Court concludes that the Bankruptcy Court properly considered the proof of claim filed by AHL, the Judgment, and the language contained in the Guaranty that gave rise to the debt owed to AHL."). "Eligibility is determined by what the Debtors owe on the petition date, not by what the Debtors think they owe." *In re Hall*, 650 B.R. at 600.

29. In this case, the Court's review of the proofs of claim filed against the Debtor is particularly important and appropriate because what the Debtor has stated it owes may be substantially different than what the Debtor actually owes. Moreover, the proofs of claim filed by creditors on the Debtor's claims register are *prima facie* valid. *See* FED. R. BANKR. P. 3001(f) ("A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim.").

B. The Court May Include Disputed Debts To Determine Eligibility Under Section 1182 Of The Bankruptcy Code

30. The plain language of section 1182 excludes contingent and unliquidated debts from counting towards the $7.5 million debt limit; there is no similar exclusion for disputed debts. *See In re Hall*, 650 B.R. at 599 ("Under the plain language of 11 U.S.C. § 1182, disputed debts are not excluded from the $7.5 million debt limit."). Accordingly, the Court may consider disputed claims, including the Landlord Claim and the claim of Skyland, even though the Debtor has

indicated on its Schedules that those claims are "Disputed."  It is also significant that the Debtor

has not indicated that *any* of the claims in the Schedules are contingent or unliquidated.

31.     To the extent that the Debtor contradicts its own Schedules (filed under penalty of

perjury) in which it admits that the Landlord's claim against the Debtor is liquidated and

noncontingent, the Landlord submits that any argument that the Landlord Claim is unliquidated

and/or contingent would be meritless.

32.     The Second Circuit has held the following with respect to whether a claim is

liquidated or unliquidated:

> The terms "liquidated" and "unliquidated" generally refer to a
> claim's value (and the size of the corresponding debt) and the ease
> with which that value can be ascertained.  The concept of liquidation
> for purposes of section 109(e) relates only to the amount of liability
> not the existence of liability.  If the value of the claim is easily
> ascertainable, it is generally viewed as liquidated.  If that value
> depends instead on a future exercise of discretion, not restricted by
> specific criteria, the claim is unliquidated.
>
> Thus, the courts have generally held that a debt is 'liquidated' where
> the claim is determinable by reference to an agreement or by a
> simple computation.

*In re Mazzeo*, 131 F.3d 295, 304 (2d Cir. 1997) (quotations, alterations and citations omitted).

33.     In this case, the amount of each component of the Landlord Claim is easily

ascertainable by reference to the Lease and simple calculations based on the Landlord's ledger,

invoices, and/or the notice of the Skyland mechanic's lien.  *See In re Stebbins*, Case No. 15-CV-

1196, 2016 WL 1069077, at *6 (Bankr. E.D.N.Y. Mar. 17, 2016) ("The Court finds that the

Bankruptcy Court did not err in concluding that the debt in question is liquidated.  The claim is

determinable by reference to the note, the Guaranty, the Foreclosure Judgment, and a computation

of interest.  The amount due (the full amount of the outstanding indebtedness) was readily

ascertainable from the point in time that Throg's Neck Trading's default triggered Stebbins'

liability."). The claims asserted by the Landlord all arise from the Debtor's breaches of the Lease, and these types of contractual claims are generally considered liquidated. *See In re Hall*, 650 B.R. at 599 ("Ordinarily, debts of a contractual nature are subject to ready determination and precision in computation of the amount due and, therefore, are considered liquidated, even if subject to a substantial dispute.") (quotation and citation omitted). Indeed, the Debtor purported to calculate a claim amount to the penny for the Landlord in its own Schedules, and the Debtor does not state that the claim is unliquidated.

34.     Similarly, the Landlord Claim is noncontingent because each component of the claim arises from the occurrence of the Debtor's breaches of the Lease, as set forth in detail in the Complaint. The Debtor's liability for the amounts due on the Landlord Claim is not contingent upon the occurrence of some future event. There would be no basis for the Debtor to argue that the Landlord Claim is contingent, and the Debtor has not indicated on its Schedules that the Landlord Claim is contingent.

      C.      The Security Deposit Claim May
                  Be Included In The Landlord Claim

35.     The Landlord's claim in the amount of $2,458,665.00 in connection with the Debtor's breach of its obligation under the Lease to replenish the security deposit is a valid liquidated noncontingent claim that the Court may consider in analyzing the $7.5 million subchapter V debt limit. The claim is a breach of contract claim that was asserted in the Complaint in the State Court. It is a claim against the Debtor based on the Debtor's breach of its obligation under the Lease (including in the Second Amendment) to furnish and maintain a security deposit in the amount of $2,458,665.00. *See, e.g., In re White River Corp.*, 799 F.2d 631, 633 (10th Cir. 1986) ("Regarding the lessee's obligation for the increased security deposit, it is undisputed that the lessee ***incurred this debt*** when the lease agreement was amended, October 30, 1981.")

(emphasis added). As set forth in detail in the Complaint, the entire security deposit has been drawn down or the letter of credit in place of cash security has expired without renewal. The Landlord held no security deposit at the time it filed the Complaint and does not currently hold any security deposit. Thus, the claim to replenish the security deposit in the amount of $2,458,665.00 is a pre-petition liquidated noncontingent claim against the Debtor and must be included in calculating the amount of the Debtor's debts for purposes of subchapter V eligibility.

      D.      The Mechanic's Lien Claim May
                  Be Included In The Landlord Claim

36.      The Landlord also has a valid prepetition liquidated noncontingent claim for $1,338,757.27 in connection with the Debtor's breach of the Lease when the Debtor allowed Skyland to file a mechanic's lien against the Landlord's Building by failing to pay Skyland for work performed and materials provided to the Debtor with respect to the fifth floor renovations at the Leased Premises. The mechanic's lien component of the Landlord Claim is a breach of contract claim that was properly asserted in the Complaint in the State Court.

37.      To the extent that the Debtor may argue that the Landlord may not include the mechanic's lien component in the Landlord Claim because Skyland has already filed a proof of claim against the Debtor, that argument is unavailing. The Skyland claim is a different, separate claim against the Debtor based on the Debtor's failure to pay Skyland for the services it performed and the materials it supplied to the Debtor. The Skyland claim is not based on damages as a result of a breach of the Lease.

      E.      The Debtor's Aggregate Noncontingent
                  Liquidated Debts Is Greater Than $7.5 Million

38.      With the foregoing considerations in mind, the Landlord prepared an analysis (a summary of which is annexed hereto) reconciling the amount of debts against the Debtor as of the Petition Date using the figures provided by the Debtor in its Schedules and the proofs of claim

filed by creditors on the Debtor's claims register. Where a creditor's claim was scheduled by the Debtor and a proof of claim thereafter was filed by the same creditor, the Landlord applied the amount in the proof of claim as superseding the scheduled amount. Where a creditor filed a proof of claim and the Debtor did not schedule the claim or the creditor at all, the Landlord applied the amount in the proof of claim. The Landlord, however, did not include the following proofs of claim (or a portion thereof) in its analysis: (ii) the unliquidated claim of the Pension Benefit Guaranty Corporation (the "PBGC") asserted in Claim No. 28; (i) the contingent claim of the PBGC in the amount of $742,319.00 asserted in Claim No. 29; (iii) the post-petition portion (in the amount of $96,621) of the PBGC claim asserted in the total amount of $212,532 in Claim No. 27; and (iv) the claims of 4 Imprint (Claim No. 21) and CooperSurgical (Claim No. 23) both in the amount of $44,646.55, which appear to be duplicative of Claim No. 22 of CooperSurgical.[8]

39.     As set forth in the reconciliation analysis, the Debtor scheduled a total of $5,797,128.17 in claims (none of which the Debtor indicated were unliquidated or contingent), and the proofs of claim filed by creditors asserted a total increase of $4,679,838.96 (not counting the amounts described in the preceding paragraph) from the Debtor's scheduled amounts. Taking the Debtor's scheduled amount of total claims and adding the increased amount in the filed claims (other than the amounts described in the preceding paragraph), the Debtor has aggregate liquidated noncontingent claims in the amount of $10,476,967.13 as of the Petition Date. The Debtor has debts well in excess of the $7.5 million limit and is ineligible to be a subchapter V debtor.

