| UNITED STATES BANKRUPTCY COURT | Hearing Date: September 19, 2023 |
| SOUTHERN DISTRICT OF NEW YORK | Hearing Time: 11:00 am |

-----------------------------------------------------------------X

In re                                                    : Case No. 23-10678 (PB)

ZHANG MEDICAL P.C. d/b/a
NEW HOPE FERTILITY CLINIC,                               : Chapter 11
                                                         : (Subchapter V)

                           Debtor.

-----------------------------------------------------------------X

**OBJECTION OF UNITED STATES TRUSTEE TO MOTION OF DEBTOR
FOR ENTRY OF AN ORDER (1) AUTHORIZING THE EMPLOYMENT OF
SCHULMAN LOBEL LLP AS DEBTOR'S ACCOUNTANTS,
(2) PERMITTING THE PAYMENT OF MONTHLY FEES AND
(3) PERMITTING THE PAYMENT OF POST-PETITION RETAINER**

**TO THE HONORABLE PHILIP BENTLEY,
UNITED STATES BANKRUPTCY JUDGE:**

      William K. Harrington, United States Trustee for Region 2 (the "**United States Trustee**"), hereby files this objection to the Motion of Debtor [ECF No. 110] for an Order (1) Authorizing the Employment of Schulman Lobel LLP as Debtor's Accountants, (2) Permitting the Payment of Monthly Fees and (3) Permitting the Payment of Post-Petition Retainer (the "**Objection**"). In support of the Objection, the United States Trustee respectfully alleges as follows:

### I. PRELIMINARY STATEMENT

      The United States Trustee objects to the Debtor's Motion for an Order authorizing the retention of Schulman Lobel LLP ("Schulman") as Debtor's Accountants (the "Motion") because of Schulman's conflict of interest in simultaneously representing the Debtor, the Debtor's principal, Dr. John Zhang, and Dr. Zhang's non-debtor affiliates. The Motion discloses that the terms of Schulman's retention was set forth it the Engagement Letter, dated August 15, 2023. The Motion states that Schulman was also retained in July 2023 to represent Dr. Zhang

personally as well as any entity in which Dr. Zhang owns an interest. According to Schulman's Declaration, Schulman believes it is disinterested in that Dr. Zhang and any entity in which he holds and interest (collectively referred to as the "Zhang Entities"), are not creditors of the Debtor, and nor does the Debtor assert a claim against Dr. Zhang or the Zhang Entities. The Zhang entities are not identified. Schulman's conclusion regarding the relationship between and among the Debtor, Dr. Zhang, and the undisclosed Zhang Entities is not supported by the record.

Of concern is that the Third Amended Monthly Operating Report ("MOR") for May 2023 (which was presumably prepared by Schulman) reported the Debtor's cash ending balance without including approximately $1.7 million in revenues reported on bank statements attached to the MOR for two of Dr. Zhang's non-debtor affiliates. Similarly, the MORs for June 2023 and July 2023 excluded the cash balances for one of the non-debtor affiliates, raising concerns that the omission of the cash balances is not an oversight, but the result of conflicts of interest experienced by Schulman. The Debtor's Statement of Financial Affairs disclosed that in the year prior to the petition, Dr. Zhang received compensation of approximately $2.65 million. The Motion does not disclose the extent to which Dr. Zhang's compensation was paid by non-debtor affiliate(s). It is clear that there are potential and actual intercompany claims here for which separate accountants must be retained.

Accordingly, the Debtor's Motion should be denied.

## II. BACKGROUND

1. On April 30, 2023, Zhang Medical P.C. d/b/a New Hope Fertility Clinic (the "**Debtor**") filed a voluntary petition (the "**Petition**") for relief under Subchapter V of Chapter 11 of the United States Code (the "Bankruptcy Code"). ECF Doc. No. 1.

2. On May 2, 2023, by a Notice of Appointment of Trustee in a Chapter 11 Subchapter V Case, Eric Huebscher was appointed the Subchapter V Trustee in this case. ECF Doc. No. 5.

