Pardalis & Nohavicka LLP
950 Third Avenue, 11th Floor
New York, New York  10022
Tel. No. 718.777.0400
Joseph D. Nohavicka
Norma E. Ortiz, Of Counsel
*Proposed Counsel to the Debtor and*
*Debtor-in-Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
                                                                    :
In re                                                            :
                                                                    :
ZHANG MEDICAL P.C. d/b/a              :
                                                                    :        Case No. 23-10678-pb
NEW HOPE FERTILITY CLINIC        :
                                                                    :        Sub-Chapter V Chapter 11
                                                                    :
                                            Debtor.        :
------------------------------------------------------x

## DEBTOR'S MOTION FOR ENTRY OF AN ORDER PURSUANT TO SECTIONS 105(a) AND 363(b) OF THE BANKRUPTCY CODE AUTHORIZING THE DEBTOR TO RETAIN BEDERSON LLP TO PROVIDE CHARLES N. PERSING AS CHIEF RESTRUCTURING OFFICER

TO THE HONORABLE PHILIP BENTLEY,
UNITED STATES BANKRUPTCY JUDGE:

        Zhang Medical P.C. (the "Debtor"), the above-captioned debtor and debtor-in-

possession, respectfully submits this Motion ("Motion") for entry of an order ("Order"),

substantially in the form attached hereto, authorizing the retention and employment of Bederson

LLP ("Bederson") to provide Charles N. Persing ("Persing") as Chief Restructuring Officer

("CRO") for the Debtor.  In support of the Motion, the Debtor respectfully represents as follows:

**BACKGROUND**

1.      On April 30, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code and elected to proceed in a Subchapter V reorganization case.

2.      On May 2, 2023, the Office of the U.S. Trustee appointed Eric Michael Huebscher as Subchapter V Trustee in the case (the "Trustee").  The Court has recently ruled that it shall enter an order revoking the Debtor's Sub Chapter V designation.  As a result, Mr. Huebscher will no longer serve as the Subchapter V Trustee in this case.

3.      The Court and the parties that have participated in this case are fully familiar with the nature of the Debtor's business as a fertility clinic and the difficulties the Debtor has faced in prosecuting its case.  The Debtor's medical practice has operated without any significant issues related to the quality of the services provided to its patients.  The Debtor consented to the appointment of a Patient Care Ombudsman and continues to provides high-quality medical services to its patients.  The Debtor has been able to meet its post-petition obligations since the Petition Date and believes it has the ability to seek confirmation of a viable plan of reorganization.

4.      However, the Debtor's bankruptcy filing has also brought to light that it is in need of internal financial restructuring to ensure it emerges from Chapter 11 as a stronger business that can provide the greatest recovery to creditors.  The Trustee, the U.S. Trustee, and the Debtor's largest creditor and GLL BVK Columbus Circle LLC (the "Landlord") have raised a number of issues that relate to the Debtor's operations and financial controls that have caused the Court, on no less than two occasions, to question whether the Debtor should consider the appointment of

2

an independent party to exercise control over the Debtor's non-medical operations. Those

concerns include, but are not limited to, questions regarding the compensation paid to the

Debtor's officers, payments made to an entity wholly-owned by one of the Debtor's officers and

transactions between the Debtor and non-debtor entities owned by the Debtor's sole shareholder

Dr. John Zhang that conduct activities that are related to the Debtor's business.

5.      On or about September 13, 2023, in an effort to retain an independent

restructuring professional to advise the Debtor, the Debtor sought to retain the services of Persing

and his firm Bederson to serve as the Debtor's financial advisor. Persing was selected because of

his qualifications as a well-recognized restructuring professional and his experience as a

Subchapter V Trustee. The Debtor also selected Persing because it sought retain an individual

that would be viewed as wholly independent from the Debtor and Dr. Zhang. Persing often

serves as an officer of the court and his commitment to acting in the best interests of the estate

and creditors should be beyond reproach.

6.      The Debtor and the Debtor's proposed professionals have no prior connection to

Persing or Bederson. Persing is the Subchapter V Trustee for the sole shareholder of a corporate

debtor represented by the undersigned in the Eastern District of New York. Other than that

connection, the undersigned has not participated in a case with Persing for many years. Pardalis

& Nohavicka LLP does not have any connection to Persing or Bederson. The Debtor, Dr. Zhang

and any entity owned or controlled by Dr. Zhang had no contact with Persing until Bederson's

recent proposed engagement. Neither Bederson nor Persing have received any compensation

from the Debtor, Dr. Zhang, or any entity or owned or controlled by Dr. Zhang.

7.      When the Debtor selected Persing to serve as CRO, it took into account the

relatively unusual circumstances of this case and did so after conferring with the Office of the

U.S. Trustee ("UST"), the Trustee and the Landlord's counsel Rubin LLC ("Rubin").  As has

been discussed before the Court at recent hearings, the UST stated it would not consent to an

Examiner with expanded powers.  The Debtor agrees with the UST that the appointment of an

Examiner or an Examiner with expanded powers would not allay the concerns of the Court, the

creditors and the UST.  Because the appointment of a Chapter 11 Trustee would effectively

displace the Debtor's management in all aspects of its business, including the management of the

medical services provided by the Debtor, the Debtor believes that the appointment of a Chapter

11 Trustee – which has not been requested by any creditor or party in interest – could adversely

impact the Debtor's ability to operate.  The Debtor has been informed that Dr. Zhang, as a

medical doctor, must remain in control of its business because applicable law and regulations

require that Dr. Zhang oversee the Debtor's operations.

8.     For these reasons, under the circumstances of this case, the Debtor asserts that the

appointment of Persing as the CRO is in the best interests of the estate and a proper exercise of

the Debtor's business judgment.  Persing has familiarized himself with the financial issues facing

the Debtor, has demonstrated that he is willing and able to take the steps necessary to reorganize

the Debtor's business and has shown no hesitation to exercise his power as CRO to act in the

best interests of the estate and creditors.  Persing has invested a significant amount of time

working on, among other things, (a) reviewing the Debtor's books and records, (b) interviewing

the Debtor's staff and officers, (c) reviewing the Debtor's payroll policies, (d) reviewing the

present financial controls utilized by the Debtor and recommending changes to those policies, (e)

interviewing Schulman & Lobel LLP and directing their accounting and bookkeeping activities

4

to ensure that the Debtor complies with its obligations under federal, state and bankruptcy law, (f) communicating with Mazars about the status of the Internal Revenue Services's audit of the Debtor's tax returns, (g) conducting an investigation of the misappropriation of the amount of payroll paid to Adnan Tahirovic and recommending his termination, (h) conducting an investigation of any post-petition payments for pre-petition debt, (i) reviewing the allegations that have been raised by the Trustee, the UST and Landlord's counsel about the propriety of payments made by the Debtor to Chloe Cai and Soyo Wellness Inc., (j) determining what professionals should be retained in the Debtor's case, (k) reviewing the  compensation paid to and proposed to be paid to Dr. Zhang, (l) recommending and participating in the firing and hiring of additional staff and (j) determining what is needed to propose a viable plan of reorganization. Persing has made significant progress in resolving these issues in a relatively short period of time.

9.      As set forth in the Declaration of Dr. John Zhang, annexed hereto as Exhibit A, Dr. Zhang has agreed to ceding financial management and control to Persing of the Debtor's financial operations and has authorized Persing to exercise financial control over Columbus Circle OB/GYN Services Inc. ("CCOGS") and New Hope MSO Inc. ("MSO"):  the two entities that are owned by Dr. Zhang and regularly engage in transactions with the Debtor.

10.      Landlord's counsel expressed a concern, at the status conference conducted by the Court on October 11, 2023, that Persing does not possess sufficient experience in the medical practice field to serve as CRO.  The Debtor respectfully submits that, as set forth in the annexed Declaration of Persing, Persing has restructured a number of entities in a number of industries in which he did not posses a specialty.  The Debtor requires a restructure of its management and

financial controls: it does not require a restructure of its medical practice. But for the Debtor's dispute with the Landlord, the Debtor would not have commenced its bankruptcy proceeding. As a result, the Debtor's reorganization requires a financial restructuring that Persing can effectuate. The retention of another firm or individual would only delay the resolution of the issues stated above. Because of the delay in, among other things, the restating and review of the Debtor's books and records, any introduction of a professional that is not familiar with the facts of this case will simply delay the Debtor's efforts to reorganize.

## JURISDICTION AND VENUE

11.     The United States Bankruptcy Court for the Southern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

12.     The bases for the relief requested are sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code").

## RELIEF REQUESTED

13.     Section 363(b)(1) of the Bankruptcy Code provides in relevant part that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Further, pursuant to section 105(a) of the Bankruptcy Code, the "court may issue any order, process, or judgment that is necessary to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). The Debtor seeks to retain Bederson and Persing as CRO under these provisions.

14.     Under applicable case law, if a debtor's proposed use of its assets pursuant to Section 363(b) represents a reasonable exercise of the debtor's business judgment, such use

should be approved. See, e.g., In re K.G. IM, LLC, 620 B.R. 469, 478 (Bankr. S.D.N.Y. 2020); In re Lionel Corp., 722 F.2d 1063, 1070 (2d Cir. 1983) (court required an "articulated business justification" before granting a motion brought pursuant to section 363(b));  In re Nine West Holdings, Inc., 588 B.R. 678, 692 (Bankr. S.D.N.Y. 2018).

