RUBIN LLC
Paul A. Rubin
Hanh V. Huynh
11 Broadway, Suite 715
New York, New York 10004
Tel: 212.390.8054
Fax: 212.390.8064
prubin@rubinlawllc.com
hhuynh@rubinlawllc.com

*Counsel for GLL BVK Columbus Circle LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
|   |   |   |
|---|---|---|
| In re: | : | Sub-Chapter V Chapter 11 |
|   | : |   |
| ZHANG MEDICAL P.C., d/b/a NEW HOPE FERTILITY CENTER, | : | Case No.: 23-10678-pb |
|   | : |   |
| Debtor. | : |   |
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**LANDLORD'S LIMITED OBJECTION TO DEBTOR'S MOTION FOR
ENTRY OF AN ORDER PURSUANT TO SECTIONS 105(a) AND 363(b) OF THE
BANKRUPTCY CODE AUTHORIZING THE DEBTOR TO RETAIN BEDERSON
LLP TO PROVIDE CHARLES N. PERSING AS CHIEF RESTRUCTURING OFFICER**

GLL BVK Columbus Circle LLC (the "Landlord"), by its undersigned counsel, hereby files this objection (the "Limited Objection") to the motion (the "Motion") [ECF No. 177] of Zhang Medical P.C., d/b/a New Hope Fertility Center (the "Debtor") authorizing the Debtor to retain Bederson LLP and appoint Charles N. Persing as the Debtor's Chief Restructuring Officer ("CRO"). In support of this Limited Objection, the Landlord respectfully represents as follows:

# **PRELIMINARY STATEMENT**[1]

1. The Landlord is mindful of the Court's comment at the October 11, 2023 hearing that the Court has limited power to control the Debtor's selection of a CRO. But the Debtor's selection of a fiduciary on behalf of the estate is an important task that has significant ramifications for this case and should be done with careful deliberation. This is consistent with the Court's own strong recommendation at the September 7, 2023 hearing that a truly independent party should take control of the Debtor's non-medical operations. The Landlord files this Limited Objection not to block the Debtor's retention of a CRO, but to object to (i) the Debtor's selection of Mr. Persing as CRO for the Debtor, and (ii) certain of the proposed terms of the retention of a CRO (whether that CRO is Mr. Persing or someone else). As set forth below, the Landlord does not believe that Mr. Persing is the right candidate to be the CRO in this case, where the Debtor is a large medical practice that provides fertility services and Mr. Persing has little to no experience as a CRO in any chapter 11 case and has never been involved in managing any medical practice, never mind one of the size and complexity of the Debtor. The appointment of Mr. Persing as the CRO for the Debtor would not be in the best interests of Debtor's estate. The Landlord further submits that certain modifications should be made to the proposed order and the Retention Agreement in order to, among other things, ensure that the CRO is truly independent.

2. Accordingly, the Landlord respectfully requests that the Court deny the Debtor's request to retain Bederson LLP and appoint Mr. Persing as the CRO and, in any event, deny the Debtor's request to retain any CRO without the modifications to the Retention Agreement and proposed order discussed herein.

---

[1] Capitalized terms not defined in the Preliminary Statement have the meaning ascribed to them in this Limited Objection.

## BACKGROUND

3. The Landlord is the owner of real property located at 4 Columbus Circle, New York, New York (the "Building"). The Landlord leased to the Debtor the entire second, third, fourth and fifth floors (the "Leased Premises") in the Building pursuant to that certain Agreement of Lease dated December 31, 2018 (together with all amendments, the "Lease"). The Debtor operates a fertility clinic at the Leased Premise. The Debtor has more than 90 employees and generated $27 - $28 million in revenue in each of the two years preceding the bankruptcy filing.

4. On April 30, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), commencing the above-captioned case. On its petition, the Debtor elected to proceed as a subchapter V debtor. Eric Huebscher (the "Subchapter V Trustee") was appointed as the subchapter V trustee for the Debtor's case. The Court has since ruled that the Debtor does not qualify as a subchapter V debtor.

5. On July 27, 2023, the Court entered an order authorizing the Debtor to reject the Lease, effective as of July 20, 2023. The Debtor has vacated the fifth floor of the Building, but continues to occupy the third and fourth floors and a portion of the second floor.

6. The Debtor's bankruptcy has been beset with issues that have seriously hindered the Debtor's reorganization efforts. On September 5, 2023, the Subchapter V Trustee filed his *Subchapter V Trustee Status Report* (the "Status Report") [ECF No. 115], which included the following categories of concerns in the Debtor's case that he identified at the time:

- CCOGS. The Debtor did not clearly identify the relationship between the Debtor and Columbus Circle OB/GYN Services, Inc. ("CCOGS"), which accounts for approximately **40%** of the Debtor's cashflow. Only after the issue was raised by the Subchapter V Trustee and the Landlord did the Debtor enter into an agreement to conduct daily sweeps of the funds in CCOGS bank accounts to the Debtor's DIP accounts, with concomitant weekly reporting confirming these sweeps. The CCOGS sweep reports were not being provided to the Subchapter V Trustee and the Landlord and not filed as required at the time of the Status Report.