40.     The Landlord further notes that, if the Court were to adopt the reasoning of *In re Macedon Consulting, Inc.*, Case No. 23-10300-KHK, 2023 WL 4004484 (Bankr. E.D. Va. June

---

[8] The Landlord takes no formal position with respect to whether the 4 Imprint or the other CooperSurgical proofs of claim are duplicative of Claim No. 22. Out of an abundance of caution, the Landlord is not including Claim Nos. 21 and 23 in its calculation of the aggregate amount of the Debtor's debts as of Petition Date.

14, 2023) that the Debtor's liability to the Landlord is for the full amount of the rents due under the remaining term of the Lease, then there is no question whatsoever that the Debtor's debts would exceed the $7.5 million debt limit. The court in *Macedon Consulting, Inc.* explained its reasoning as follows:

> [T]he debt at issue is liability under the Leases, and that liability arose pre-petition, on the dates the Leases were fully executed. For example, it could not be said that if the Debtor vacated the premises on the 31st of one month during the lease term, that it would not still owe the landlord for the next month and the remainder of the lease term. While it may be argued that the timing of the payments is the future extrinsic event that may never occur, the Court disagrees. The timing of lease payments is simply that—timing. Absent the end of the world, we know the future date will occur. As a result, liability under the Leases must be considered noncontingent and liquidated, and the Debtor in this case is therefore above the debt limits for subchapter V, which are capped at $7.5 million of aggregate noncontingent liquidated debts.

*In re Macedon Consulting, Inc.*, 2023 WL 4004484 at *4.

41.     In this case, the annual rent is over $5 million and there are more than 12 years remaining on the lease term. The total liability for the remaining term of the Lease would be over $60 million. But the Court need not adopt the reasoning of the court in *Macedon Consulting, Inc.* to conclude that the Debtor owed debts in an amount exceeding 7.5 million as of the Petition Date.

**II.     The Debtor Should Not Be Permitted To Continue To
Proceed Under Subchapter V Because It Failed To File A
<u>Facially Confirmable Plan Within The 90-Day Statutory Deadline</u>**

42.     The Court should also revoke[9] the Debtor's designation as a subchapter V debtor for the separate, independent ground that the Debtor has failed to comply with the statutory deadline to file a subchapter V plan because the Plan it filed is facially deficient and unconfirmable.

---

[9] The Court has authority to enter an order requiring the Debtor to amend its petition to revoke the election to proceed under subchapter V. *See, e.g., In re Nat'l Small Bus. Alliance, Inc.*, 642 B.R. 345 (Bankr. D.C. 2023); *In re Serendipity Labs, Inc.*, 620 B.R. 679 (Bankr. N.D. Ga. 2020).

43.     The Plan filed by the Debtor just minutes before the deadline to file a subchapter V plan was to lapse could be charitably characterized as a "placeholder" plan.  As noted above, no liquidation analysis of projections were filed; there is no disclosure regarding the most critical information impacting on confirmability of the Plan, such as back-up for estimated relocation costs of $750,000, the magnitude of the allegedly expected resulting lost revenue, or the extent of patient and employee reductions as a result of relocating; there is no means to determine whether the "up to 5%" distribution to general unsecured creditors is based on all of the Debtor's projected disposable income; there are no provisions for the liquidation of assets in the event that payments under the Plan are not made; and no provisions for the Subchapter V Trustee to remain in place in the event the Plan is confirmed on a non-consensual basis.[10]

44.     The Plan filed by the Debtor is not sufficient to satisfy its statutory obligation to file a subchapter V plan within 90 days of the Petition Date.  When the Debtor filed the Plan, there was no hope that the Plan could be confirmed.  The placeholder plan that the Debtor filed does not comport with the legislative intent to provide a streamlined, expedited process for subchapter V cases.  As one court noted, these types of placeholder plans should not be permitted:

> A placeholder plan is a waste of time and resources for all parties-in-interest and does not represent Congress's intent in enacting the SBRA.  Congress enacted the SBRA to "streamline the bankruptcy process by which small businesses debtors reorganize and rehabilitate their financial affairs."  The purpose of subchapter V is to reduce the barriers and associated costs that prevent small businesses from successful reorganization, in part by reducing the length of time those debtors spend in bankruptcy.  ***The intentionally expedited nature of subchapter V cases dictates an abbreviated deadline under § 1189 that is not intended to be manipulated by placeholder plans***.  … [F]iling a placeholder plan merely to satisfy the statutory plan filing deadline serves no justiciable purpose, contributes to increased costs, and subverts the intent underlying

---

[10] The plan deficiencies described in this Objection are not intended to be exhaustive, and the Landlord reserves its right to raise further objections in the event there is a plan confirmation process.

> subchapter V. Thus, this Court disfavors placeholder plans and expects debtors to file substantive, confirmable plans unless situations arise such that an extension is warranted because of circumstances for which the debtor should not justly be held accountable.

*In re Baker*, 625 B.R. 27, 37-38 (Bankr. S.D. Tex. 2020) (footnotes and citations omitted, emphasis added).

45.     It is clear that the Debtor in this case filed its placeholder Plan to create the illusion of compliance with the deadline under section 1189, and to give it additional time to prepare the liquidation analysis and projections critical to the Plan.  But that is not acceptable.  It is a statutory requirement for subchapter V plans to include a liquidation analysis and projections pursuant to sections 1190(1)(B) and (C).  The Debtor simply flouted these statutory requirements.

46.     Nor did the Debtor seek an extension of time to file a subchapter V plan that would not simply be a placeholder plan.  Even if the Debtor had sought an extension, it likely would not have satisfied the stringent standard for an extension under section 1189(b) for filing a subchapter V plan.  Section 1189 of the Bankruptcy Code provides that a subchapter V debtor "shall file a plan not later than 90 days after the order for relief under this chapter, except that the court may extend the period if the need for the extension is attributable to circumstances for which the debtor should not justly be held accountable."  11 U.S.C. § 1189(b).

47.     "In considering a motion to extend under § 1189(b), there can be no dispute that the burden of proof rests with the debtor to establish the limited circumstances under which a court may grant an extension of the statutory deadline. … Meeting that burden, however, is no small feat.  It is a stringent one."  *In re Online King LLC*, 629 B.R. 340, 349 (Bankr. E.D.N.Y. 2021) (denying motion to extend time to file subchapter V plan).  *See also In re Seven Stars on the Hudson Corp.*, 618 B.R. 333, 344 (Bankr. S.D. Fla. 2020) (standard for extension under section 1189(b) is "a clearly higher standard than the mere 'for cause' standard set forth in both Federal

Rule of Bankruptcy Procedures 9006(b) (governing extensions of time generally) and Bankruptcy Code section 1121(d)(1) (governing extensions of a non-Subchapter V debtor's exclusive period to file a Chapter 11 plan)").