3. The Debtor continues to operate its businesses and manage its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of Bankruptcy Code.

4. The Debtor operates a clinic specializing in reproductive medicine that offers a comprehensive range of fertility services, including egg freezing, preimplantation genetic testing, and fertility preservation for cancer patients. It also provides treatment for complex cases of infertility, such as recurrent pregnancy loss, male factor infertility, and diminished ovarian reserves. Dr. John Zhang Declaration Pursuant to Local Rule 1007-2, ECF No. 2, ¶¶ 1-3 ("Zhang Decl").

5. The Debtor has an array of medical and laboratory equipment and stores over forty-thousand embryos in its clinic. Zhang Decl., ¶ 8.

6. The bankruptcy case appears to have been prompted by the Debtor's inability to pay the approximately $400,000 per month rent obligation. Zhang Decl. ¶¶ 4-6.

**Retention of Accountants**

7. On August 31, 2023, the Motion was filed. ECF No. 110.

8. The Motion seeking the retention of Schulman Lobel LLP ("Schulman") was apparently prompted by the Debtor's determination that the prepetition accounting firm (the "Firm") failed to assist in correcting the errors in the Debtor's books and records. Motion, ¶ 3. The Debtor terminated the Firm and retained Schulman in August 2023. *Id.*

9. The Motion also disclosed that "[t]he Debtor's sole shareholder, Dr. John Zhang, retained Schulman to assist him with his personal accounting needs and the needs of any entity in which he owns an interest in July 2023." Motion, ¶ 8.

10. Norman H. Schulman, CPA, is the managing partner of Schulman. Motion, Ex. A., Declaration of Norman H. Schulman, CPA (the "Schulman Decl."), ¶ 1.

11. In addition to representing the Debtor, the Schulman Decl. states that "[w]hen Schulman was recently retained by the Debtor after the bankruptcy petition was filed, it was also retained by Dr. John Zhang, Columbus Circle OB/GYN Service and New Hope MSO Inc. to perform the service of ensuring that their books and records are accurate." Schulman Decl., ¶ 4.

12. The Motion seeks authorization to pay Schulman a post-petition retainer of $7,500.00 and a monthly fee of $4,200 or a portion thereof. Motion, ¶ 9.

13. The Motion included an Engagement Letter dated August 15, 2023, between the Debtor and Schulman. The Engagement Letter did not refer to either a post-petition retainer or monthly fee payments. Motion, Ex. B.

**Facts Relevant to the Schulman Application**

14. On the Debtor's Official Form 207, Statement of Financial Affairs ("SOFA"), the Debtor reported that within one year prior to the filing of the Petition, it paid Dr. Zhang "Salary and draws" of $2,650,978.62. ECF No. 28, SOFA, Continuation Sheet for Official Form 207, Paragraph 30, p. 59 of 87.

15. The Debtor's Schedules (ECF No. 28) listed 26 entities owned by Dr. John Zhang, 22 of which were listed as having no value and four of which listed the following values:

| Darwin Life Inc. | Related entity owned by Dr. Zhang with no value | $1,471.02 |
|---|---|---|

4

| Columbus Circle OB/GYN Services P.C. (passthrough corporation) | 100% owned by the Debtor | $4,733,766.00 |
|---|---|---|
| The Catherine Foundation for Reproductive Medicine | 100% owned by the Debtor | Unknown |
| New Hope MSO Inc. | Related entity owned by Dr. Zhang | $83,647.81 |

Schedules, Form 206A/B, Part 4, ¶ 15 and Continuation Sheet (ECF No. 28, pp. 10-12 of 87). ECF No. 28.

16. On September 5, 2023, the Subchapter V Trustee, Eric Huebscher filed a Status Letter (the "Status Letter"). ECF No. 115.