15.     Courts have applied the section 363(b) standard when a debtor seeks to employ one or more individuals to serve as restructuring officers or managers. See In re Occasion Brands, LLC, Case No. 20-11684 (SMB) (Bankr. S.D.N.Y. 2020); In re K.G. IM, LLC, 20-11723 (MG) (Bankr. S.D.N.Y. 2020); In re Cocoa Services, L.L.C., Case No. 17-11936 (JLG) (Bankr. S.D.N.Y. 2017); In re Lehman Brothers Holdings, Inc., Case No. 08-13555 (JMP) (Bankr. S.D.N.Y. Dec. 17, 2008); In re PRC, LLC, Case No. 08-10239 (MG) (Bankr. S.D.N.Y. 2008); In re Bally Total Fitness of Greater N.Y., Inc., Case No. 07-12395 (BRL) (Bankr. S.D.N.Y. 2007); In re Dana Corp., Case No. 06-10354 (BRL) (Bankr. S.D.N.Y. Mar. 6, 2006). The retention of interim corporate officers, such as a CRO, is proper under section 363 of the Bankruptcy Code.

16.     The Debtor believes that Bederson is well-qualified to assist it in its bankruptcy case in an efficient and timely manner.  As set forth in the Declaration of Charles N. Persing, annexed as Exhibit B, Bederson is ready and willing to act in the Debtor's case and render the necessary professional services as CRO to the Debtor on the terms described in the Amended Engagement Letter annexed to Dr. Zhang's Declaration.  Persing has invested a significant amount of time familiarizing himself with the Debtor's operations, its management, its personnel needs, and the financial issues that must be addressed by the Debtor as soon as possible.  The employment of Bederson is appropriate and necessary to enable the Debtor to properly execute its duties as a debtor and debtor in possession and to formulate and propose a

credible and reliable plan of reorganization.  In light of the circumstances of this case, the Debtor has a limited window of time in which select a CRO, provide the CRO with the necessary information to formulate a liquidation analysis, assist with financial projections, value the Debtor's interests in its property and assist with a plan of reorganization.

## A.     **Payment of Compensation to Bederson**

17.     The principal professional designated to represent Debtor is Charles N. Persing with an hourly rate of $490.00.  Other professionals with lower rates from time to time will be involved and Bederson will endeavor to advise the Debtor in a timely fashion of such other professionals' involvement and their rates. Bederson's current rate schedule is as follows:

| Positon | Hourly Rate |
| --- | --- |
| Partner | $390.00 - $490.00 |
| Outside consultants | $305.00 |
| Director | $360.00 |
| Manager | $300.00 - $330.00 |
| Senior Accountants | $285.00 - $300.00 |
| Staff Accountant | $150.00 - $190.00 |
| IT Professionals | $190.00 |
| Para Professionals | $180.00 |

18.     The rates set forth above are subject to periodic review and adjustment. Generally, the rates are subject to an increase near the beginning of each calendar year. If Bederson intends to increase its billable rates in the Debtor's case, it will give ten (10) days' notice to the Debtor and the U.S. Trustee's Office and file such notice on the docket.

8

19.     Additionally, it is Bederson's policy to charge its clients in all areas of practice for all other expenses incurred in connection with their cases. The expenses charged to clients include, among other things, postage, overnight mail, courier delivery, transportation, overtime expenses, and photocopying.  Bederson will charge Debtor's estate for these expenses in a manner and at rates consistent with charges made generally to Bederson's other clients and also in accordance with the Guidelines of the United States Trustee.  Bederson believes that it is fairer to charge these expenses to the clients incurring them rather than to increase the hourly rates and spread the expenses among all clients.

20.     The Debtor submits that Bederson's proposed rate structure is appropriate and not significantly different from (a) the rates that Bederson charges for other similar types of representations, or (b) the rates that other comparable financial advisor would charge to do work substantially similar to the work Bederson will perform in the Debtor's case.

21.     Since Bederson will not be required to submit fee applications pursuant to Sections 330 and 331 of the Bankruptcy Code, it shall file with the court reports of compensation earned and expenses incurred on a monthly basis (the "Reports").  The Reports shall summarize the services provided, identify the compensation earned by each professional provided, and itemize the expenses incurred.  The time records for the CRO and any supporting professional shall be (i) appended to the reports, (ii) contain detailed time entries describing the task(s) performed, and (iii) be organized by project category. When personnel are providing services at an hourly rate, such personnel shall record their time entries in increments of no greater than one half  (0.1) hour.  All compensation shall be subject to review by the Court in the event an objection is filed.  Objections must be filed within ten (10) days of receipt of the Report. If no

objection is timely filed, Bederson's fees and expenses may be paid by the Debtor without further notice.

22.     The proposed fee structure is consistent with, and typical of, compensation arrangements entered into by other comparable firms in connection with the rendering of similar services under similar circumstances. Moreover, given the numerous issues Bederson may be required to address in the performance of its services, its commitment to the time and effort necessary to address all such issues as they arise and the market prices for such services, the Debtor submits that the proposed fee arrangement are reasonable under the circumstances of this case.

**B.      Bederson's Disinterestedness**

23.     To the best of the  Debtor's knowledge, information, and belief, and except as otherwise set forth in the accompanying Persing Declaration, neither Bederson nor any of its professionals is a creditor, equity security holder, or an "insider" of Debtor as that term is defined in Section 101(31) of the Bankruptcy Code prior to its engagement on September 13, 2023. Moreover, Bederson and its professionals have no connection to and no interests adverse to the Debtor, its creditors, the estate, or any other party-in-interest herein or their respective professionals in matters relating to Debtor and its estate, and none of the professionals comprising of or employed by Bederson are related to any judge of the United States Bankruptcy Court for the Southern District of New York or the United States Trustee trial attorney assigned to the Debtor's case.

24.     Although the Debtor is not required to demonstrate that Bederson is disinterested and must qualify under Bankruptcy Code Section 327, the Debtor believes that based upon the

information contained in the Persing Declaration and Dr. Zhang's Declaration, neither Bederson nor any of its professionals (i) is or was a director, officer, or employee of Debtor; (ii) do not hold or represent any interest adverse to Debtor with respect to the matters for which it is being retained; (iii) is a "disinterested person" as that phrase is defined in section 101(14) of the Bankruptcy Code (as modified by Section 1103(b) of the Bankruptcy Code); (iv) Bederson  did not have any connection to the Debtor, its estate, or its creditors prior to September 13, 2023; and (v) Bederson's employment is necessary and in the best interests of Debtor's estate.  For these reasons, the Debtor submits that Bederson's proposed retention is an appropriate use of the Debtor's business judgment and should be approved by the Court.

## NOTICE

25.     The Debtor will provide notice of this Application to the following parties and/or their respective counsel, as applicable: (i) the Office of the United States Trustee for Region 2, Attn: Brian Masumoto; (ii) Eric Michael Huebscher, the Subchapter V trustee; (iii) the Debtor's 20 largest unsecured creditors; and (v) any such other party entitled to notice pursuant to Rule 9013-1(b) of the Local Rules or that requests notice pursuant to Bankruptcy Rule 2002. The Debtor respectfully submits that, in light of the nature of the relief requested, no other or further notice need be given.

## LOCAL RULE 9013-1(a) STATEMENT

26.     This Application includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of their application to this Application. Accordingly, the Debtor submits that this Application satisfies Local Rule 9013-1(a).

11

## NO PRIOR REQUEST

27.    No prior request for the relief sought herein has been made to this Court or any

other court.

WHEREFORE, Debtor respectfully requests entry of an order, substantially in the form

attached hereto, and granting the relief requested herein and such other relief as is just

and proper.

Dated: New York, New York
   Oct. 23, 2023

*/s/Norma E. Ortiz*
Pardalis & Nohavicka LLP
950 Third Avenue, 11th Floor
New York, New York  10022
Tel. No. 718.777.0400
Joseph D. Nohavicka
Norma E. Ortiz, Of Counsel
*Proposed Counsel to the Debtor and*
*Debtor-in-Possession*

**<u>PROPOSED ORDER</u>**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
                            :

In re                         :
                            :

ZHANG MEDICAL P.C. d/b/a     :          Case No. 23-10678-pb
                            :

NEW HOPE FERTILITY CLINIC   :         Sub-Chapter V Chapter 11
                            :

                    Debtor.    :
--------------------------------------------------------x

**ORDER GRANTING DEBTOR'S MOTION FOR ENTRY OF AN ORDER PURSUANT
TO SECTIONS 105(a) AND 363(b) OF THE BANKRUPTCY CODE AUTHORIZING
THE DEBTOR TO RETAIN BEDERSON LLP TO PROVIDE CHARLES N. PERSING
AS CHIEF RESTRUCTURING OFFICER**

Upon the motion (the "Motion") of the above-captioned debtor and debtor in possession

(the "Debtor") for entry of an order ("Order") authorizing the Debtor to retain and employ

Bederson LLP ("Bederson") to provide Charles N. Persing ("Persing") as Chief Restructuring

Officer ("CRO") for the Debtor as of September 13, 2023; and the Court having reviewed the

Motion and the supporting Declarations of Persing and Dr. John Zhang; and the Court having

reviewed the Amended Engagement Letter and to Dr. John Zhang's Declaration; and this Court

having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having

found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C.