3

- Disguised Compensation to Chloe Cai. The Debtor's CEO, Chloe Cai, stated at the Debtor's Initial Debtor Interview that payments to Soyo Wellness, Inc. ("Soyo") were expenses of a marketing nature. The Subchapter V Trustee and the Landlord would only later learn that substantially all of her over $650,000 annual compensation was made in disguised payments through Soyo.

- Monthly Operating Reports ("MORs"). The May, June, and July MORs that had been filed at the time of the Status Report were materially deficient because they did not include the cash balances or accounting for CCOGS and another non-debtor affiliate, New Hope MSO, Inc. ("MSO").

- IRS Audit. The Subchapter V Trustee had been informed at the beginning of this case that the Debtor's principal, Dr. Zhang, was the subject of an ongoing IRS audit, only to be advised later that the audit was related to the Debtor and CCOGS, and not Dr. Zhang. At the time of the Status Report, the Debtor had failed or refused to provide any information regarding the IRS audit.

7. The Subchapter V Trustee concluded in his Status Report that "[t]he aggregation of these issues calls into question whether there are other matters that have not and should be disclosed." Status Report p. 3.

8. Nearly two months after the Status Report was filed and six months into this case, the Debtor still has not addressed many of the issues raised in the Status Report in any meaningful way. For example, the disguised compensation payments to Soyo still have not been addressed, it is still unclear why the Debtor is under audit, and the MORs continue to be untimely filed and incomplete/inaccurate. And since the filing of the Status Report, additional concerns have arisen, including: (i) substantial amounts were paid on a post-petition basis to overseas entities on account of pre-petition debts; (ii) the Debtor's former COO, Adnan Tahirovic, was suddenly terminated without a full explanation other than references to his receipt of "overpayments;" (iii) Ms. Cai retained a personal attorney and refused to appear to testify at the Debtor's continued section 341 meeting; and (iv) no information has been provided to explain why Dr. Zhang's compensation was inflated to over $2.6 million in the year preceding the Debtor's bankruptcy filing.

4

9. The Court's comments at the September 7, 2023 hearing strongly urging the Debtor to retain a CRO motivated the Debtor to designate Mr. Persing for that role. Thereafter, counsel for the Debtor, counsel for the Landlord, and the Subchapter V Trustee engaged in discussions concerning the Debtor's selection of Mr. Persing as the CRO. Counsel for the Landlord and the Subchapter V Trustee also spoke directly with Mr. Persing. Although the call with Mr. Persing was lengthy, counsel for the Landlord and the Subchapter V Trustee were not provided clarity on his investigations of the issues of concerned described above. For example, Mr. Persing was unable or unwilling to provided information about the nature of the tax audit, the extent of post-petition payments of prepetition claims and whether the Debtor will seek to recover them, or officer compensation in the past and going forward.

10. The Landlord does not believe that Mr. Persing has the appropriate experience and qualifications to be the CRO for a medical practice, and does not believe that it was appropriate for the Debtor/Dr. Zhang to hand pick the CRO, particularly given the Court's strong recommendation at the September 7, 2023 hearing that a truly independent party should take over control of the Debtor's non-medical operations. Shortly after the Debtor revealed its intent to retain Mr. Persing as a CRO, the Debtor refused to entertain the possibility of retaining a CRO who is mutually acceptable to the Debtor and the Landlord and who would have complete independence in the exercise of his fiduciary duties as CRO.

11. On October 24, 2023, the Debtor filed the Motion. The Motion includes as an exhibit that certain letter agreement dated October 15, 2023 (the "<u>Retention Agreement</u>") to govern the terms of the Debtor's retention of Bederson LLP and Mr. Persing as CRO. Although the Retention Agreement provides for the CRO's oversight of the finances of CCOGS and MSO, those parties are not signatories to the Retention Agreement for the purposes of acknowledging their

consent. The Retention Agreement also contains a provision that "in the event of any corporate deadlock and/or other dispute between the CRO and the Debtor, the Parties shall be authorized and permitted to bring such corporate deadlock and/or dispute to the attention of the Bankruptcy Court." Retention Agreement p. 4. As discussed below, these provisions are of concern to the Landlord.

**LIMITED OBJECTION**

12. Although the Landlord agrees that it is necessary for an independent fiduciary to take control of the finances and business of the Debtor, the Landlord does not agree that Mr. Persing is the right candidate or that his appointment as CRO would benefit the estate. Moreover, the Landlord requests that the Retention Agreement (whether it is with Mr. Persing or some other CRO) should be modified as set forth herein, and the order approving the retention of a CRO should contain the provisions requested below.