48.     It is difficult to fathom what circumstances the Debtor could argue would have attributed to the need for an extension of time for which the Debtor should not justly be held accountable.  The Debtor has known from the first day of the case that it would need to prepare projections and a liquidation analysis and has informed the Court and parties in interest (including the Landlord and the Subchapter V Trustee) on multiple occasions that it has been working on projections.  The Debtor's inability to meet its statutory deadlines is another separate basis to revoke its election to proceed under subchapter V.

WHEREFORE, for all the reasons set forth herein, the Landlord respectfully requests that the Court enter an order revoking the Debtor's designation as a subchapter V debtor, and grant the Landlord such other and further relief as the Court deems just and proper.

Dated: New York, New York
         August 15, 2023

RUBIN LLC

By:  _/s/ Paul A. Rubin_____
         Paul A. Rubin
         Hanh V. Huynh
11 Broadway, Suite 715
New York, New York 10004
Tel: 212.390.8054
Fax: 212.390.8064
prubin@rubinlawllc.com
hhuynh@rubinlawllc.com

*Counsel for GLL BVK Columbus Circle LLC*

# EXHIBIT A
## (Claims Reconciliation)

| Scheduled Creditor | Scheduled Amount | POC No. | POC Amount | Difference | Notes |
|---|---|---|---|---|---|
| NY Dep't of Labor | | 1 | $0.00 | $0.00 | |
| Uline | $2,813.00 | 2 | $2,813.79 | $0.79 | |
| United HealthCare | $2,204.79 | 3 | $2,204.79 | $0.00 | |
| Bio-Rad Laboratories | $720.35 | 4 | $720.35 | $0.00 | |
| Staples | $3,054.55 | 5 | $3,834.16 | $779.61 | |
| GE Precision Healthcare | $2,993.98 | 6 | $3,171.01 | $177.03 | |
| First Citizen's Bank | $0.00 | 7 | $1,626.27 | $1,626.27 | Scheduled as Konica Minolta |
| First Citizen's Bank | | 8 | $2,241.32 | $2,241.32 | |
| First Citizen's Bank | | 9 | $46,461.37 | $46,461.37 | |
| First Citizen's Bank | | 10 | $952.87 | $952.87 | |
| Con Ed | | 11 | $3,510.93 | $3,510.93 | |
| Illumina, Inc. | $12,055.41 | 12 | $32,045.03 | $19,989.62 | |
| Olympus America | $5,367.29 | 13 | $7,535.93 | $2,168.64 | |
| Verizon | $1,634.59 | 14 | $1,123.10 | -$511.49 | |
| American Express | $0.00 | 15 | $52,735.76 | $52,735.76 | |
| Laboratory Corporation | $4,929.13 | 16 | $12,907.30 | $7,978.17 | |
| Aetna | | 17 | $9,458.61 | $9,458.61 | |
| Tosoh Bioscience | $27,702.00 | 18 | $27,702.00 | $0.00 | |
| Henry Schein | $54,918.43 | 19 | $62,315.09 | $7,396.66 | |
| IRS | $0.00 | 20 | $68,110.67 | $68,110.67 | |
| CooperSurgical | $1,428.97 | 22 | $44,646.55 | $43,217.58 | Appears to be duplicative of POC No. 21 from 4 Imprint and POC No. 23 from CooperSurgical (POCs 21 and 23 not included) |
| Nixon Peabody | $5,525.00 | 24 | $8,735.00 | $3,210.00 | |
| CooperGenomics | $922,042.00 | 25 | $993,491.00 | $71,449.00 | |
| Origio | $43,217.00 | 26 | $44,646.55 | $1,429.55 | |
| PBGC | | 27 | $115,911.00 | $115,911.00 | Claim amount is $212,532, but only $115,911 is pre-petition (PBGC's unliquidated claim (No. 28) and $742k contingent claim (No. 29) also not included) |
| Airgas | $5,036.39 | 30 | $14,550.98 | $9,514.59 | |
| Skyland Construction | $1,030,824.97 | 31 | $1,388,076.25 | $357,251.28 | |

| | | | | |
|---|---|---|---|---|
| NYS Dept. of Taxation | $0.00 | 32 | $20,263.30 | $20,263.30 | |
| MatTek | $3,526.46 | 33 | $3,526.46 | $0.00 | |
| GLL BVK Columbus Circle | $3,222,290.66 | 34 | $7,056,806.49 | $3,834,515.83 | POC amount does not include rejection damages |

**Total Scheduled Claims**  **$5,797,128.17**

**Total Discrepancy**  $4,679,838.96

**Total Reconciled Amount**  **$10,476,967.13**

# EXHIBIT B
# (Landlord's POC)

**Fill in this information to identify the case:**

Debtor 1 _____

Debtor 2 _____
(Spouse, if filing)

United States Bankruptcy Court for the: _____ District of _____

Case number _____

Official Form 410

# Proof of Claim

04/22

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

| Part 1: | Identify the Claim |
|---|---|

| 1. | Who is the current creditor? | Name of the current creditor (the person or entity to be paid for this claim) _____ |
|---|---|---|
| | | Other names the creditor used with the debtor _____ |

| 2. | Has this claim been acquired from someone else? | ☐ No |
|---|---|---|
| | | ☐ Yes.  From whom? _____ |

| 3. | Where should notices and payments to the creditor be sent? | **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent?** (if different) |
|---|---|---|---|
| | Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | Name _____ | Name _____ |
| | | Number     Street | Number     Street |
| | | City            State        ZIP Code | City            State        ZIP Code |
| | | Contact phone _____ | Contact phone _____ |
| | | Contact email _____ | Contact email _____ |
| | | Uniform claim identifier for electronic payments in chapter 13 (if you use one): | |
| | | __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ | |

| 4. | Does this claim amend one already filed? | ☐ No | |
|---|---|---|---|
| | | ☐ Yes.  Claim number on court claims registry (if known) _____ | Filed on _____ |
| | | | MM   / DD   / YYYY |

| 5. | Do you know if anyone else has filed a proof of claim for this claim? | ☐ No | |
|---|---|---|---|
| | | ☐ Yes.  Who made the earlier filing? _____ | |

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

❑ No

❑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?**

$_____. Does this amount include interest or other charges?

❑ No

❑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

_____

**9. Is all or part of the claim secured?**

❑ No

❑ Yes. The claim is secured by a lien on property.

**Nature of property:**

❑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

❑ Motor vehicle

❑ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $_____

**Amount of the claim that is secured:** $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____

**Annual Interest Rate** (when case was filed)_____%

❑ Fixed

❑ Variable

**10. Is this claim based on a lease?**

❑ No

❑ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

**11. Is this claim subject to a right of setoff?**

❑ No

❑ Yes. Identify the property: _____

12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ No

☐ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:   Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box:

☐ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date _____
MM / DD / YYYY

_____
Signature

**Print the name of the person who is completing and signing this claim:**

Name _____
First name        Middle name        Last name

Title _____

Company _____
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address _____
Number        Street

_____
City        State        ZIP Code

Contact phone _____        Email _____

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                      :
In re:                                                :    Sub-Chapter V Chapter 11
                                                      :
ZHANG MEDICAL P.C., d/b/a NEW HOPE                    :    Case No.: 23-10678-pb
FERTILITY CENTER,                                     :
                                                      :
                    Debtor.                           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### RIDER TO PROOF OF CLAIM

This Rider is annexed to the Proof of Claim filed herewith by GLL BVK Columbus Circle

LLC (the "Landlord").