17. The Status Letter noted a filing by the Debtor that suggested the Debtor's Chief Executive Officer (the "CEO") received an annual compensation of approximately $77,000.00 as compared to statements by the CEO identifying annual compensation of $650,000.00. *Id.* at p.2.

18. The Status Letter also noted the following:

> [5.] The combined salary of the Debtor's principal and CEO account for over 8% of the Debtors total projected cashflow for 2024. Additionally, the Debtor's principal received advances and other payments totaling $161,507 between May and July 2023. This was in addition to the Debtor's principal salary of approximately $125,000 per month.

Status Letter, n. 5.

19. The Status Letter also described concerns with the Debtor's operations and the reporting of its finances:

> The Debtor operates a profitable medical practice that specializes in fertility services. As has been previously disclosed to the court, the Debtor bills for services both under the Debtor's TIN and of another medical practice. This practice, Columbus Circle OB/GYN Services, Inc., ("COGS") accounts for approximately 40% of the Debtor's cashflow. While the nexus between these two entities was not clearly identified at the time of filing, the Debtor and COGS entered into a Transfer Agreement ("Agreement") wherein COGS is required to sweep daily all cash receipts into/from the COGS bank accounts into one of the Debtor's accounts.[1] The Agreement (ECF 94) requires the

Debtor and a COGS representative to certify this daily transfer on a weekly basis and file a report with the Trustee, counsel to the landlord, and the Office of the United States Trustee. The Agreement further states that the weekly reports should be included with the filing of the MOR. To date, the Debtor has not filed a report that conforms to the Agreement. The recently filed MORs (ECF 107, 108, and 109) do not contain the weekly reporting required under the Agreement.[2] The Trustee has not been able to verify whether all COGS funds have been swept into the Debtor's bank account or whether COGS has any other financial transactions.

_____

[2] The May MOR (3rd amended) filed as ECF I07 does not include the cash balances of COGS and another related entity. Page 2 of the May MOR shows an ending cash balance of $1,853,024. This amount is understated by the COGS and related entity cash balance by over $1.7M. The MOR did include the bank statements from COGS and the related entity; however, the accompanying financial statement did not account for this additional $1.7M.

Status Letter, pp. 2-3.

20. In a letter dated September 6, 2023, Debtor's Counsel stated that "[i]t did not become clear until sometime after the bankruptcy filing that Ms. Cai [the CEO] received compensation in two forms: as payroll and through a company she wholly owns called Soyo Wellness Inc." ECF No. 119, p. 2.

21. On August 29, 2023, the Debtor filed its third amended Monthly Operating Report (the "MOR") for the Month of May 2023. ECF No. 107.

22. On August 29, 2023, the Debtor filed its Monthly Operating Report for the Month of June 2023. ECF No. 108. In Paragraph 23 (ECF No. 108, p. 2 of 66), "The "Cash on hand at the end of the Month" was reported as $3,244,745.09, an amount that excluded the cash balance of $33,414.56 reported on the Bank of America Bank Statement for the Month of June 2023 for Columbus Circle OB/GYN Services, P.C. ECF No. 108-1, p. 61 of 94.

23. On August 29, 2023, the Debtor filed its Monthly Operating Report for the Month of July 2023. ECF No. 109. In Paragraph 23 (ECF No. 109, p. 2 of 66), "The "Cash on hand at the end of the Month" was reported as $3,286,871.08, an amount that excluded the cash balance

of $55,829.14 reported on the Bank of America Bank Statement for the Month of July 2023 for Columbus Circle OB/GYN Services, P.C. ECF No. 109-1, p. 47 of 8s2. .