§§ 1408 and 1409; and the Court having found that the Motion is a core proceeding under 28

U.S.C. §157(b)(2); and the Court having found that the relief requested in the Motion is in the

best interests of the Debtor's estate, its creditors and other parties in interest and is a proper

exercise of the Debtor's business judgement; and the Court having found that the Debtor

provided adequate and appropriate notice of the Motion under the circumstances and that no

other or further notice is required; and the Court having determined that the legal and factual

bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the

proceedings had before this Court; and after due deliberation and sufficient cause appearing

therefor, it is HEREBY ORDERED THAT:

1. The Motion is granted as set forth herein.

2. Pursuant to 11 U.S.C. §§ 105(a) and 363(b), the Debtor is authorized to enter into the

Amended Engagement Letter nunc pro tunc to September 13, 2023.

3. Bederson shall file with the court reports of compensation earned and expenses

incurred on a monthly basis (the "Reports").  The Reports shall summarize the services provided,

identify the compensation earned by each professional provided, and itemize the expenses

incurred.  The time records for the CRO and any supporting professional  shall be (i) appended to

the reports, (ii) contain detailed time entries describing the task(s) performed, and (iii) be

organized by project category.  All compensation shall be subject to review by the Court in the

event an objection is filed.  Objections must be filed within ten (10) days of receipt of the Report.

If no objection is timely filed, Bederson's fees and expenses may be paid by the Debtor without

further notice.

4. Bederson may not be terminated without prior approval of the Court.

5. Bederson shall act have sole and exclusive control over the financial affairs and non-

medical operations of the Debtor, Columbus Circle OB/GYN Services Inc. and New Hope MSO

Inc.

6. The terms of the Amended Engagement Letter my not be modified or expanded

without prior approval of the Court.

Dated: October    2023
New York, New York

_____
Philip Bentley
U.S. Bankruptcy Judge

**EXHIBIT A**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
                                      :

In re                                   :

                                   :

ZHANG MEDICAL P.C. d/b/a     :

                                   :          Case No. 23-10678-pb

NEW HOPE FERTILITY CENTER    :

                                   :          Sub-Chapter V Chapter 11

                                   :

                    Debtor.     :
---------------------------------------------------------x

## <u>DECLARATION OF JOHN ZHANG</u>

I, John Zhang, duly declare under penalty of perjury that the following is true and correct:

1.      I am the medical director and sole shareholder of Zhang Medical P.C. (the "Debtor").   I authorized the Debtor to retain Bederson LLP and Charles N. Persing ("Persing") to serve as the Debtor's Chief Restructuring Officer ("CRO") to oversee the Debtor's financial restructuring and financial management so that the Debtor can emerge from Chapter 11 with a stronger balance sheet and greater financial stability and meet the terms of its proposed plan of reorganization.

2.      Annexed hereto as Exhibit 1 is a copy of the Amended Engagement Letter I executed on the Debtor's behalf that outlines the terms and conditions of Bederson LLP's and Persing's retention as CRO.   The Debtor has taken great lengths to ensure that Persing has the rights and duties of an officer of the Debtor and can exercise his discretion and control in connection with the scope of the duties outlined in the Amended Engagement Letter.   Those rights include complete financial control over Columbus Circle OB/GYN Services Inc.and New Hope MSO Inc. as they relate to the Debtor's business affairs.   I was informed that Debtor's counsel consulted with GLL BVK Columbus Circle LLC (the "Landlord") and the Subchapter V

1

Trustee (the "Trustee") about the terms of Bederson LLP's engagement as CRO and identified

their issues of concern as they relate to the Debtor's request to retain Bederson LLP.   Debtor's

counsel recommended changes to the Amended Engagement Letter to address the Trustee's and

Landlord's comments and recommendations.

3.      The Debtor engaged Bederson LLP, with Persing as the lead professional, to

serve as the Debtor's financial advisor on or about September 13, 2023.   Prior to that time,

neither I, the Debtor nor any entity in which I own an interest (the "Zhang Entities") had any

connection of any kind to Bederson LLP or Persing. The Debtor sought to retain an experienced

restructuring professional that would be viewed as independent from the Debtor by the Court and

creditors.   Persing's status as a Subchapter V trustee, his extensive bankruptcy and restructuring

background and his reputation were the sole criteria relied upon by the Debtor when selecting

Bederson to serve as financial advisors.   Bederson LLP agreed to undertake the engagement

without any payment of compensation. Bederson LLP has not been paid by the Debtor, myself or

any Zhang Entity. There is no agreement by me or any Zhang Entity that promises to pay

Bederson other than under the terms of the annexed agreement.

4.      I have been informed that the Landlord suggested to the Court that Persing has

been "hand-picked" by the Debtor and should not be viewed as an "independent" person that will

fully exercise his duties as CRO. That assertion is incorrect and not supported by the facts. My

discussions with Persing have been limited to requests for information that I have received from

him when he has visited the Debtor's premises or when he has called me to ask questions

about the Debtor's operations.   Because the majority of my time is spent rendering medical

services to patients seven days a week, Persing has interacted primarily with the Debtor's

financial staff and officers.

2

5.      The Debtor's selection of Persing as CRO was solely driven by what it believed would be in the best interests of the estate.   Persing has invested a significant amount of time becoming familiar with, among other things, the following: the Debtor's billing procedures; its books and records; its proposed professionals; its tax audit; its payroll processes; its staffing requirements; the difficulties related to the accuracy of of its reporting to the court; its need to file amended Schedules of Assets and Liabilities and Statement of Financial Affairs; the delay in preparing an accurate liquidation analysis and projections in support of a plan of resorganization; its urgent need to reach an agreement with the Landlord or engage in the relocation of its business, if required; its relationship with Columbus Circle OB/GYN Services Inc. and New Hope MSO Inc.; and virtually all aspects of the Debtor's business.

6.      I have been informed by counsel that the appointment of a CRO is a voluntary act that should be approved by the Court.   However, I assert that under the circumstances of this case, any suggestion that the Debtor should be required to retain someone other than Bederson LLP and Persing would not be in the best interests of the estate.   Because of the sensitive nature of the Debtor's business, any delay in its reorganization that would result by the appointment of an entity not familiar with the Debtor's business and its reorganization would be harmful to the case and is not warranted.

Pursuant to 28 U.S.C. ss 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 23, 2023
New York, New York

*s/John Zhang*
Dr. John Zhang

**EXHIBIT 1**

**BEDERSON** LLP

ACCOUNTANTS & ADVISORS

100 Passaic Avenue, Suite 310
Fairfield, NJ 07004

October 15, 2023

Zhang Medical P.C.
4 Columbus Circle, 4th Floor
New York. NY 10019
Attn:   Dr. John Zhang,
          President/Medical Director

> **Re:   In re. Zhang Medical P.C.**
> **Case No. 23-10678 (PB)**

Dear Dr. Zhang:

This letter agreement (the "Agreement") confirms the terms under which Zhang Medical P.C., a Chapter 11 debtor (hereinafter, the "Company" or "Debtor"), has agreed to engage Charles N. Persing, CPA of Bederson LLP to act as the Company's Chief Restructuring Officer ("CRO" or "Bederson"), effective as of September 13, 2023, to provide the Company with the Services (defined below), subject to approval and entry of a court order by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered in Case No. 23-10678 (PB) ("Bankruptcy Case"). The Services to be provided are in furtherance of the Debtor's reorganization efforts in the Bankruptcy Case and to enable it to continue as a going concern. This engagement shall provide that the CRO shall have decision-making powers, the ability to control the Debtor's finances, determine compensation levels, make hiring decisions and be in a position to exercise control and direction over the Debtor's finances. The CRO cannot be terminated without court order which ensures that the CRO serves as an independent officer for the benefit of the Debtor, creditors, patients and the Debtor's estate. This engagement letter amends and supersedes Bederson's initial engagement letter dated September 13, 2023. The Company and Bederson are sometimes referred to herein individually as a "Party" and collectively, as the "Parties".

## 1.    SCOPE OF SERVICES

It is agreed that the CRO will provide the following executive level services to the Company in connection with the pending Bankruptcy Case, which services include, but are not limited to the following (collectively, the "Services"):

- The CRO will have sole and exclusive check-signing authority and authority over all financial, banking and business transactions of the Debtor. The CRO will be permitted to delegate specific checks to Debtor's officers to be signed on his behalf with written approval.

- The CRO will select, supervise and direct, a qualified tax accountant to prepare and file any open and outstanding Federal, State and Local tax filings.

- The CRO will review the Company's leasing and utilization of rental space to assist with any lease negotiation and/or contingency planning for the leasing of new space and the associated costs.

- The CRO will supervise and direct all professionals retained by the Debtor, including retention and termination.

- The CRO will select, supervise and direct, to the extent needed, any real estate professionals, lawyers and non-lawyers, ERISA counsel and related professionals for administration of Company plans.

- The CRO will review and approve for filing all fee applications and expense reimbursements.

- The CRO will ensure full financial compliance for both the Debtor and Columbus Circle OB/Gyn Services, Inc. and New Hope MSO Inc., with activity related to the Debtor, addressing financial and operational discrepancies, reviewing intra-company transactions, reviewing insider transactions, implementing remedial action, as necessary, and implementing the appropriate oversight and checks and balances for billing, accounts payable and payroll.