**I.      Mr. Persing Is Not The Right Candidate To Be The CRO For This Debtor**

13. Landlord submits that Mr. Persing is not the right person for this particular job, because he does not have the requisite experience to be the CRO for the Debtor. According to Mr. Persing's resume annexed as Exhibit 1 to his declaration in support of the Motion, Mr. Persing has no personal experience with businesses in the medical field generally or managing a medical practice specifically, and he has only been retained one time as a CRO, and that was for a chapter 11 trustee. In all candor, while Mr. Persing has significant accounting experience, he is simply the wrong person for this particular job. The Landlord does not believe Mr. Persing is well-suited to assume responsibility for compliance with state and federal regulatory requirements governing medical practices and fertility clinics with which he is not familiar. The several discussions that the Landlord and the Subchapter V Trustee have had with Mr. Persing do not alleviate this concern. Mr. Persing has not provided the Landlord comfort that he has the depth of experience necessary

to manage and operate a medical practice of the size and complexity of the Debtor, which has about 90 employees and generates over $28 million in revenue.  Now is not the time, and this case is not the case, for Mr. Persing to "learn on the job."

14. Moreover, Mr. Persing was hand-picked by the Debtor/Dr. Zhang.  The Debtor in this case has not come forward in a proactive manner to address irregularities and issues of concern, some of which have been discussed herein.  For example, the Debtor did not affirmatively come forward to disclose that its CEO was paid through Soyo; it did not disclose the nature of the CCOGS and MSO entities; it did not provide details at first about which party exactly is under IRS audit; and it did not disclose the nature and details of post-petition payments for unspecified pre-petition claims.  In every instance, only after investigation and inquiry from the Subchapter V Trustee, the U.S. Trustee, and/or the Landlord has uncovered one issue after another did the Debtor then take measures (often half-measures) to attempt to address these issues.  As the Subchapter V Trustee alluded to in his Status Letter, what else has the Debtor not disclosed?  Indeed, only after the Status Letter was issued, the Debtor revealed that it had conducted an investigation into the conduct of its Chief Operating Officer, Adnan Tahirovic, and that he had been dismissed.

15. The Landlord respectfully submits that, as the Court has recommended, it is imperative in this case that the CRO be truly independent so that there will be no hesitation to disclose facts (even, and especially, the ugly facts) as they are discovered.  Mr. Persing's reluctance to provide clarity on any of the pending issues during the extensive calls with counsel for the Subchapter V Trustee and Landlord give the Landlord concern whether or to what extent he is truly independent of Dr. Zhang.

## II. The Proposed CRO Retention Agreement And The Proposed Order Should Be Modified Regardless Of Who Is Retained As CRO

16. The Landlord further objects to the Motion to the extent that the Retention Agreement (whether with Mr. Persing as CRO or as a template for the retention of a different CRO) (i) does not require CCOGS and MSO to acknowledge and consent to the provisions therein, and (ii) contains the corporate deadlock language cited above.

17. The contemplated duties and authority of the CRO includes the control of the finances of CCOGS and MSO. Accordingly, it is imperative that those entities acknowledge and consent to the Retention Agreement.

18. The corporate deadlock language in the Retention Agreement, however, should be removed. The CRO should be given sole and absolute authority to control the non-medical operations of the Debtor, including finances, hiring and firing, and compensation of insiders. In the event that there is disagreement between the CRO and Dr. Zhang regarding a non-medical issue, the CRO's decision should govern. Dr. Zhang should not be given leverage to create the appearance of a "corporate deadlock."

19. The Landlord further requests that any order approving the retention of a CRO (whether it is Mr. Persing or another party) contain the following provisions: (i) the Debtor, CCOGS and/or MSO are prohibited from making any disbursement without the CRO's approval; (ii) the CRO must ensure that there is no duplication of services between the work of Mr. Persing and Bederson LLP on the one hand, and the accountants at the Schulman Lobel firm on the other; and (iii) nothing in the order will prejudice the rights of an examiner if one is appointed in this case.

WHEREFORE, for all the reasons set forth herein, the Landlord respectfully requests that the Court deny the Motion to the extent that the Debtor seeks to retain Bederson LLP and appoint

Mr. Persing as CRO, require the inclusion of the provisions requested in this Limited Objection with respect to any retention agreement that is entered into with a CRO and any order approving the retention of a CRO, and grant the Landlord such other and further relief as the Court deems just and proper.

Dated: New York, New York
October 30, 2023

                                                  RUBIN LLC

                                                  By:    */s/ Paul A. Rubin*
                                                          Paul A. Rubin
                                                          Hanh V. Huynh
                                                11 Broadway, Suite 715
                                                New York, New York 10004
                                                Tel: 212.390.8054
                                                Fax: 212.390.8064
                                                prubin@rubinlawllc.com
                                                hhuynh@rubinlawllc.com

                                                *Counsel for GLL BVK Columbus Circle LLC*