1.       The Landlord is the owner of real property located at 4 Columbus Circle, New

York, New York (the "Building").  The Landlord leased to Zhang Medical P.C. d/b/a New Hope

Fertility Center (the "Debtor") the entire second, third, fourth and fifth floors (the "Leased

Premises") in the Building pursuant to that certain Agreement of Lease dated December 31, 2018

(together with all amendments, the "Lease").

2.       The term of the Lease expires on October 10, 2035.  Annual fixed rent for the term

of the Lease is set forth in the Lease.  The Debtor is also responsible for paying other monthly

expenses as set forth in the Lease, including but not limited to, charges for electricity, HVAC,

condenser water, water, real estate taxes and miscellaneous maintenance costs.  A copy of the

Lease may be obtained by contacting counsel to Landlord, Rubin LLC, 11 Broadway, Suite 715,

New York, New York 10004 (Attn. Hanh Huynh), hhuynh@rubinlawllc.com.

3.       On June 30, 2023, the Debtor filed a motion [ECF No. 74] to reject the Lease, and

on July 27, 2023, the Court entered an order [ECF No. 96] authorizing the Debtor to reject the

Lease, effective as of July 20, 2023 (the "Rejection Date").

4.      The Debtor is indebted to the Landlord in the amount of not less than **$17,301,956.17** (the "Claim"), as of April 30, 2023 (the "Petition Date"), as set forth on the schedule annexed hereto.

5.      The Claim is based upon pre-Petition Date arrearages for: (i) unpaid rent in the total amount of $1,628.745.54; (ii) a rent credit claw-back in the total amount of $1,418,147.50, (iii) the replenishment of the security deposit pursuant to the terms of the Lease in the total amount of $2,458,665.00; (iv) the filing of a notice of mechanic's lien dated March 16, 2023 by Skyland Development Corp. for the furnishing of materials and services to the Debtor for which the Debtor failed to pay in the total amount of $1,338,757.27; (v) late fees in the total amount of $3,500.00; (vi) interest in the total amount of $152,344.65; (vii) legal fees for Stern Tennenbaum & Bell LLP in the total amount of $9,167.00; and (viii) legal fees for Younkins & Schecter LLP in the total amount of $47,479.53.  The bases for each of the foregoing components of the Claim are set forth in detail in the Complaint (the "Complaint") filed by the Landlord against the Debtor on April 18, 2023 in the Supreme Court of the State of New York, County of New York.  A true and correct copy of the Complaint is annexed hereto as Exhibit A.

6.      The Claim is also based upon damages arising from the rejection of the Lease in accordance with section 502(b)(6) of the Bankruptcy Code in the amount of $10,245,149.68 as set forth in the schedule annexed hereto.  The Claim does not include the amounts due and owing to the Landlord in the period following the Petition Date and prior to the Rejection Date, and does not include amounts due and owing to the Landlord for the Debtor's post-rejection continued use and occupancy of the Leased Premises.

7.      The filing of this proof of claim is not and shall not be deemed or construed as: (a) a waiver or release of the Landlord's rights against any person, entity, or property, or a waiver of

2

the right to compel the Debtor to return property of the Landlord currently in the possession of the Debtor; (b) a consent by the Landlord to the jurisdiction of this Court or any other court with respect to proceedings, if any, commenced in any case against or otherwise involving the Landlord; (c) a waiver or release of the Landlord's right to trial by jury in this Court or any other court in any proceeding as to any and all matters so triable herein, whether or not the same be designated legal or private rights or in any case, controversy, or proceeding related hereto, notwithstanding the designation or not of such matters as "core proceedings" pursuant to 28 U.S.C. § 157(b)(2), and whether such jury trial right is pursuant to statute or the United States Constitution; (d) a consent by the Landlord to a jury trial in this Court or any other court in any proceeding as to any and all matters so triable herein or in any case, controversy, or proceeding related hereto, pursuant to 28 U.S.C. § 157(e) or otherwise; (e) a waiver or release of the Landlord's right to have any and all final orders in any and all non-core proceedings entered only after de novo review by a United States District Court Judge; (f) a waiver of the right to move to withdraw the reference with respect to the subject matter of this proof of claim, any objection thereto or other proceeding which may be commenced in this case against or otherwise involving the Landlord; or (g) an election of remedies.

8.     The Landlord reserves the right to amend and/or supplement this Proof of Claim in any manner and/or to file additional or other proofs of claim for additional or other claims it may have against the Debtor, including, without limitation, the costs associated with the Debtor's obligation to return the Leased Premises in broom clean condition.

Schedule to Rider to Proof of Claim of GLL BVK Columbus Circle LLC

*In re Zhang Medical P.C., d/b/a New Hope Fertility Center.* ; Case No. 23-10678-pb

**Post-Rejection Remaining Lease Term\***

**3rd & 4th Floors**

| Post-Rejection Items | 8/1/23 - 12/31/23 | 1/1/24 - 5/31/25 |
|---|---|---|
| Rent | $1,035,925.00 | $3,788,974.11 |

**2nd Floor**

| Post-Rejection Items | 8/1/23 - 4/18/24 | 4/19/24 - 5/31/25 |
|---|---|---|
| Rent | $891,000.00 | $1,384,500.00 |

**5th Floor**

| Post-Rejection Items | 8/1/23 - 3/24/24 | 3/25/24 - 5/31/25 |
|---|---|---|
| Rent | $828,740.00 | $1,560,165.74 |

| Additional Rent (all floors) | 8/1/23 - 7/31/24 | 8/1/24 - 5/31/25 |
|---|---|---|
| Electric | $284,259.00 | $236,882.50 |
| HVAC | $46,200.00 | $38,500.00 |
| Condenser | $79,152.00 | $65,960.00 |
| Water/Sewer | $2,668.00 | $2,223.33 |

Electric based on 2022 total of $284,259
HVAC based on 2022 total of $46,200
Condenser based on 2022 total of $79,152
Water/Sewer based on 2022 total of $2,668

| Subtotals | $3,167,944.00 | $7,077,205.68 |
|---|---|---|

Petition Date 4/30/2023
\*Lease rejected as of 7/20/2023; Lease expires 10/10/2035

| Total Remaining Rent Term | 147 months |
|---|---|
| 15% Remaining Rent Term | 22 months |

**502(b)(6) Cap Analysis**

| One Year Rent | $5,493,371.45 | |
|---|---|---|
| 15% Remaining Rent Amount | **$10,245,149.68** | (future rent claim capped at this greater amount) |

Prepetition Arrearages:

| Rent and Additional Rent | $1,628,745.54 |
|---|---|
| Rent Credit Clawback | $1,418,147.50 |
| Security Deposit Claim | $2,458,665.00 |
| Mechanic's Lien Claim | $1,338,757.27 |
| Late Fees | $3,500.00 |
| Interest | $152,344.65 |
| STB Legal Fees | $9,167.00 |
| YS Legal Fees | $47,479.53 |

| Total Prepetition Arrearages | **$7,056,806.49** | (not subject to 502(b)(6) cap) |
|---|---|---|

| **TOTAL CLAIM** | **$17,301,956.17** |
|---|---|

# EXHIBIT A
# (COMPLAINT)

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------- X

GLL BVK COLUMBUS CIRCLE LLC,       :

              Plaintiff,      :

          -against-      :

ZHANG MEDICAL, P.C., d/b/a New Hope Fertility
Center,      :

          Defendant.    :

-------------------------------------------------------------------- x

| | |
|---|---|
| Index No. | |
| Date Index No. Purchased: | |
| **SUMMONS** | |

     ZHANG MEDICAL, P.C.,
     d/b/a NEW HOPE FERTILITY CENTER
     4 Columbus Circle, 4th Floor
     New York, New York 10019

     To the above named Defendant:

     YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's attorneys within 20 days after service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

     The basis of venue is Plaintiff's principal place of business and CPLR §§ 501 and 503.