24. On September 8, 2023, the Court entered an *Order Granting Debtor's Motion for the Entry of an Order Approving Transfer Agreement Between Zhang Medical P.C. and Columbus Circle OB/GYN Services Inc. Pursuant to 11 U.S.C. 363(b)(1)* (the "Transfer Agreement). ECF No. 123. The Transfer Agreement required a daily transfer of revenues received by Columbus Circle OB/GYN Services Inc. ("CCOGS") to the Debtor's DIP account. *Id.* CCOGS is wholly owned by Dr. John Zhang and CCOGS's revenues represent 40% of the Debtor's cashflow. *Id.*

### III. OBJECTION

### ARGUMENT

1. **Schulman's Simultaneous Representation of the Debtor, the Debtor's Principal, and Certain Non-Debtor Affiliates Renders Schulman not Disinterested**

    a. <u>Retention Requirements Generally</u>

The Bankruptcy Code permits the debtor in possession to retain one or more professionals. 11 U.S.C. § 327. Section 327(a) of the Bankruptcy Code provides in pertinent part:

> (a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.[1]

11 U.S.C. § 327(a). No service performed by a debtor's professionals is compensable under

---

[1] Section 1107(a) of the Bankruptcy Code gives the debtor in possession the rights and powers of a chapter 11 trustee and also imposes on the debtor in possession most of the obligations of a trustee. 11 U.S.C. § 1107(a).

7

Sections 330 or 331 of the Bankruptcy Code unless the court approves the retention. *See Lamie*, 540 U.S. 526 (Section 330(a)(1) does not authorize compensation to debtors' attorneys from estate funds, unless they are employed under Section 327); *see also In re CCT Commc'ns., Inc.*, No. 07-10210 (SMB), 2010 WL 3386947, at *5 (Bankr. S.D.N.Y. Aug. 24, 2010) (citations omitted).

To be retained by the estate, professionals must be both disinterested and not hold or represent any adverse interest to the estate. *In re Project Orange Assocs., LLC*, 431 B.R. 363, 369 (Bankr. S.D.N.Y. 2010) (citing *Vouzianas v. Ready & Pontisakos (In re Vouzianas)*, 259 F.3d 103, 107 (2d Cir. 2001) (citing *Bank Brussels Lambert v. Coan (In re AroChem Corp.)*, 176 F.3d 610, 621 (2d Cir. 1999)).

Section 101(14)(A) of the Bankruptcy Code provides that a person is "disinterested" if that person "is not a creditor, an equity holder, or an insider."[2] 11 U.S.C. § 101(14)(A). Section 101(14)(C) of the Bankruptcy Code provides that a "disinterested person" is someone who "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason." 11 U.S.C. § 101(14)(C). Courts determine whether an adverse interest exists on a case-by-case basis, examining the specific facts in a case. *AroChem*, 176 F.3d3 at 623.

The purpose of the retention application is to provide the court (and the United States Trustee) with information necessary to determine whether the professional's employment is: (i) in the best interest of the estate and (ii) necessary. *See Leslie Fay*, 175 B.R. at 533; see also Fed.

---

[2] The Bankruptcy Code defines "person" to include individuals, partnerships and corporations. See 11 U.S.C. § 101(41).

R. Bankr. P. 2014(a). Failure to disclose any fact that may influence the court's decision on retention may result in a later determination that disclosure was inadequate, and sanctions should be imposed upon the professional. *See In re B.E.S. Concrete Prods., Inc.*, 93 B.R. 228 (Bankr. E.D. Cal. 1988); *accord Leslie Fay*, 175 B.R. at 525.

Bankruptcy Rule 2014 was enacted to implement the appointment of professionals, including under Section 327 of the Bankruptcy Code. 9 Alan N. Resnick & Henry J. Sommer (eds.), Collier on Bankruptcy [hereinafter, "Collier"] ¶ 2014.03 (16th ed. 2012). The rule is very broad and provides a mechanism for ensuring the disinterestedness of retained professionals. *In re Fibermark, Inc.*, No. 04-10463, 2004 WL 723495, at *8 (Bankr. D. Vt. Mar. 11, 2006).

In pertinent part, Bankruptcy Rule 2014 provides:

> a. Application for an Order of Employment. An order approving the employment of attorneys . . . or other professionals pursuant to § 327 . . . of the Code shall be made only on application of the trustee or committee. . . . The application shall state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee. The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.[3]

Fed. R. Bankr. P. 2014(a).