- The CRO will supervise all financial aspects of the Company's reorganization, approving or disapproving expenditures, determining compensation levels, engaging in non-medical staffing decisions, and recruiting a financial controller and bookkeeper, as required.

- The CRO will supervise all billing, financial administration, tax compliance, accounting reconciliation, and updating and reviewing the Company's books and records for clarity.

- The CRO will assess staffing levels, introducing checks and balances, confirming staffing requirements, and ensuring alignment with organizational needs and financial constraints.

- The CRO will develop and implement cash flow projections in coordination with respective departments and conducting cash flow analyses to ensure financial stability and sustainability.

- The CRO will streamline bankruptcy reporting and collaborating with the Company regarding the restructuring plan and monthly operating reports.

- The CRO will work on claims review and analysis in alignment with the Company's book and records, and estimating and valuing any disputed and unliquidated claim.

- The CRO will develop and implement a comprehensive plan to addressing the Company's tax returns and preparation of tax returns and ensuring full compliance with applicable laws and regulations.

- The CRO will oversee the audit process with the IRS and addressing all inquiries and concerns promptly and transparently to resolve any outstanding issues.

- The CRO will clarify the Company's Defined Benefit Plan, ensuring that all provisions are clearly understood and applied correctly, and making any necessary adjustment to align with regulatory requirements and organizational objectives.

- The CRO will assist with the formulation of a restructuring plan, financial projections, valuations, a liquidation analysis, and 13 week cash flow reports, to the extent that outside professional are engaged oversee the related activity.

- The CRO will assist the Company with cash management and cash flow forecasting processes, including the monitoring of actual cash flow versus projections.

- The CRO will assist in negotiations with creditors and any restructuring plan, providing testimony in court, as required, and providing such other advice as may be necessary in connection with a restructuring plan or otherwise in connection with the Bankruptcy Case.

- The CRO will maintain financial oversight of Columbus Circle OB/Gyn Services, Inc. and New Hope MSO Inc. as it relates to the Debtor's business operations of. including the authority over all financial transactions of these entities.

- The Debtor in coordination with the CRO shall   ensure compliance with all regulatory, statutory and legal requirements for the operation of a medical practice to ensure that the Debtor's operations are compliant with all applicable Federal, State and Local laws, rules and regulations.

**IT IS UNDERSTOOD AND AGREED THAT THE SERVICES PROVIDED HEREIN ABOVE, WILL NOT DUPLICATE THE SERVICES OF ANY OTHER PROFESSIONAL RETAINED IN THE BANKRUPTCY CASE.**

**IT IS ALSO UNDERSTOOD AND AGREED THAT THE CRO CANNOT BE TERMINATED WITHOUT BANKRUPTCY COURT APPROVAL.**

**NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, IN THE EVENT OF ANY CORPORATE DEADLOCK AND/OR OTHER DISPUTE BETWEEN THE CRO AND THE DEBTOR** ~~BOARD~~**, THE PARTIES SHALL BE AUTHORIZED AND PERMITTED TO BRING SUCH CORPORATE DEADLOCK AND/OR DISPUTE TO THE ATTENTION OF THE BANKRUPTCY COURT WHO SHALL MAINTAIN EXCLUSIVE JURISDICTION TO RESOLVE AND DETERMINE SUCH CONTROVERSY.**

To assist with the Services, Bederson will need certain files and documents from the Company. Additionally, the Company agrees to cooperate with Bederson and provide any and all information and/or documents necessary for the effective performance of the Services.

If circumstances arise relating to the conditions of the records, the availability of sufficient, relevant data or indications of fraudulent financial reporting, or misappropriation of assets, which in Bederson's professional judgment prevents Bederson from completing the engagement, Bederson reserves the unilateral right, upon prior written notice to you to take any course of action permitted by professional standards including withdrawal from this Agreement.

It is understood that the engagement of Bederson cannot be relied upon to disclose errors, fraud, or illegal acts that may exist, however, Bederson will inform you if any such matters comes to its attention. Moreover, please note that the Company, and the Company alone, is the only entity or person(s) to which Bederson shall perform the Services for, and this Agreement shall not act as an engagement with or for any affiliates (except for financial oversight of Columbus Circle OB/Gyn Services, Inc. and New Hope MSO Inc. as set forth herein, related individuals or any officers, directors, employees, independent contractors or agents of the Company, unless the Company and Bederson have specifically agreed to do so elsewhere in this letter or by separate written agreement.

Bederson will notify the Company's management if it encounters matters that exceed the scope of this Agreement , and in that case, if the Company agrees and subject to Bankruptcy Court approval if necessary, such additional services shall be performed under an amendment to this Agreement or a separate engagement agreement. Moreover, this engagement does not include any services not specifically identified in this Agreement, and any additional services requested by the Company will be subject to a separate written understanding with hourly rates consistent with this Agreement, before the additional services are commenced. With respect to any such future engagement, Bederson will conduct a conflict, if appropriate.

## 2.    TERM AND TERMINATION

This Agreement may not be terminated without Bankruptcy Court approval. The expiration or termination of this Agreement shall not affect any provisions of this Agreement. which provisions shall survive any termination hereof, other than the provisions of Section 1 above, or Bederson's right to receive, and the Company's obligation to pay, any and all fees, expenses, and other amounts due, as set forth herein.

The Company shall have the right to immediately terminate this Agreement for cause upon written notice to Bederson. Termination for "cause" shall mean any termination as a result of Bederson's

fraud, misrepresentation, willful misconduct or material breach by Bederson of any of the terms of this Agreement which have not been cured within five (5) days of written notification thereof.

Upon termination of this Agreement by either Party, Bederson shall immediately: (i) discontinue all Services; and (ii) deliver to the Company all information, reports, papers, drafts, and other materials prepared or obtained by Bederson in performing the Services, whether completed or in process.

## 3.   FEES/EXPENSES/TERMS OF PAYMENT

Bederson will charge for Services contemplated in this Agreement at each professional's standard rate, which rates presently range from $180 to $490 per hour. Other professionals with lower rates may be involved and Bederson will endeavor to advise the Company in a timely fashion of such other professionals' involvement and their rates. Fees shall be billed pursuant to the foregoing hourly rates for all services rendered during the Term. Our current rate schedule is as follows:

| Positon | Hourly Rates |
|---|---|
| Partner | $390.00-$490.00 |
| Outside consultants | $305.00 |
| Director | $360.00 |
| Manager | $300.00-$330.00 |
| Senior Accountants | $285.00-$300.00 |
| Staff Accountant | $150.00-$190.00 |
| IT Professionals | $190.00 |
| Para Professionals | $180.00 |

Although it is difficult to estimate the amount of time that this engagement may require, it is our intention to work closely with you to structure our work so that the appropriate personnel from our staff are assigned in order to keep fees at a minimum.

Bederson's invoices will also include reasonable and customary charges for costs and expenses without markup ("Expenses"). Such costs and expenses will include, among others, charges for messenger services, air couriers, photocopying, court fees, travel expenses (at coach class) , postage for large mailings, conference line services, computerized legal research, investigative searches, and other charges customarily invoiced by law firms in addition to fees for legal services. Non-working travel time is billed at half of a professional's hourly rate.

The Company shall be solely responsible for the Fees and Expenses. Bederson will deliver statements for fees and expenses on a monthly basis. Services and expenses not posted as of a bill's closing date will appear on a subsequent bill. The Company agrees to work with Bederson to file and serve fee applications as required under the Bankruptcy Code, Bankruptcy Rules and Local Rules for payment of the accrued amounts for Fees and Expenses.

In the event that any undisputed Fee or Expense is not paid as required by this Agreement, Bederson will have the unconditional right, in its sole discretion, at any time, to discontinue further

Services under this Agreement. In the event of termination of this Agreement, except for termination by the Company for cause, it is agreed that Bederson shall be entitled to any Fees and Expenses earned prior to that point.

Notwithstanding the above, Bederson shall file with the Court and serve on the parties reports of monthly activities, milestones achieved and compensation earned and expenses incurred on a monthly basis. Such reports shall consist of summary charts that describe the services provided, identify the compensation earned by each professional provided, and itemize expenses incurred. Time records for the CRO and the professionals shall: (i) be appended to the reports, (ii) contain detailed time entries describing the task(s) performed, and (iii) be organized by project category. When personnel are providing services at an hourly rate, such personnel shall record their time entries in increments of one tenth (0.1) of an hour for each distinct task and/or services. All compensation shall be subject to review by the Court in the event an objection is filed. Objections must be filed within ten (10) days of receipt of the report. If no objection is timely filed, Bederson's fees and expenses may be paid without further notice. Because Bederson and the CRO are not employed as professionals under section 327 of the Bankruptcy Code, Bederson will not submit regular fee applications pursuant to sections 330 and 331 of the Bankruptcy Code.

## 4.    RECORD RETENTION

It is our current policy to retain this engagement's documentation for a period of seven (7) years, after which time we will commence the process of destroying the contents of our engagement files. To the extent we accumulate any of the Company's original records during the engagement, those documents will be returned to you promptly upon completion of the engagement. The balance of our engagement file, other than a copy of your tax return, which we will provide to the Company at the conclusion of the engagement, is our property, and we will provide copies of such documents at our discretion and if compensated for any time and costs associated with the effort. The working papers and files of our firm are not a substitute for your original records and documents.