Dated: New York, New York
     April 17, 2023

           STERN TANNENBAUM & BELL LLP

           By: _____
              Karen S. Frieman
            380 Lexington Avenue
            New York, New York 10168
            (212) 792-8484 (Telephone)
            *Attorneys for Plaintiff*

00109328.DOC v

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------- x
                                   :

GLL BVK COLUMBUS CIRCLE LLC,      :   Index No.

              Plaintiff,     :   **COMPLAINT**

                         :

        -against-         :

ZHANG MEDICAL, P.C., d/b/a NEW HOPE:
FERTILITY CENTER,                :

             Defendant.    :

                         :
-------------------------------------------------------------------- x

Plaintiff GLL BVK COLUMBUS CIRCLE LLC ("GLL" or "Landlord"), by its

attorneys, Stern Tannenbaum & Bell LLP, for its Complaint against defendant ZHANG

MEDICAL, P.C., d/b/a NEW HOPE FERTILITY CENTER ("Zhang" or "Tenant") alleges as

follows:

## PARTIES

1.      GLL is a Delaware limited liability company with an address c/o GLL Real Estate

Partners, Inc., 420 South Orange Avenue, Suite 190, Orlando, Florida 32801.

2.      GLL has a principal place of business in New York.

3.      Upon information and belief, Zhang is a New York professional corporation,

authorized to do business in the State of New York, with a place of business at 4 Columbus

Circle, New York, New York.

4.      Upon information and belief, Zhang does business under the name New Hope

Fertility Center.

## JURISDICTION AND VENUE

5.      Jurisdiction over Zhang exists pursuant to CPLR § 301.

00109397.DOC v

6.      Venue is properly laid in New York County pursuant to CPLR §§ 501 and 503 because GLL resides in New York County.

7.      Venue is also proper pursuant to Article 44 of the Original Lease (defined below) in which the parties agreed that any action not subject to arbitration under the lease, "shall be adjudicated in the state or federal courts sitting in New York County, New York."

8.      The disputes underlying this action are not subject to arbitration under the Lease.

## BACKGROUND

9.      GLL is the landlord and Zhang is the tenant pursuant to an Agreement of Lease dated as of December 31, 2018 (the "Original Lease"), as amended by the undated Commencement Date letter (the "Commencement Date Letter"), the First Amendment of Lease dated as of May 6, 2019 (the "First Amendment"),  the letter agreement dated as of October 28, 2019 (the "October 2019 Letter Agreement"), which letter agreement was modified by amendment to letter agreement dated as of January 23, 2020 (the "January 2020 Amendment"), and the Second Amendment of Lease dated as of December 31, 2021 (the "Second Amendment," and together with the Original Lease, the Commencement Date Letter, the First Amendment, the October 2019 Letter Agreement, and the January 2020 Amendment, the "Lease") covering the Second, Third, Fourth, and Fifth Floors (the "Demised Premises") in the building known as Four Columbus Circle,  New York, New York 10019 (the "Building").

10.      The Lease will expire by its terms, unless earlier terminated, on October 10, 2035.

### The Prior Action

11.      On or about March 10, 2021, GLL commenced an action against Zhang in the Supreme Court, New York County, titled <u>GLL BVK Columbus Circle LLC v. Zhang Medical, P.C., d/b/a New Hope Fertility Center</u>, Index No. 651608/2021 (the "2021 Action"), asserting

claims against Zhang for failure to pay rent, failure to provide security, failure to discharge a lien

filed on the Building, and for improperly subletting and/or permitting others to use the Demised

Premises.

12.     The 2021 Action asserted causes of action for breach of the existing Lease,

account stated, attorneys' fees, and specific performance.

13.     No answer was served or filed, including because the parties were engaged in

settlement discussions.

14.     On or about December 31, 2021 (the "Execution Date"), the parties entered into

the Second Amendment.

15.     On or about January 26, 2022, the 2021 Action was discontinued.

16.     The present action arises from Zhang's continued breaches of the Lease.

17.     As set forth in full below, Zhang has breached the Lease, inter alia, by failing to

pay Rent (as hereinafter defined), by failing to replenish and provide security, and by permitting

the filing of a lien against the Building and failing to have same removed.

18.     As a result of Zhang's breaches, GLL is entitled to damages, to an award of

specific performance, to recover its attorneys' fees, and to the additional remedies set forth in the

Lease, including the Second Amendment, discussed in full below.

19.     The relevant terms of the Lease are set forth below.

A.      Rent Provisions

20.     Pursuant to Article 2 of the Original Lease, as modified by Paragraph 7(f) of the

Second Amendment, the Demised Premises were rented to be used only for the Permitted Use

defined as "medical, administrative and executive office uses including, without limitation for

medical offices for fertility specialists…and other lawful ancillary uses" and as further defined and limited in Article 2 of the Original Lease.

21.    Pursuant to Article 1E of the Original Lease, Zhang is obligated to pay to GLL Fixed Rent in equal monthly installments in the amounts set forth in that provision ("Fixed Rent").

22.    As of the date hereof, Zhang is obligated to pay to GLL monthly Fixed Rent in the amount of $409,777.50.

23.    Pursuant to Article 1F of the Original Lease, Zhang is obligated to pay to GLL Fixed Rent in advance on the first of each calendar month without any notice or demand therefor and without any abatement, set-off, or deduction whatsoever, except as expressly set forth in the Lease.

24.    Article 1F of the Original Lease further provides that all sums other than Fixed Rent payable by Tenant under the Lease shall be deemed additional rent ("Additional Rent") and shall be payable within thirty days after receipt of an invoice by Tenant, unless other payment dates are set forth in the Lease.

25.    Pursuant to Article 1I of the Original Lease, Additional Rent is deemed "rent" and Tenant's failure to pay Additional Rent is considered a failure to pay Fixed Rent such that Landlord is entitled to all rights and remedies under the Lease and the law for a default in the payment of Additional Rent as it would be entitled to for a default in the payment of Fixed Rent. (Fixed Rent and Additional Rent are sometimes referred to herein collectively as "Rent.")

26.    Among the items of Additional Rent due from Zhang under the Lease are, without limitation, real estate escalation charges pursuant to Article 4 of the Original Lease, operating expense escalation charges pursuant to Article 5 of the Original Lease, electricity charges

pursuant to Article 7 of the Original Lease, water charges pursuant to Articles 31A(i) and 31F of the Original Lease, HVAC charges pursuant to Article 31A(i) of the Original Lease, charges for security pursuant to Article 31J of the Original Lease, and charges for the review of plans and drawings pursuant to paragraph 8 of the Second Amendment and for other services pursuant to paragraph 9 of the Second Amendment.

27.     In paragraph 5 of the Second Amendment, Tenant acknowledged that it was then in arrears in the payment of Rent due under the Lease in the amount of $3,988,264.73 (the "Arrears").

28.     In paragraph 5 of the Second Amendment, Tenant agreed to (and subsequently did) repay to GLL the Arrears.

29.     Pursuant to paragraph 3(a) of the Second Amendment, Zhang was afforded an abatement of its obligations to pay Fixed Rent with respect to the Second Floor Premises and the Fifth Floor Premises (as those terms are defined in the Original Lease) for a period of seven months commencing on the Execution Date of the Second Amendment, i.e. December 31, 2021 (the "Second Amendment Rent Credit").

30.     As set forth in said paragraph 3(a), the aggregate value of the Second Amendment Rent Credit with respect to the Second Floor Premises was $693,000.00.