Bankruptcy Rule 2014(b) further elucidates the requirements of Section 327(a) of the Bankruptcy, see supra at 63, by making clear that only a person or entity that is a partner,

---

[3] The administrative orders of this Court also require a certification from the professional designated by the applicant with the responsibilities for complying with the Amended Guidelines. Admin. Order M-389 at 1.

member or associate of a partnership or corporation hired as attorneys or accountants can perform services or be employed for the debtors <u>without the necessity for a separate application</u>. Fed. R. Bankr. P. 2014(b). (Emphasis added).

The duty to disclose connections also is embodied in Bankruptcy Rule 2016, which provides in pertinent part:

> . . . a statement as to what payments have theretofore been made or promised to the applicant for services rendered or to be rendered in any capacity whatsoever in connection with the case, the source of the compensation so paid or promised, whether any compensation previously received has been shared and whether an agreement or understanding exists between the applicant and any other entity for the sharing of compensation received or to be received for services rendered in or in connection with the case, and the particulars of any sharing of compensation or agreement or understanding therefor . . . .

Fed. R. Bankr. P. 2016(a).[4] *See also* UST Fee Guidelines b(1)(ii) and (iii) (requiring disclosure of fee arrangements).

The professional's duty to disclose is self-policing. *Granite Partners*, 219 B.R. at 35 (citing *Kravit, Gass & Weber, S.C. v. Michel (In re Crivello)*, 134 F.3d 831, 839 (7th Cir. 1998)). The court relies primarily on forthright disclosure to determine qualification under Section 327 of the Bankruptcy Code. *Id*. (citing *Rome*, 19 F.3d at 59); *see also MF Global*, 464 B.R. at 602 (a lack of candor in "disclosing [] potential problem[s] for independent court review before a [professional's] appointment . . . in itself, presents an appearance of impropriety.") (quotation omitted). "Absent the spontaneous, timely and complete disclosure required by Section 327(a) and Fed. R. Bankr. P. 2014(a), the court appointed counsel proceed at their own risk." *Fibermark*, 2006 WL 723495, at *9 (emphasis in original) (quoting Rome, 19 F.3d at 59-60));

---

[4] The administrative orders of this Court also require a certification from the professional designated by the applicant with the responsibilities for complying with the Amended Guidelines. Admin. Order M-389 at 1.

*see also In re Roger J. Au & Son, Inc.*, 71 B.R. 238, 242 (Bankr. N.D. Ohio 1986) (failure to disclose fact material to potential conflict may provide totally independent ground for denial of fees quite apart from the actual representation of competing interests).

> b. **Schulman's Simultaneous Representation of the Debtor, its Principal, and its Non-Debtor Affiliates Constitutes a Conflict of Interest**

Schulman was initially retained to represent Dr. Zhang personally as well as any entity in which Dr. Zhang owns an interest. Thereafter, the terms of Schulman's representation of the Debtor were set forth in the Engagement Letter dated August 15, 2023. The Motion does not disclose what information Schulman received at the time it was retained by the Debtor, Dr. Zhang, and the unnamed Zhang Entities. Nor does the Motion disclose the services Schulman performed on behalf of Dr. Zhang personally or for any non-debtor affiliate. In the current bankruptcy context, the conflict is readily apparent. An accountant retained by a bankruptcy estate is a fiduciary of the estate. Where such accountant also represents the non-debtor principal and such principal's wholly owned affiliates, as here, the possibility of conflicts would appear to be highly probable.