In the event that we incur any costs, or become obligated to pay any judgment or similar award as a result of any inaccurate or incomplete information that the Company will provide to us during the course of this engagement, you and the Company agree to indemnify us, defend us, and hold us harmless as against such costs and obligations.

## 5.    E-MAIL COMMUNICATIONS

In connection with this engagement, Bederson may communicate via e-mail transmission. As e-mails can be intercepted and read, disclosed, or otherwise used or communicated by an unintended third party, or may not be delivered to each of the parties to whom they are directed and only to such parties, we cannot guarantee or warrant e-mails from Bederson will be properly delivered and read only by the addressee. Therefore, we specifically disclaim and waive any liability or responsibility whatsoever for interception or unintentional disclosure or communication of e-mail transmissions, or for the unauthorized use or failed delivery of e-mails transmitted by us in connection with the performance of this engagement. In that regard, Bederson shall have no liability for any loss or damage to any person or entity resulting from the use of e-mail

transmissions including any consequential, incidental, direct, indirect, or special damages, or disclosure or communication of confidential or proprietary information.

## 6.    INDEPENDENT CONTRACTOR

Bederson is an independent contractor under this Agreement, and accordingly, this Agreement shall not be an employment agreement. No one on behalf of Bederson, nor any employees, agents, or independent contractors thereof, shall be considered to be a director, officer, member, manager, partner, control person, employee, representative, agent or insider of the Company, unless expressly agreed to in a writing signed by the Company and Bederson. Bederson will have exclusive control over the management and operation of Bederson, including hiring and paying the wages or other compensation of its personnel. The Bederson personnel that provide services to the Company under this Agreement may also provide services to other past, present or future Bederson clients. In addition, like other advisory firms, Bederson may utilize the services of qualified independent project employees, who work under our direct supervision for us on an ad hoc basis as temporary employees, to assist Bederson with its performance of its services pursuant to this Agreement. This arrangement enables Bederson to reduce its overhead and provide cost-effective services to its clients, who benefit from this saving by its reasonable rate structure.

## 7.    CONFLICTS OF INTEREST

Bederson has commenced a 'check for possible conflicts of interest and have not discovered any matters which we believe would raise a conflict of interest. If you are aware of any facts which may give rise to a conflict of interest, please contact us immediately.

As you know, Bederson represents many companies and individuals. It is possible that during the course of this engagement another client may have a dispute with or a matter adverse to the Company in matters unrelated to this engagement or any subsequent engagement for the Company. This will confirm that Bederson may continue to represent or may undertake in the future to represent existing or new clients in any matter that is not substantially related to the Services being performed hereunder, unless the interests of such clients in those other matters are directly adverse to those of the Company, .and subject to Bankruptcy Court approval after disclosure as required by the Bankruptcy Code and Bankruptcy Rules. It is agreed however, that Company's prospective consent to conflicting representations contained in this paragraph will not apply in any instance where, as a result of Bederson's representation of the Company, Bederson have obtained proprietary or other confidential information of a .non-public nature that, if known to such other client, could be used in any such matter by such client to the Company's material disadvantage.

## 8.    CHOICE OF LAW; JURY TRIAL WAIVER; JURISDICTION

THIS AGREEMENT SHALL BE DEEMED TO BE MADE IN NEW YORK. THIS AGREEMENT AND ALL DISPUTES ARISING OUT OF OR RELATED TO THIS AGREEMENT (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS. EACH OF BEDERSON AND THE COMPANY IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING AND EXCEPT FOR ANY ACTUAL

FRAUD, BAD FAITH, WILLFUL MISCONDUCT OR GROSS NEGLIGENCE, WAIVES ANY COUNTERCLAIM (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) RELATED TO OR ARISING OUT OF THE ENGAGEMENT OF BEDERSON PURSUANT TO, OR THE PERFORMANCE BY BEDERSON OF THE SERVICES CONTEMPLATED BY, THIS AGREEMENT. REGARDLESS OF ANY PRESENT OR FUTURE DOMICILE OR PRINCIPAL PLACE OF BUSINESS OF THE PARTIES HERETO, EACH PARTY HEREBY IRREVOCABLY CONSENTS AND AGREES THAT ANY CLAIMS OR DISPUTES BETWEEN OR AMONG THE PARTIES HERETO ARISING OUT OF OR RELATED TO THIS AGREEMENT (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) SHALL BE BROUGHT AND MAINTAINED IN THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK BY THE HONORABLE PHILIP BENTLEY (THE "COURT"), WHICH COURT SHALL HAVE EXCLUSIVE JURISDICTION OVER THE ADJUDICATION OF SUCH MATTERS. THE PARTIES HERETO AGREE TO VENUE IN THE COURT. EACH PARTY FURTHER IRREVOCABLY SUBMITS AND CONSENTS IN ADVANCE EXCLUSIVELY TO SUCH JURISDICTION AND VENUE IN ANY ACTION OR SUIT COMMENCED IN THE COURT, AND HEREBY WAIVES IN ALL RESPECTS ANY CLAIM OR OBJECTION WHICH IT MAY HAVE BASED UPON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON CONVENIENCE. THE CLIENT AGREES THAT A FINAL JUDGMENT IN ANY SUCH ACTION, SUIT OR CLAIM BROUGHT IN THE COURT SHALL BE CONCLUSIVE AND BINDING UPON IT AND MAY BE ENFORCED IN ANY OTHER COURTS HAVING JURISDICTION OVER IRREVOCABLY CONSENTS TO SERVICE OF PROCESS IN ALL SUCH DISPUTES BY THE MAILING OF COPIES OF SUCH PROCESS TO THE CLIENT AT THE ADDRESS SET FORTH ABOVE, OR AS MAY DESIGNATED IN THE FUTURE BY THE CLIENT. NOTWITHSTANDING THE FOREGOING, AS LONG AS THE BANKRUPTCY CASE REMAINS PENDING.

## 9.   INDEMNIFICATION/STANDARD OF CARE

As a material part of the consideration for the agreement of Bederson to furnish the Services under this Agreement, the Company agrees (i) to indemnify and hold harmless Bederson, and their respective past, present and future directors, officers, partners, members, employees, agents, representatives, advisors, subcontractors and controlling persons (collectively, the "Indemnified Parties"), to the fullest extent lawful, from and against any and all losses. claims, damages or liabilities (or actions in respect thereof), joint or several, arising out of or related to Bederson's engagement under, or any matter referred to in, this Agreement, and (ii) to reimburse each Indemnified Party for all expenses (including, without limitation, the reasonable and documented fees and expenses of counsel) as they are incurred in connection with investigating, preparing, pursuing, defending. settling, compromising or otherwise becoming involved in any action, suit, dispute, inquiry, investigation or proceeding, pending or threatened, brought by or against any person or entity (including, without limitation, any shareholder or derivative action or any claim to enforce this Agreement), arising out of or related to such engagement or matter. However, the Company shall not be liable under the foregoing indemnification provision for any loss, claim, damage or liability which is finally judicially determined by a court of competent jurisdiction to have resulted primarily from a material breach of this Agreement, or actual fraud, bad faith, the

willful misconduct or gross negligence of such Indemnified Party. Any claim for indemnification requires prior Bankruptcy Court approval.

If any action, suit, proceeding or investigation or similar item is commenced as to which an Indemnified Party is entitled to indemnification hereunder, it shall notify Company with reasonable promptness; provided, however, that any failure to so notify Company shall not relieve Company from its obligations hereunder (except to the extent Company is materially and adversely affected by such failure to be given notice). Bederson shall have the right to retain counsel of its own choice to represent it, and Company shall pay the reasonable fees, expenses and disbursements of cooperate with Company and any counsel designated by Company. Company shall not without such counsel; and such counsel shall to the extent consistent with its professional responsibilities written prior consent of Bederson, settle or compromise any claim against Bederson, or permit a default or consent to the entry of any judgment in respect thereof, unless such settlement, compromise or consent includes as an unconditional term thereof, the giving by the claimant to Bederson of an unconditional release from all liability in respect of such claim.

Notwithstanding the foregoing, in no event shall the Indemnified Parties be required to contribute an aggregate amount in excess of the amount of fees actually received by Bederson from the Company pursuant to this Agreement.

The Company further agrees that neither Bederson nor any other Indemnified Party shall have any liability (whether direct or indirect and regardless of the legal theory advanced) to the Company or any person or entity asserting claims on behalf of or in right of the Company arising out of or related to Bederson's engagement under, or any matter referred to in, this Agreement, except for a material breach of this Agreement or losses, claims, damages or liabilities incurred by the Company which are finally judicially determined by a court of competent jurisdiction to have resulted primarily from the willful misconduct or gross negligence of such Indemnified Party.

The indemnity, reimbursement, and other obligations and agreements of the Company set forth herein (i) shall apply to any modifications of this Agreement, (ii) shall be in addition to any obligation or liability which the Company may otherwise have to any Indemnified Party, and (iii) shall survive the completion of the services described in, and any expiration or termination of the relationship established by, this Agreement, the Company agrees that Bederson would be irreparably injured by any material breach of any such obligations or agreements, that money damages alone would not be an adequate remedy for any such breach and that, in the event of any such breach. Bederson shall be entitled, in addition to any other remedies, to injunctive relief and specific performance.