31.     As set forth in said paragraph 3(a), the aggregate value of the Second Amendment Rent Credit with respect to the Fifth Floor Premises was $725,147.50.

32.     The total aggregate value of the Second Amendment Rent Credit was $1,418,147.50.

33.     Pursuant to paragraph 3(b) of the Second Amendment, the Second Amendment Rent Credit would be null and void *ab initio* if at any time prior to the third anniversary of the

Execution Date, Tenant is in monetary default under the Lease (after affording Tenant the applicable opportunity to cure), and in such event, GLL is entitled, inter alia, to recover the Second Amendment Rent Credit (the "Second Amendment Rent Credit Clawback").

34.     The third anniversary of the Execution Date will be December 31, 2024.

35.     The third anniversary of the Execution Date has not yet occurred.

36.     As set forth in full below, Zhang is in default of its obligation to pay Rent accruing since the execution of the Second Amendment and of other monetary obligations under the Lease and has not cured those defaults despite due notice and demand.

37.     Therefore, GLL is entitled to recover from Zhang the Second Amendment Rent Credit Clawback in the amount of $1,418,147.50.

B.      Reimbursement for Tenant Work Provisions

38.     Pursuant to Section 3C of the Original Lease, Tenant was required to perform, at its own expense, certain alterations to prepare the Demised Premises for its occupancy, subject to Exhibit F to the Original Lease.

39.     Exhibit F to the Original Lease provides for certain payments to be made by GLL to Tenant, in accordance with the terms of Exhibit F, to reimburse Tenant for its actual, documented expenses incurred pursuant to Section 3C of the Original Lease.  These payments are defined in Exhibit F as Landlord's Contributions.

40.     The amount of Landlord's Contributions set forth in Exhibit F to the Original Lease was modified and reduced by and as set forth in paragraphs 7(i)-(m) of the Second Amendment.

41.     Exhibit F to the Original Lease expressly provides (at paragraph 8) that Landlord shall not be obligated to pay any portion of Landlord's Contributions to Tenant if the work which

is the subject of the applicable Landlord's Contributions (or any portion thereof) shall not have

been completed, and the applicable Landlord's Contributions shall not have been requested by or

disbursed to Tenant, on or before December 31, 2022 (the "Original Lease Landlord Contribu-

tion Deadline").

42.     Tenant's work which is subject to Landlord's Contributions was not complete

and/or Landlord's Contributions were not disbursed in full or requested on or before December

31, 2022.

43.     The Original Lease Landlord Contribution Deadline was extended by paragraph

8(ii) of the Second Amendment to December 31, 2023 (the "Initial Alterations Modification").

44.     Paragraph 3(b) of the Second Amendment provides that in the event Tenant is in

default under the Lease (after affording Tenant the applicable opportunity to cure), Landlord

may, in addition to all its other rights under the Lease, under the law or at equity, inter alia

revoke the "Initial Alterations Modification."

45.     Paragraph 8 of the Second Amendment further provides that "[t]he Initial

Alterations Modification shall be null and void *ab initio* if Tenant shall be in default under the

Lease after Landlord has afforded Tenant the applicable opportunity to cure."

46.     As set forth below, Zhang is in default of its obligations to pay Rent accruing

since the execution of the Second Amendment and of its other obligations under the Lease, and

has not cured such defaults despite due notice and demand.

47.     GLL is entitled to and has revoked the Initial Alterations Modification;

accordingly, requests for payment of installments toward Landlord's Contributions for work

theretofore completed must have been duly made by Tenant on or before December 31, 2022.

48.     Tenant is not entitled to any portion of Landlord's Contributions not duly requested by Tenant in accordance with the Lease on or before December 31, 2022.

49.     To the extent GLL disbursed any portion of Landlord's Contributions to Tenant pursuant to a disbursement request submitted by Tenant to GLL after December 31, 2022, GLL is entitled to recover any sums so paid.

C.          Security

50.     Pursuant to Article 32A of the Original Lease, Tenant is required to provide security to Landlord ("Security") in the form of "one or more clean, irrevocable and unconditional letters of credit…" in the total amount of $2,458,665.00, to secure "the faithful performance and observance by Tenant of the terms, conditions and provisions of this Lease…"

51.     Pursuant to Article 32A of the Original Lease, if Zhang defaults with respect to any of the terms, provisions and conditions of the Lease, beyond the expiration of any applicable notice or cure periods, including but not limited to, the payment of Rent and Additional Rent, Landlord may apply or retain the whole or any part of the Security to the extent required for the payment of the amounts due.

52.     Pursuant to Article 32A of the Original Lease, if GLL applies or retains any part of the Security, Tenant, within ten business days after notice from GLL must deposit with GLL the amount so applied so that GLL shall have the full Security required by the Lease on hand at all times during the term of the Lease.

53.     Pursuant to Article 32B of the Original Lease, if Tenant provides a letter of credit as Security, at any time that Tenant is in default under the Lease beyond any applicable notice and grace period, Landlord may draw down on the entire Letter of Credit in whole or in part to apply the proceeds thereof.

54.     Pursuant to Article 32B of the Original Lease, if GLL applies or retains any part of the Security posted in the form of a letter of credit, Tenant, within ten business days after notice from GLL must deposit with GLL cash or a new letter of credit so that GLL shall have the full Security required by the Lease on hand at all times during the term of the Lease.

55.     Pursuant to paragraph 6(a) of the Second Amendment, Zhang acknowledged that, GLL had, in accordance with its rights under the Lease, previously applied a portion of the Security posted by Zhang, in the amount of $1,958,665.00 (the "Security Deposit Deficiency") to certain arrears owed by Zhang.

56.     Pursuant to paragraph 6(a) of the Second Amendment, Zhang agreed to replenish the Security Deposit Deficiency in thirteen equal monthly installments of $150,665.54 each, beginning on the date it executed the Second Amendment (defined in paragraph 5 thereof as the "Amendment Delivery Date").

57.     Pursuant to paragraph 6(b) of the Second Amendment, Zhang was permitted to make the monthly installments of the Security Deposit Deficiency in cash but was obligated within thirty days of the due date of the last installment of payment of Security, to deliver to GLL a Letter of Credit in the aggregate amount of the Security, in form reasonably acceptable to GLL, time being of the essence (the "Security Deposit Substitution Date").

58.     Zhang did not make all the installments of the Security Deposit Deficiency and did not provide a Letter of Credit in the aggregate amount of the Security Deposit.

59.     Zhang replenished $1,506,665.38 of the Security in cash.

60.     Zhang failed to replenish certain installments of the Security Deposit Deficiency, in the aggregate amount of $451,999.62, as required by paragraph 6(a) of the Second Amendment, despite due demand.

61.     Pursuant to paragraph 6(a) of the Second Amendment, Zhang's failure timely to pay any installment of the Security Deposit Deficiency (after affording Tenant the applicable opportunity to cure) is deemed an event of default under the Lease in which event GLL is entitled to accelerate the remaining Security Deposit Deficiency such that all amounts are due and payable immediately to GLL in full upon demand, time being of the essence.

62.     GLL is entitled to and did demand full payment from Zhang of the remaining unpaid Security Deposit Deficiency.

63.     Zhang has failed and refused to pay the remaining unpaid Security Deposit Deficiency.

64.     Pursuant to Article 32F of the Original Lease, if the Lease is in full force and effect and Tenant is not and has not been, in the prior 12 months, in default under the Lease, the amount of the Security Deposit shall be reduced, on notice from Tenant, by $409,777.50 on each of the fifth anniversary of the "Last Rent Commencement Date" (the "First Reduction Date"); the seventh anniversary of such date (the "Second Reduction Date"); and the tenth anniversary of such date (the "Third Reduction Date").