The Status Letter noted that while Exhibit A to the Wage Motion (ECF No. 9) suggested that the CEO's annual compensation was approximately $77,000, subsequent statements by the CEO revealed that the actual annual compensation was about $650,000.00, a portion of which was paid through the CEO's wholly owned affiliate. Similarly, Dr. Zhang's wholly owned non-debtor affiliate CCOGS receives approximately 40% of the Debtor's cashflow. While the Status Letter states that Dr. Zhang's monthly compensation is $125,000 per month, the SOFA disclosed that during the one-year period prior to the Petition, Dr. Zhang received "Salary and draws" of

11

$2,650,978.62. Whether any portion of Dr. Zhang compensation was received through CCOGS or some other entity is unknown. What is curious is that the Third Amended MOR for May 2023, filed on August 29, 2023 (ECF No. 107), was presumably prepared by Schulman. As noted in the Status Letter, the Debtor's Third Amended MOR for May 2023 reported a cash ending balance that failed to include the cash balances reported on the bank statements attached to the Amended MOR of CCOGS and another of Dr. Zhang's wholly owned non-debtor affiliates in the approximate amount of $1.7 million. Similarly, the CCOGS cash balances were also excluded from the Debtor's June 2023 and July 2023 MORs' reported cash ending balances. *See* ECF Nos. 108 and 109, respectively. The cash balances in the June 2023 and July 2023 should definitely have been included in the Debtor's reported cash balances for those MORs. The omitted cash balances in the MORs appear to be intentional, raising questions as to whether Schulman's simultaneous representation of multiple clients has created a conflict of interest compromising Schulman's fiduciary obligation to the estate.

**2.** **Schulman has Not Met the Standard for a Post-Petition Retainer**

The United States Trustee objects to the request to pay a post-petition retainer to the Proposed Accountants. As a general rule, courts do not approve the payment of post-petition retainers. *See, e.g., In re Sun Speck Indus., Inc.*, 3 B.R. 703 (Bankr. S.D.N.Y. 1980); *In re Cal Inland, Inc.*, 124 B.R. 551 (Bankr. D. Minn. 1991). Sections 330 and 331 of the Bankruptcy Code require court approval of professional fees prior to payment. While 11 U.S.C. § 328(a) authorizes the employment of professionals "on any reasonable terms and conditions . . . including a retainer," the burden is on the applicant to establish that the payment of a post-petition retainer is warranted. *Cal Inland*, 124 B.R. at 553*, In re Jefferson Business Center*

*Associates*, 135 B.R. 676, 679 (D. Colo. 1992). This showing is required because the efforts of professionals on behalf of an estate are already protected by the priority scheme of sections 503, 507, 1129 and 726 of the Bankruptcy Code, which provide administrative expense priority for professional fees.

In determining whether a post-petition retainer may be warranted, courts often look to, among other things, the following criteria: (1) the retainer's economic impact on the debtor's ongoing business operation; (2) the retainer's economic impact on the debtor's ongoing business operation; (3) the amount and reasonableness of the retainer; (4) the reputation of debtor's counsel; and (5) the ability of debtor's counsel to disgorge such payments at the conclusion of the case should the court determine that the fees paid to counsel are not justified. *Jefferson*, supra at 680; *see also In re Truong*, 259 B.R. 264, 267 (Bankr. D.N.J. 2001) (citing factors in *In re Knudsen Corp.*, 84 B.R. 668 (B.A.P. 9th Cir. 1988), and *Jefferson* factors).

Given the uncertainties regarding the Debtor's operations and finances, a post-petition retainer and monthly payments to Schulman does not appear to be justified.

WHEREFORE, the United States Trustee respectfully requests that the Court deny the motion for an Order (1) Authorizing the Employment of Schulman Lobel LLP as Debtor's Accountants, (2) Permitting the Payment of Monthly Fees and (3) Permitting the Payment of Post-Petition Retainer Dated: New York, New York.

Dated: New York, New York
      September 12, 2023

                                            WILLIAM K. HARRINGTON
                                            UNITED STATES TRUSTEE, Region 2

                    By:    /s/ *Brian S. Masumoto*
                           Brian S. Masumoto
                           Trial Attorney
                           Office of the United States Trustee – NY Office
                           Alexander Hamilton Custom House
                           One Bowling Green, Room 534
                           New York, NY 10004-1408
                           Telephone: (212) 510-0500