## 10.    INSURANCE.

Concurrently upon the acceptance of the appointment of the CRO, the Company shall cause its insurance broker and/or provider to (i) procure or to add the CRO and Bederson to any existing Directors & Officers insurance policy, or (u) or if such policies do not exist, cannot be located or determined, or are not acceptable to Bederson, the Company shall purchase (supplemental) directors, officers and corporate liability insurance, fiduciary liability insurance and employment practices insurance coverage acceptable to Bederson (either (i) or (u), (the "D&O Policy"). The

Company has or will provide Bederson with evidence of the D&O Policy, including, a Certificate of Insurance which both designates the CRO as an Individual Insured under the D&O Policy and requiring insurer to provide Bederson and the CRO with ten (10) days' notice prior to cancellation of the D&O Policy. The Company shall send copies of all documentation and other communications regarding the D&O Policy, including, without limitation, any renewal or cancellation thereof, to the attention of the CRO and Bederson, and the Company shall extend the claim period upon any renewal or cancellation of the D&O Policy for a period of one (1) year and pay such premiums required thereunder. In addition to its responsibilities and requirements hereunder, the Company shall take all required steps to insure all persons serving as officers of the Company provided by Bederson, including the CRO, shall receive the benefit of indemnifications and insurance provided to all other senior executive officers or directors on the same terms as such persons, whether under the corporate bylaws or applicable state law.

**11.    MISCELLANEOUS**

This Agreement contains the entire agreement of the Parties, and it may not be changed orally, but only by a subsequent agreement in writing that is signed by the Parties and approved by the Bankruptcy Court. This Agreement supersedes all prior agreements and all agreements made contemporaneously with the execution of this Agreement. No representations, inducements, promises, agreements, arrangements or undertakings between the Parties not embodied herein shall have any force or effect. Any prior agreement or oral contemporaneous agreements may not be used to contradict, supplement or explain this Agreement. Nothing contained in this Agreement constitutes or should be construed to be a promise or warranty of the outcome of this engagement, and you (on behalf of the Company) agree to hold Bederson harmless and shall have no rights or claims against Bederson for any outcome of this engagement. Lastly, you warrant and represent that you have the requisite authority and have been duly authorized to execute and bind the Company hereto.

If the foregoing is in accordance with your understanding, please sign this where indicated and immediately return it to me. If you have any questions about the terms of this Agreement please do not hesitate to call me to discuss them.

Bederson is pleased to have the opportunity to be of service to the Company.

Very truly yours,

BEDERSON LLP

Charles N. Persing
Partner

THIS ENGAGEMENT AND ITS TERMS AS SET FORTH ABOVE ARE ACCEPTED AND AUTHORIZED ON BEHALF OF THE COMPANY AS OF THE EFFECTIVE DATE, SUBJECT TO BANKRUPTCY COURT APPROVAL

ZHANG MEDICAL P.C.

By:_____

Name: Dr. John Zhang
Title:  President and Medical Director

**EXHIBIT B**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------x
                                  :

In re                           :

                                 :

ZHANG MEDICAL P.C. d/b/a     :         Case No. 23-10678-pb

                                 :

NEW HOPE FERTILITY CENTER   :        Sub-Chapter V Chapter 11

                                 :

                   Debtor.    :

--------------------------------------------------------x

## <u>DECLARATION OF CHARLES N. PERSING</u>

     I, Charles N. Persing, duly declare under penalty of perjury that the following is true and correct:

     1.     I am a partner of Bederson LLP ("Bederson"). The facts set forth in this Declaration are personally known to me and, if called as a witness, I could and would testify thereto.  1 am fully familiar with the facts hereinafter stated based upon my personal knowledge or knowledge derived from discussions with other Bederson professionals and/or my review of the documents obtained and the files created in this case.

     2.     I submit this Declaration in support of the Debtor's Application (the "Application") for Entry of an Order Authorizing the Debtor to Employ Bederson LLP to Provide Charles S. Persing as Chief Restructuring Officer ("CRO").  On or about September 13, 2023, Bederson was engaged by the Debtor to serve as its proposed financial advisors.  The Debtor filed an Application to retain Bederson in that capacity but will withdraw that request if the present application is granted.

     3.     I have extensive restructuring experience and presently serve on the panel of

1

Subchapter V Trustees in the Southern and Eastern Districts of New York.  A copy of my curriculum vitae is annexed as Exhibit 1.  I and the other professionals of Bederson have significant bankruptcy-related financial advisory and accounting experience.  In addition, Bederson has rendered accounting and other advisory services to physicians and medical practices and has the requisite experience to assist the Debtor in reorganizing its financial affairs.

4.    I have utilized my experience and professional background to turn around a number of companies in distress, including a company focused on technology, a large home heating company, a precious metals company, and a recycling company.  During those engagements, I have not hesitated to recommend – or require – the termination of key employees and management by shareholders when I concluded that it would result in a benefit to the entity. I have also overseen a wide variety of Chapter 11 debtors engaged in commercial activity as a Subchapter V Trustee.

5.    Bederson has significant experience managing the cash flow of financially distressed companies and maximizing the value of their assets.  I have spent a significant amount of time familiarizing myself with the Debtor's business during a relatively short period of time.  I have undertaken the following since Bederson was engaged on September 13, 2023.

- Visited the Debtor's premises on numerous occasions to interview its staff and determine if there are any issues with patient care;

- Reviewed the Debtor's obligations to the Patient Care Ombudsman ("PCO") to ensure that the Debtor has been complying with its obligations to the PCO;

- Interviewed John Zhang and the two other officers of the Debtor and  recommended the termination of the Debtor's Chief Financial Officer;

- •Overseen the detailed review and restatement of the Debtor's books and records;

- Conducted numerous meetings and calls with the Debtor's proposed accountants Schulman & Lobel LLP, Mazars, and other professionals involved in the case;

2

- Reviewed payroll policies and practices and discussed the restructuring of compensation paid to the two remaining officers;

- Recommended the employment of an internal bookkeeper with reorganization experience and the employment of a controller with medical practice experience, in addition to other financial staff;

- Reviewed the status of the Debtor's tax audit;

- Investigated the status of the Debtor's pension plan and

- Reviewed transfers to and from Columbus Circle OB/GYN Services Inc. ("CCOGS") and New Hope MSO Inc. ("MSO");

- Reviewed and recommended changes to the financial controls utilized by the Debtor and

- Interviewed the Debtor's employees regarding any payment of pre-petition debt after the bankruptcy filing.

A.    Bederson's Disinterestedness

6.    Insofar as I have been able to ascertain, except as described herein, the professionals of Bederson are disinterested parties within the meaning of Section 101(14) of the Bankruptcy Code, and have no interest adverse to and no connections with the Debtor, the Debtor's estate, its creditors, the U.S. Trustee trial attorney assigned to the Debtor's case, or any other party-in-interest herein or their respective attorneys with respect to matters for which Bederson is to be engaged.   A copy of the list of creditors and other parties in interest that was utilized to perform a conflict check is annexed as Exhibit 2.   Bederson has no subsidiaries or affiliates.

7.    To the best of my knowledge, neither Bederson or any of its employees and consultants is or was, a director, officer, or employee of Debtor.   To the best of my knowledge, Bederson, its employees and consultants have no connection with and no interests adverse to Debtor, the

estate, its creditors, or any other party-in-interest herein or their respective professionals before it was engaged on September 13, 2023.

8.  To the best of my knowledge except as otherwise described below, Bederson, their employees and consultants have no connection with and no interests adverse to Debtor, the estate, its creditors, or any other party-in-interest herein or their respective professionals.  To the best of my knowledge, none of the principals, employees or consultants of Bederson are otherwise related to any judge of the U.S. Bankruptcy Court for the Southern District of New York, the United States Trustee, or any person employed in the Office of the United States Trustee.

9.  There are no arrangements between Bederson and any other entity for the sharing of compensation received or to be received in connection with this case, except insofar as such compensation may be shared among members, employees, and independent contractors of Bederson.

10.  Neither Bederson nor I had any prior relationship or connection to the Debtor, its sole shareholder, its officers, or any entity in which its officers or shareholders own or control an interest.  Bederson has not received any compensation from the Debtor or any other person or entity related to this case since it was engaged on September 13, 2023.

B.  Scope of Services

11.  The scope of services are set forth in the Amended Engagement Letter annexed to the accompanying Declaration of John Zhang.  Bederson and I have agreed to ensure that none of its services will duplicate the services rendered by any other professional retained in this case. Because of the unusual circumstances of this case, the Debtor has consented to provide me with complete control over all check-writing and financial control on behalf of the Debtor, CCOGS

4

and MSO and sole and exclusive decision-making authority over the hiring and firing of non-medical personnel and all financial aspects of the Debtor's business. The Debtor and Dr. Zhang understand that I fully intend to exercise my authority as an officer over all financial aspects of the Debtor's business. The Debtor and Dr. Zhang have agreed that Bederson may not be removed as CRO without a court order.