65.     As set forth in the Commencement Date Letter, the "Last Rent Commencement Date" was April 10, 2020, so the First Reduction Date, if applicable, would be April 10, 2025.

66.     Pursuant to paragraph 6(c) of the Second Amendment, if Zhang fully and timely replenished the Security Deposit Deficiency and was not and had not been in monetary default under the Lease beyond the expiration of any cure period, the First Reduction Date provided for in Article 32F of the Original Lease would be accelerated to the Security Deposit Substitution Date (the "First Reduction Date Acceleration").

67. Pursuant to paragraph 6(a) of the Second Amendment, Zhang's failure to timely pay any installment of the Security Deposit Deficiency (after affording Tenant the applicable opportunity to cure) is deemed an event of default under the Lease in which event GLL is entitled to reverse the First Reduction Date Acceleration.

68. Zhang has no right to the First Reduction Date Acceleration.

69. GLL has reversed the First Reduction Date Acceleration.

70. As set forth in full below, following Zhang's further default in the payment of Rent, GLL applied the Security on hand, in the amount of $1,506,665.38, to Zhang's arrears.

71. Zhang has failed, despite due demand, to replenish the Security following that application.

72. Pursuant to Article 32B of the Original Lease, any letter of credit provided by Zhang as security must either expire on the date which is sixty days after the expiration or earlier termination of the Lease or be automatically self-renewing until such date.

73. The Letter of Credit issued by JPMorgan Chase Bank (#CTCS-701537) in the amount of $500,000.00 (the "JPMorgan Chase LC") expired as of May 31, 2021, and has not been renewed or replaced.

74. As a result of Zhang's defaults, GLL has no Security on hand, despite being entitled under the Lease to hold $2,458,665 in Security.

D.      <u>Lien Provisions</u>

75. Article 8D of the Original Lease provides that "Tenant shall do all things reasonably necessary to prevent the filing of any mechanic's or other lien against the demised premises or the Building or the interest of Landlord by reason of any work, labor, services or materials performed or supplied or claimed to have been performed for or supplied to Tenant…"

76.    Article 8D of the Original Lease further provides that "[i]f any such lien shall at any time be filed, Tenant shall cause the same to be bonded or vacated and canceled of record within thirty (30) days after notice to Tenant."

E.          Interest, Late Fees, Default and Choice of Law

77.    Pursuant to Article 21B of the Original Lease, if Tenant fails to pay Rent when due, Tenant must pay Landlord interest at the Interest Rate on the unpaid amount from the day on which the installment or payment is due to the date of payment (but in no event is interest calculated and payable for less than one month), and such interest is deemed to be Additional Rent.

78.    The Interest Rate is defined in Article 25A(xv) of the Original Lease to be seven hundred (700) basis points above the prime lending rate announced publicly from time to time by JP Morgan Chase Bank, N.A. (or its successor) at such time (or if less, the maximum rate permitted by applicable law).

79.    Article 21B of the Original Lease further provides that if Tenant fails to pay Rent within five business days of it being due, Tenant must pay a late payment charge of $500.00, subject to an exception not applicable here.

80.    Pursuant to Article 20C of the Original Lease, "[i]n the event either party hereto shall institute legal proceedings against the other in connection with, or for the enforcement of, this Lease, the prevailing party shall be entitled to recover its reasonable costs of suit including reasonable attorneys' fees and disbursements."

81.    Article 38.6 of the Original Lease provides that the Lease "shall be governed in all respects by the laws of the State of New York."

82.    Pursuant to paragraph 7(d) of the Second Amendment, Article 19.(A)(i) of the

Lease is deleted and replaced with the following:

> "(i) if Tenant fails to (i) pay when due any Remaining Arrears, any portion of the Security Deposit Deficiency or other charge or sum pursuant to that certain Second Amendment of Lease dated as of December 31, 2021 between Landlord and Tenant (the "Second Amendment") or otherwise perform any of its obligations under the Second Amendment, and in any case, such default continues for five (5) days after Landlord's notice of such default is given to Tenant, time being of the essence (notwithstanding anything to the contrary contained in this Lease or otherwise); or (ii) pay when due any other installment of fixed annual rent or additional rent or any other charges constituting rent and other sums due under this Lease, and such default continues for five (5) business days after Landlord's notice of such default is given to Tenant (a "Notice"), time being of the essence; <u>provided, however,</u> that if Tenant shall default in the timely payment of fixed annual rent or additional rent or any other charges constituting rent or other sums due under this Lease, and any such default shall occur more than three (3) times in any period of twelve (12) months, or if Tenant shall default in the timely payment of any Remaining Arrears or any portion of the Security Deposit Deficiency more than two (2) times, then, notwithstanding that such defaults shall have each been cured within the applicable period provided above, upon further similar default, Landlord may serve a three (3) days' notice of termination upon Tenant without affording to Tenant an opportunity to cure such further default;..."

## ZHANG'S DEFAULTS

83.    As a result of Zhang's defaults, described in greater detail below, GLL has been

damaged.

84.    As a result of Zhang's defaults, described in greater detail below, GLL has the

right to, and has, accelerated the remaining Security Deposit Deficiency.

85.    As a result of Zhang's defaults, described in greater detail below, GLL has

revoked the Initial Alterations Modification and the First Reduction Date Acceleration.

86.    As a result of Zhang's monetary defaults, described in greater detail below, GLL

is entitled to, and has, demanded the Second Amendment Rent Credit Clawback.

87.    By Notice dated February 23, 2023 (the "February 23 Notice"), GLL notified Zhang that it was then in default:

    a. of its obligation to pay Fixed Rent and Additional Rent due under the Lease in the amount, as of February 22, 2023, of $1,936,846.06 (the "Rent Default"); and

    b. of its obligation to make three payments toward the Security Deposit Deficiency required by Paragraph 6(a) of the Second Amendment in the total amount of $451,999.62 (the "Security Replenishment Default").

88.    In accordance with Paragraph 7(d) of the Second Amendment, the February 23 Notice afforded Zhang 5 business days to cure the Rent Default and 5 days to cure the Security Replenishment Default.

89.    Zhang failed and refused to cure the Rent Default within the cure period or to date.

90.    Zhang failed and refused to cure the Security Replenishment Default within the cure period or to date.

91.    By notice dated March 2, 2023 (the "March 2 Notice"), GLL advised Zhang that pursuant to paragraph 3(b) of the Second Amendment, due to Zhang's failure to cure the Rent Default set forth in the February 23 Notice, the Second Amendment Rent Credit was null and void *ab initio* and demanded payment of the Second Amendment Rent Credit Clawback, in the amount of $1,418,147.50.

92.    At the time of the March 2 Notice, Zhang had taken the benefit of the entire Second Amendment Rent Credit in the amount of $1,418,147.50.

93.    Zhang has failed and refused to remit to GLL payment for the Second Amendment Rent Credit Clawback.

94.    The March 2 Notice further demanded that Zhang deliver to GLL $500,000 in cash or in the form of a Letter of Credit (as defined in the Lease), to be held as part of the Security, because the JPMorgan Chase LC had expired and not been renewed or replaced.

95.    Zhang has failed and refused to provide $500,000 to be held as part of the Security to replace the JPMorgan Chase LC.

96.    By notice dated March 10, 2023 (the "March 10 Notice"), GLL notified Zhang that it was in default of its obligation to pay Fixed Rent due under the Lease for the month of March, 2023 in the amount of $409,777.50 (the "March Rent Default").