C.    Compensation

12.    Bederson will charge for its services on an hourly basis in accordance with its ordinary and customary hourly rates for services of this type and nature and for this type of matter in effect on the date such services are rendered and for its actual, reasonable and necessary out of-pocket disbursements incurred in connection therewith. I will be the principal professional designating services to the Debtor at hourly rate of $490.00. From time to time other Bederson employees and consultants will assist with rates range from S180.00 to $490.00 per hour. Bederson's hourly rates are subject to adjustment on a periodic basis, typically annually. Notice of any proposed increase of these rates will be provided to the Office of the U.S. Trustee and filed with the court.

13.    Should the Court grant the Debtor's request to retain Bederson pursuant to Section 363, Bederson will file monthly fee and expense reports with the court that are supported by time records and an itemized list of expenses. All compensation shall be subject to review by the Court in the event an objection to the fees requested is filed. Objections must be filed within ten (10) days of receipt of the report. If no objection is timely filed, Bederson's fees and expenses may be paid without further notice. Because Bederson will not be employed as professionals under section 327 of the Bankruptcy Code, Bederson will not submit regular fee applications pursuant to sections 330 and 331 of the Bankruptcy Code.

5

14.    Pursuant to 28 U.S.C. ss 1746, I declare under penalty of perjury that therefore going is true and correct.


Dated: October 23, 2023

*s/Charles N. Persing*
Charles N. Persing, Partner
Bederson LLP

**EXHIBIT 1**

**CHARLES N. PERSING**
**CPA/CFF, CVA, CIRA, CFE**

**BEDERSON** LLP
*Accountants and Advisors since 1937*

**PARTNER**

## EDUCATION:

Mr. Persing has a Bachelor of Science Degree in Business Administration majoring in Accounting from Drexel University. His education has been supplemented by various continuing education courses offered by a variety of professional organizations, which resulted in the following certifications and licenses:

>      Certified Public Accountant (CPA) in Pennsylvania
>      Certified in Financial Forensics (CFF)
>      Certified Insolvency and Restructuring Advisor (CIRA)
>      Certified Valuation Analysts (CVA)
>      Certified Fraud Examiners (CFE)

## EMPLOYMENT/EXPERIENCE:

Mr. Persing has provided a variety of financial consulting and accounting services as part of his roles in public and private companies and consulting since 1981. Chuck has been exposed to all aspects of bankruptcy and financial restructuring. Mr. Persing has acted as the financial advisor and in other fiduciary capacities to Debtors, Official Committees, litigation and liquidating trustees and both Chapter 7 and Chapter 11 Trustees,. Recently, Chuck has been a receiver and a CRO to a Chapter 11 trustee, and has assisted trustees and others in sales of assets including real estate, annuities, industrial equipment, and entire businesses. Chuck was selected as a Subchapter V Trustee in the Eastern and Southern Districts of New York and has served in over 30 Subchapter V cases and counting. Chuck is also a member of the National Association of Bankruptcy Trustees' board and its treasurer. In addition he represents Chapter 7 Trustees in PA, NY, DE and CT and performing valuations and handling commercial disputes.

Earlier, he has spent approximately four years with a formerly publicly traded company during its Chapter 11 and 7 proceedings assisting in all aspects of the proceedings, during the last two of those years his efforts were spent providing extensive litigation support in various matters including a $300 million preference and contract dispute adversary action.

Prior experience included two years in various Corporate Development and M&A assignments for a publicly traded Telecommunications Company, several of the assignments involved troubled investments or contract dispute resolution. Earlier, Mr. Persing spent 14 years in various financial and operational capacities in the radio and media industries providing M&A, Financing and post-acquisition restructuring services. Initially, Mr. Persing spent four years with a Philadelphia based Regional Public Accounting firm.

## Representative assignments on which he has worked include:

- Acquisition Disputes
- Asset Recovery and Liquidation
- Bankruptcy and Troubled Company Issues
- Business Reorganizations
- Fraud Investigation
- Receiverships
- Assisting Liquidation Trustees
- Assisting Litigation Trustees

- Economic Damages Analysis
- Business Valuation
- Merger and Acquisition Assistance
- Policies and Procedures Reviews
- Due Diligence Assistance
- Litigation support
- Assisting Plan administrator
- Subchapter V Trustee in the Eastern and Southern Districts of New York

**CHARLES N. PERSING**
**CPA/CFF, CVA, CIRA, CFE**

**BEDERSON** LLP
*Accountants and Advisors since 1937*

**PARTNER**

<u>**ASSOCIATIONS:**</u>

American Institute of Certified Public Accountants (AICPA)
National Association of Certified Valuation Analysts (NACVA)
Association of Insolvency and Restructuring Advisors (AIRA)
Association of Certified Fraud Examiners (ACFE)
Pennsylvania Institute of Certified Public Accountants (PICPA)
Turnaround Management Association (TMA)

**CHARLES N. PERSING**
**CPA/CFF, CVA, CIRA, CFE**

**BEDERSON** LLP
*Accountants and Advisors since 1937*

**PARTNER**

## Specific Experience

Mr. Persing has provided tax accounting and advisory services to Debtors, Trustees in all aspects of bankruptcies and has been called upon to assist Chapter 7 Trustees, Litigation and Liquidating Trustees and Receivers with litigation assistance including revaluation of proposed settlements and the related financial implications of the settlement. Mr. Persing as serviced as a Receiver. In addition Mr. Persing has marketed, sold numerous assets/companies for Chapter 7 trustees domestically and internationally and has operated a division of a formerly public Chapter 7 Company until sale. In that same case Mr. Persing assisted the litigation team in trail which resulted in a $320,000,000 collection. Mr. Persing has consulted for other Bederson Partners in various aspects of litigation, liquidating and receiver cases.

Mr. Persing has been a Receiver in the following cases:
- A-1 Specialized Services & Supplies, Inc.
- Hovatter Friedman, Saputelli & Levi LLP
- West Girard Holdings

Mr. Persing has represented Liquidating/Litigation Trustees in the following cases:
- CVC CCL Holdings, Inc./Liquidating Trust
- DCI Management Group, Inc.
- CT1 LLC
- EBHI Liquidating Trust
- Specialty Packaging Holdings, Inc.
- Unilife Creditor's Liquidation Trust
- Gumps Holdings Liquidating Trust
- NSC Liquidating Trust
- Patriot National Inc.
- PBS Brand Co., LLC
- Rams Associates, LP
- Schurman Fine Paper & Subsidiary
- The Relay Company LLC
- William Bowman Associates Inc. Liquidating Trust

Mr Persing is currently representing a post confirmation Plan Administrator:
- ION Geophysical Corporation

Mr. Persing has represented Chapter 11 trustees as follows:
- Sno Mountain LP (As Accountant and Advisor)
- Choates G. Construction, LLC (Sub V) (As Accountant and Advisor)

Mr. Persing has represented Chapter 11 trustees as follows:
- Mairec Precious Metals US Inc (Operating Officer and Advisor)

**CHARLES N. PERSING**
**CPA/CFF, CVA, CIRA, CFE**

**BEDERSON** LLP
*Accountants and Advisors since 1937*

**PARTNER**

## Testimony

| 2008 | U.S. Bankruptcy Court, Eastern District of Pennsylvania | Testimony | Chapter 7 Trustee for the Estate of Pennsylvania Gear Corporation – Debtor v. William Stranahan, et al. – fraudulent conveyance action |
|------|------|------|------|
| 2010 | Superior Court of New Jersey, Essex County, New Jersey | Deposition | Lava Java, Inc., v. Radamaes Velazquez, JR. Shane DeLeon, Gold, Albanese & Barletti (as successor in interest to Gold, Albanese, Barletti & Velazquez), John Does 1-10 and Richard Roes 1-10. - Professional malpractice |
| 2011 | U.S. Bankruptcy Court, District of New Jersey | Testimony | Chapter 11 Estate of Ben and Susan Costanza – Confirmation Hearing |
| 2012 | Superior Court of New Jersey, Morris County, New Jersey | Deposition | 333 Realty L.L.C. v. CherryRoad Technologies, Inc. – Lease termination damage analysis |
| 2012 | U.S. Bankruptcy Court, District of New Jersey | Deposition | Chapter 11 Estate of One2One Communications, LLC– Confirmation Hearing |
| 2012 | U.S. Bankruptcy Court, District of New Jersey | Testimony | Chapter 11 Estate of One2One Communications, LLC – Confirmation Hearing |
| 2013 | U.S. Bankruptcy Court, District of New Jersey | Deposition | Chapter 11 Estate of One2One Communications, LLC– Confirmation Hearing |
| 2013 | U.S. Bankruptcy Court, Eastern District of Pennsylvania | Testimony | Chapter 11 Estate of Joseph Clark – Fee Objection Hearing |
| 2013 | U.S. Bankruptcy Court, Eastern District of Pennsylvania | Testimony | Chapter 11 Estate of Joseph Grasso – Conversion Hearing |
| 2013 | U.S. Bankruptcy Court, Eastern District of Pennsylvania | Testimony | Chapter 7 Estate of Keystone Surplus Metals, Inc. – Motion to Pay Allowed Chapter 11 Administrative Expenses, or Alternatively, Fixing a Date by which Chapter 7 Trustee Must File Final Report and Account |
| 2013 | U.S. Bankruptcy Court, Eastern District of Pennsylvania | Testimony | Chapter 7 Estate of Scimeca Foundation, Inc. – Objection to Sale |
| 2013 | U.S. Bankruptcy Court, Eastern District of Pennsylvania | Testimony | Chapter 7 Estate of Joseph Grasso – Fee Objection Hearing |
| 2014 | Arbitration, Hackensack NJ | Hearing | Kevin R Basralian, MD. V. Gene S. Rosenberg, MD NJ Valuation for shareholder buy out |
| 2015 | U.S. Bankruptcy Court, Eastern District of Pennsylvania | Testimony | Chapter 7 Estate of Joseph Grasso – Evidentiary Hearing |
| 2020 | U.S. Bankruptcy Court, Eastern District of Pennsylvania | Testimony | Chapter 7 Estate of Stephanie Paula Farber – 9019 Settlement Hearing |