97.    In accordance with paragraph 7(d) of the Second Amendment, the March 10 Notice afforded Zhang 5 business days to cure the March Rent Default.

98.    Zhang failed and refused to cure the March Rent Default within the cure period or to date.

99.    By notice dated March 22, 2023 (the "March 22 Lien Notice"), GLL notified Zhang that a lien had been filed against the Building in the amount of $1,338,757.27 by Skyland Development Corp. arising from work performed for Tenant at the Demised Premises (the "Lien"), and demanded that Zhang, in accordance with Article 8D of the Original Lease, bond or vacate and cancel of record the Lien on or before April 22, 2023.

100.    As of April 12, 2023, the Lien remains of record.

101.    By further notice dated March 22, 2023 (the "March 22 Security Notice"), GLL notified Zhang that GLL had applied the Security on hand in the amount of $1,506,665.38, against a portion of Rent due as set forth in the February 23 Notice, the March 2 Notice and/or the March 10 Notice.

102.    Following this application of the Security Deposit, GLL has no Security on hand.

103.    The March 22 Security Notice demanded that GLL replenish the Security so

applied in accordance with Articles 32A and 32B of the Original Lease within 10 business days.

104.    Zhang has failed and refused to replenish the Security as demanded in the March

22 Security Notice within the cure period or to date.

105.    Each of the March 2 Notice, the March 10 Notice, the March 22 Lien Notice, and

the March 22 Security Notice (collectively and together with the February 23 Notice, the

"Notices"), were without prejudice to all the prior notices and incorporated same by reference.

106.    By notice dated March 27, 2023, GLL summarized for Zhang all of its defaults as

set forth in the Notices and GLL's demands therein and also advised Zhang that as a result of its

failure to cure its defaults, the Initial Alterations Modification is revoked such that the last day

for Landlord's Contributions is and was December 31, 2022, as set forth in Exhibit F to the

Original Lease, and that the First Reduction Date, if applicable, is April 10, 2025.

<u>AS AND FOR A FIRST CAUSE OF ACTION</u>
(Breach of Lease)

107.    GLL hereby repeats and realleges the allegations contained in paragraphs 1

through 106 above as though fully set forth herein.

108.    The Lease constitutes a valid and binding contract between GLL and Zhang.

109.    GLL has fully performed its obligations pursuant to the Lease.

110.    Zhang breached the Lease by failing to pay to GLL Fixed Rent and Additional

Rent due and owing pursuant to the Lease.

111.    As of April 13, 2023, and after the application of Security then on hand in the

amount of $1,506,665.38, Zhang owes GLL Fixed Rent and Additional Rent in an amount to be

determined at trial but believed to be no less than $3,046,893.04 (exclusive of interest and

attorneys' fees), which amount is comprised of outstanding Rent through April 13, 2023 and the

Second Amendment Rent Credit Clawback in the amount of $1,418,147.50.

112.   The above amount does not include all Additional Rent charges due from Zhang,

and GLL reserves its right to seek such Additional Rent charges and any other applicable charges

and to make any appropriate adjustments to the calculation of amounts due.

113.   Zhang breached the Lease by failing to replenish the Security in the total amount

of $2,458,665.00 as set forth above, and as a result, GLL has been further damaged in an amount

to be determined at trial.

114.   Zhang breached the Lease by failing to take steps reasonably necessary to prevent

the filing of the Lien against the Demised Premises and the Building and failing to have same

bonded, vacated, and cancelled of record, and as a result, GLL has been further damaged in an

amount to be determined at trial.

115.   As a direct result of Zhang's breaches of the Lease, GLL has suffered damages in

an amount to be determined at trial, plus interest, and the costs, disbursements and attorneys'

fees incurred by GLL in enforcing its rights and remedies under the Lease.

116.   Fixed Rent and Additional Rent arrears may continue to accrue and go unpaid.

Therefore, at trial, GLL will seek payment of all further damages which accrue prior to and

through judgment.

## SECOND CAUSE OF ACTION
### (Attorneys' Fees)

117.   GLL hereby repeats and realleges the allegations contained in paragraphs 1

through 106, and 108 through 116 above as though fully set forth herein.

118.   GLL has complied with all terms of the Lease and has been damaged by the

breaches of the Lease by Zhang.

119.    As a result of Zhang's breaches of the Lease, GLL has been damaged, inter alia, by being required to incur costs and attorneys' fees.

120.    Pursuant to Article 20C of the Original Lease, upon prevailing, GLL is entitled to recover its attorneys' fees and expenses incurred in enforcing its rights and remedies pursuant to the Lease in an amount to be determined.

### THIRD CAUSE OF ACTION
(Specific Performance)

121.    GLL hereby repeats and realleges the allegations contained in paragraphs 1 through 106, 108 through 112, 114 through 116, and 118 through 120 above as though fully set forth herein.

122.    Zhang has failed to replenish the Security in the amount of $2,458,665.00, in breach of Article 32 of the Original Lease, despite due demand by GLL.

123.    Zhang's failures to replenish the Security and to provide replacement letters of credit have damaged GLL and deprived it of its bargained for rights under the Lease.

124.    GLL lacks an adequate remedy at law.

125.    GLL is entitled to judgment compelling Zhang to specifically perform its contractual obligation under the Lease to replenish the Security in the total amount of $2,458,665.00, in accordance with the terms and provisions of the Lease.

### FOURTH CAUSE OF ACTION
(Declaratory Judgment)

126.    GLL hereby repeats and realleges the allegations contained in paragraphs 1 through 106, 108 through 112, 114 through 116, 118 through 120, and 122 through 125 above as though fully set forth herein.

127.    Upon information and belief, Defendant disputes that it is in breach of the Lease.

128.    Therefore, there is an actual justiciable controversy between the parties regarding whether a default has occurred under the Lease, and a judicial declaration is required so as to determine certain of the respective parties' rights and obligations.

129.    Plaintiff is entitled to declaratory judgment that:

a.    the Initial Alterations Modification has been duly and properly revoked such that requests for payment of installments toward Landlord's Contributions for work theretofore completed must have been duly made by Tenant on or before December 31, 2022; Tenant is not entitled to any portion of Landlord's Contributions not duly requested by Tenant in accordance with the Lease on or before December 31, 2022; to the extent GLL disbursed any portion of Landlord's Contributions to Tenant pursuant to a disbursement request submitted by Tenant to GLL after December 31, 2022, GLL is entitled to recover any sums so paid; and

b.    the First Reduction Date Acceleration has been duly and properly revoked such that the First Reduction Date, if applicable, is April 10, 2025.

130.    Plaintiff lacks an adequate remedy at law.

WHEREFORE, based on the foregoing, GLL respectfully requests that this Court enter judgment in its favor:

(a)    on its first cause of action against Zhang for breach of Lease in an amount to be determined at trial, but believed to be no less than $3,046,893.04, together with interest;

(b)    on its second cause of action against Zhang for its attorneys' fees and disbursements incurred in enforcing GLL's rights and remedies pursuant to the Lease in an amount to be determined at trial;

00109397.DOC v                          19

(c)     on its third cause of action against Zhang for judgment directing Zhang to

replenish the Security;

(d)     on its fourth cause of action against Zhang for declaratory relief set forth therein;

and

(e)     for such other and further relief as to this Court seems just and proper.


Dated: New York, New York
       April 17, 2023

                                    STERN TANNENBAUM & BELL LLP


                                    By: _____
                                            Karen S. Frieman
                                         380 Lexington Avenue
                                         New York, New York 10168
                                         (212) 792-8484
                                         *Attorneys for Plaintiff*