**CHARLES N. PERSING**
**CPA/CFF, CVA, CIRA, CFE**

![Bederson LLP — Accountants and Advisors since 1937]

**PARTNER**

## Publications and Presentations

| *Date* | *Publication* | *Title* |
|---|---|---|
| 2007 | Association of Certified Fraud Examiners (ACFE) | *"Fraud Casebook, Lessons from the Bad Side of Business,"* Chapter 54, pgs. 519 – 526 |
| 2010 | Commerce Magazine | "Helping Nonprofits to see a Better way to do business," pg. 44 |
| 2014 | NJCPA Magazine | "How To Value Entities with Complex Capital Structures," pg. 20 |
| 2016 | New Jersey Business Magazine | Small Business Page of the February edition "Weekly cash planning tips,"  pg. 20 |
| 2016 | Essex County Bar Foundation | "NJ Not So Basic Estate Administration and Planning Program", co presenter |
| 2018 | NACVA Association Quarterly Newsletter | Ethics in Cyber Security: "WWW in Reference to Cyber Security Does Not Mean What You Think!" https://www.nacva.com/content.asp?contentid=624 |
| 2018 | Various Presentations | "What Lawyers Need to Know About Valuing Wine Collections", co presenter |
| 2019 | PNC Bank, National Association - PNC Legal Department, Asset Recovery Group | "Receiverships 101 – Methodology and Formulations", co presenter |
| 2021 | NABT Presentation August | "Diagnosis of the "sick" company: Financial Analysis", co presenter |
| 2022 | NABT American Bankruptcy Trustee Journal | ""Subchapter V Q&A with Charles Persing" pgs. 30-31 winter 2022. |
| 2022 | AGN NARM Presentation | "Bankruptcy 101" May 17, 2022 |
| 2022 | New Jersey Business Magazine | Subchapter V Bankruptcy: A Lifeline to Small Businesses, February 2022 pg. 18 |
| 2022 | NABT Presentation | "Issues for Non-Lawyer Subchapter V Trustees", co presenter. June 8, 2022 |
| 2022 | Norton Journal of Bankruptcy Law and Practice | "Perspectives on Subchapter V from an Attorney Trustee and Accountant Trustee", co-Author June 2022 |
| 2023 | American Bankruptcy Trustee Journal | "Accountant's Special Top 10", February 2022 Volume 39 Issue 01 pgs. 11 to 13 |

**EXHIBIT 2**

## ZHANG MEDICAL P.C.
### 23-10678-PB

### Creditors and Parties-in-Interest Reviewed for Current and Recent Former Relationships

*Unless otherwise noted in the comments section below*, a search of the professional's books and records showed no connection to or prior contact with the parties and entities listed below prior to the date the Debtor filed its voluntary petition on April 30, 2023.  The professional excludes a contact with a creditor as a consumer, such a purchaser or consumer of a product sold by a creditor or vendor.

The professional reserves its right to amend this list in the event that additional parties are added to the list of creditors and parties- in-interest or additional information is received by the professional.

### CREDITORS, VENDORS, PROFESSIONALS AND POTENTIAL CREDITORS

| Name | COMMENT |
|---|---|
| 4 IMPRINT | |
| 5W Public Relations, LLC | |
| AAA All Voice and Data Inc | |
| ABM Building Value | |
| Advarra, Inc. | |
| Aetna | |
| Airgas USA LLC | |
| American Express National Bank | |
| Apthorp Pharmacy / RG Drug Group | |
| Astec Bio USA Inc | |
| Bank of America | |
| BHS Hospital Services Inc | |
| BIO RAD | |
| BioReference Laboratories | |
| Blalock Walters, P.A. | |
| Bracco Diagnostics | |
| Bread & Honey | |

1

| |
|---|
| CardConnect |
| Cellco Partnership d/b/a Verizon Wireless |
| CCB Kitazato LLC |
| Change Healthcare |
| Citibank N.A |
| CLC |
| Clinical Research Strategies, LLC |
| Cognizant |
| Consolidated Edison Company of NY |
| Cook Medical LLC |
| Cooper Surgical, Inc. |
| CooperGenomics Inc |
| Cryostar Industries, Inc. |
| CT Corporation |
| De Lage Landen Financial |
| Dennis Basso |
| EB Employee Solutions, LLC |
| EBM IT Solutions Provider |
| Emcor Services New York/New Jersey, Inc. |
| EngagedMD, LLC |
| Epstein Becker & Green, P.C. |
| Everbank N.A |
| First Citizens Bank & Trust Company |
| Fisher Healthcare |
| Floreal, Inc. |
| FRIER LEVITT |
| Future Family |
| GE HFS, LLC |
| GE Precision Healthcare LLC |
| Georgette Fleischer |

| |
|---|
| GLL BVK Columbus Circle LLC |
| GLL Real Estate Partners, Inc |
| Global Med Systems, LLC |
| Graduate Pest Control, Inc. |
| GRM Information Management Services, Inc. |
| Guardian Life Insurance |
| Guo Qiang Chen |
| HealthCare Financial Services |
| Henry Schein |
| Henry Schein Medical |
| Henry York Advertising |
| Illumina, Inc. |
| ImageFirst |
| Internal Revenue Service |
| IPFS |
| Juan Cheng |
| KIMOY Studios Architecture DPC |
| Konica Minolta Business Solution |
| Konica Minolta Premier Finance |
| Laboratory Corporation of America Holdings |
| LeadSquared Inc. |
| Life Global Group, LLC |
| Life Technologies Corporation |
| Manhattan Printing |
| MatTek Corporation |
| MedCal Pharmacy LLC |
| Metro Drugs |
| Mettler-Toledo Rainin, LLC |
| Mobie Experiential Trucks |
| MRC Holland BV |

| |
|---|
| Natera, Inc. |
| New England Independent Review Board, LLC |
| New Golden Horse Car & Limo Service Inc |
| New Lane Finance |
| Nixon Peabody LLP |
| NYS Dept of Tax And Finance |
| NYC Dept. of Finance |
| NYS Dept. of Labor |
| NYS DOT |
| Olympus America Inc |
| Origio, Inc. |
| Pension Benefit Guaranty Corporation |
| Pitney Bowes |
| Progenity |
| Qvera LLC |
| Reprobiotech Corp. |
| RF Drug Corp |
| RingCentral Inc. |
| Roche Diagnostics |
| SEO Brand |
| Sessions, Israel & Shartle |
| Sharps Compliance, Inc |
| Skyland Construction |
| Slomin's - Alarm |
| Soyo Wellness Inc |
| Staples |
| Stern, Tannenbaum & Bell, LLP |
| Strategic Business Communication |
| Technical Safety Services LLC |
| Telelanguage Inc. |

| |
|---|
| Tesla Motors New York LLC |
| Thermo Fisher Financial |
| Tosoh Bioscience Inc |
| U.S Bank |
| Uline |
| United Ad Label |
| United Healthcare Insurance Company |
| US KITAZATO |
| USA Scientific, Inc. |
| Verizon |
| Vitrolife Inc |
| Voyce, Inc. |
| VWR International, LLC |
| WB Mason Co., Inc. |
| Xue & Associate P.C. |

## SHAREHOLDERS

| PARTY | COMMENT |
|---|---|
| Dr. John J. Zhang | |

## OFFICE OF THE U.S. TRUSTEE AND TRUSTEE

| PARTY | COMMENT |
|---|---|
| Office of the U.S. Trustee | |
| Brian S. Masumoto | |
| Madeleine Vescovacci | |
| Eric Huebscher | |

## CHAMBERS OF U.S. BANKRUPTCY JUDGE

5

| PARTY | COMMENT |
|---|---|
| Judge Philip Bentley | |
| Greg White | |
| Tammi Hellwig | |
| Graham Fisher | |

## OFFICERS AND DIRECTORS OF THE DEBTOR

| PARTY | COMMENT |
|---|---|
| John Zhang | |
| Chloe Cai | |
| Adnan Tahirovic | |
| | |

6

### ENTITIES IN WHICH JOHN ZHANG OWNS AN EQUITY INTEREST

| Entity | COMMENT |
|---|---|
| Darwin Life Inc. | |
| New Hope MSO Inc. | |
| Zhang Management Inc. | |
| New Hope Columbus Inc. | |
| NHFC Inc. d/b/a Life Consulting | |
| New Taste Management Inc. | |
| Sophia Practice Management Corp. | |
| U.S. Kitazato Inc. | |
| Columbus Circle Gynocology PC | |
| Fertlink LLC | |
| New Hope Fertility Long Island PLLC | |
| American Home | |
| Green City Development | |
| New Hope-New Life Holding Company | |
| Columbus Circle OB/GYN Services PC | |