Pardalis & Nohavicka LLP
950 Third Avenue, 11th Floor
New York, New York  10022
Tel. No. 718.777.0400
Joseph D. Nohavicka
Norma E. Ortiz, Of Counsel
*Proposed Counsel to the Debtor and*
*Debtor-in-Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
                                                                    :
In re                                                            :
                                                                    :
ZHANG MEDICAL P.C. d/b/a                     :
                                                                    :        Case No. 23-10678-pb
NEW HOPE FERTILITY CLINIC              :
                                                                    :        Sub-Chapter V Chapter 11
                                                                    :
                               Debtor.               :
--------------------------------------------------------x

# REPLY TO LANDLORD'S LIMITED OBJECTION TO
# DEBTOR'S MOTION FOR ENTRY OF AN ORDER PURSUANT TO SECTIONS 105(a) AND 363(b) OF THE BANKRUPTCY CODE AUTHORIZING THE DEBTOR TO RETAIN BEDERSON LLP TO PROVIDE CHARLES N. PERSING AS CHIEF <u>RESTRUCTURING OFFICER</u>

TO THE HONORABLE PHILIP BENTLEY,
UNITED STATES BANKRUPTCY JUDGE:

Zhang Medical P.C. (the "Debtor"), the above-captioned debtor and debtor-in-possession, respectfully submits this Reply to the Landlord's Limited Objection to the Motion ("Motion") for entry of an order authorizing the retention and employment of Bederson LLP ("Bederson") to provide Charles N. Persing ("Persing") as Chief Restructuring Officer ("CRO") for the Debtor.  In support of the Reply, the Debtor respectfully represents as follows:

## BACKGROUND

1.   The facts pertinent to the Reply are set forth herein, in the Motion and supporting Declarations and in the annexed Declaration of Persing.  The Debtor has faced an inordinate number of delays in providing the Court and creditors with the financial information needed to timely prosecute its case.  The Debtor was forced to terminate its long-standing pre-petition accountant approximately two months after the bankruptcy filing.  In addition, prior to the bankruptcy filing, its controller resigned.  The Debtor's inability to prepare accurate operating reports revealed that the books and records were inaccurate and incomplete.  The Debtor retained Schulman & Lobel to conduct a complete overhaul of its books at the end of July but its review has not been completed because of the difficulty in ensuring that the information obtained from the Debtor is accurate and complete.  The Debtor has lost months in its attempt to reorganize because of its inability to provide an accurate financial proposal to the Landlord and other creditors.

2.   The Debtor experienced additional delays as a result of its termination of its Chief Financial Officer.  Persing has actively assisted the Debtor in its efforts to hire administrative and financial staff to eradicate these issues and ensure that the Debtor's books are properly maintained, its payroll is properly administered, and financial checks and balances are implemented so that the Debtor can operate seamlessly in the future without the problems that have plagued its financial operations since its bankruptcy case was filed.

3.   As set forth in the annexed Declaration of Persing, Persing has immersed himself in and familiarized himself with all aspects of the Debtor's business operations and the problems with its financial operations in the six week period he has worked with the Debtor.  Persing has

outlined a preliminary course of action that will form the basis for the Debtor's financial structuring. The Debtor chose Persing to serve as CRO for this reason and because of Persing's bankruptcy and restructuring experience and his experience serving as a trustee in bankruptcy cases.

4. In its zeal to oppose the Debtor's request, the Landlord has accused Persing of harboring "reluctance to provide clarity on any of the pending issues" to support it opposition to the Debtor's request. Objection Para. 15. As set forth in the annexed Persing Declaration, the Debtor submits this assertion is incorrect. Persing has provided the information available to him in the relatively short period of time he has been working with and overseeing the Debtor's operations.

**REPLY**

A. **The Debtor's Selection of Persing and Bederson is an Appropriate Exercise of its Business Judgment**

5. The Debtor moved the Court for the entry of an order authorizing it to retain Bederson and Persing pursuant to 11 U.S.C. § 363(b)(1). As set forth in the Motion, that section permits the Debtor to seek the Court's approval of the retention of a CRO if the request represents a reasonable exercise of the debtor's business judgment. The Landlord has not objected to the Debtor's request to appoint a CRO: it objects to the Debtor's selection of Persing and Bederson because it asserts Persing (a) does not possess medical practice experience and (b) is not an independent person because he was hand-picked by the Debtor. The Debtor asserts that the Landlord's objections do not warrant the denial of its request or support the landlord's contentions.

6. Under the circumstances of this case, the Debtor does not agree with the Landlord

3

that Persing's lack of medical practice experience warrants the denial of the Debtor's request. The Debtor's need to prosecute its case and move towards concluding its reorganization as soon as possible is of paramount importance to the Debtor and its creditors. The Debtor sought the appointment of a CRO because it concluded that its business operations require the advice and control of an experienced restructuring professional with Persing's background. Persing's willingness to commit the time and resources to guide the Debtor in its reorganization, and his broad restructuring experience, were the sole criteria for the Debtor's selection of Persing and Bederson. As confirmed by the Patient Care Ombudsman in his reports, the Debtor's medical practice does not require restructuring.

7.      Most importantly, the Debtor determined that retaining another professional that is not familiar with the facts of this case would not be in the best interests of its business or the Debtor's creditors. The sheer volume of the issues that must be addressed in this case requires a significant investment of time by a professional unfamiliar with this case and the Debtor does not believe, in its business judgment, that retaining a professional that has no familiarity with the Debtor's business would be in the best interests of creditors, the estate or the Debtor.

8.      The Debtor also asserts that the six week engagement of Persing and Bederson does not render the firm not disinterested under the circumstances of this case. For the reasons set forth in the Motion, Bederson and Persing are disinterested under the Jay Alix Protocol and applicable Bankruptcy law and there are simply no grounds asserted by the Landlord to support its assertion that Bederson and Persing are not disinterested. The Motion sets forth the reasons why Persing and Bederson should be deemed to qualify as disinterested professionals and the objection does not raise any factual or legal issues that require the Court to deny the Debtor's

request.

B.     **The Landlord's Request to Changes to the Order**

9.     If the Court grant the Debtor's request, the Landlord has requested that the Debtor ensure that Columbus Circle OB/GYN Services Inc. and New Hope MSO Inc. evidence in writing their consent to Persing taking control of over their financial operations and serve as CRO over all business operations and the insertion of this control in the engagement agreement. The Debtor has been informed that Dr. Zhang has no objection to these amendments.

10.    The Landlord has requested that any restriction upon the CRO's authority to make financial decisions be removed from the engagement letter in the event that there is a deadlock between the Debtor and Dr. Zhang. The Debtor does not dispute that the CRO should have the power to make all financial decisions regarding the Debtor's operations. The Debtor's only goal is to provide a mechanism for the Court's oversight to address any dispute. It is amenable to modify this language.

11.    The Landlord further requests that any order approving the retention of a CRO contain the following provisions: (i) the Debtor, CCOGS and/or MSO are prohibited from making any disbursement without the CRO's approval; (ii) the CRO must ensure that there is no duplication of services between the work of Persing and Bederson LLP and the accountants at the Schulman Lobel firm; and the order appointing the CRO will not prejudice the rights of an examiner if one is appointed in this case. The Debtor does not oppose these changes and amendments.

WHEREFORE, for all the reasons set forth herein, the Debtor respectfully requests that the Court deny the Landlord's objection to the Debtor's request to retain the CRO and grant the relief

requested herein and such other relief as is just and proper.

Dated: New York, New York
Oct. 31, 2023

                                                            */s/Norma E. Ortiz*
Pardalis & Nohavicka LLP
950 Third Avenue, 11th Floor
New York, New York  10022
Tel. No. 718.777.0400
Joseph D. Nohavicka
Norma E. Ortiz, Of Counsel
*Proposed Counsel to the Debtor and Debtor-in-Possession*

**DECLARATION OF CHARLES N. PERSING**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
                                              :
In re                                           :
                                              :
ZHANG MEDICAL P.C. d/b/a              :
                                              :      Case No. 23-10678-pb
NEW HOPE FERTILITY CENTER       :
                                              :      Sub-Chapter V Chapter 11
                                              :
                Debtor.       :
-------------------------------------------------------x

## DECLARATION OF CHARLES N. PERSING

I, Charles N. Persing, duly declare under penalty of perjury that the following is true and correct:

1.      I submit this Declaration in response to the limited objection filed by GLL BVK Columbus Circle LLC (the "Landlord") the Debtor's Motion to Retain Bederson LLP to provide me to serve as Chief Restructuring Officer ("CRO") of the Debtor.

2.      I have spent the last six weeks investigating and reviewing all aspects of the Debtor's business.   The Debtor has been plagued by numerous managerial and financial issues that have been exacerbated by the lack of competent and sufficient accounting staff.   I have spent many days on the Debtor's site reviewing its contracts, interviewing its staff and medical professionals, actively participating in the hiring and firing of personnel, reviewing the compensation paid to its remaining officers, and investigating all of the issues raised in the Landlord's objection and that have been discussed with the Court. I have had multiple meetings with Schulman & Lobel and have spent time daily to ensure that the Debtor can move forward with its reorganization as soon as possible.

1

3.  However, I have only been involved in the case for six weeks. I have reviewed and processed a significant amount of information and a voluminous number of documents regarding a number of serious issues without adequate Debtor support. During this period, the Debtor's lack of personnel was worsened by the termination of its Chief Operating Officer. I have met with various staff members, reviewed the historical payroll-held reports, held several discussions with the billing department and started making changes. I have spoken with various vendors in reference to the services provided and commenced and reviewed expense invoices submitted for payment. Once Bederson LLP is retained, I intend to utilize some of its staff to support the Debtor until it can locate and hire the personnel it needs until the Debtor's staff can meet the reporting needs required for its bankruptcy case and assist the Debtor's professionals in completing the tax audit and preparation of the tax returns.

4.  For these reasons, I take issue with the assertion by the Landlord that during an 80 minute telephone call, in which I was grilled about every issue and event that has occurred in this case by Landlord's counsel and the Subchapter V Trustee – including transactions and events that occurred prior to the bankruptcy filing – I did not provide clarity on my investigations and I was unable or unwilling to provide information about the nature of the tax audit, the extent of post-petition payments of pre-petition claims, whether the Debtor will seek to recover these payments and the payment of officer compensation in the past and going forward. In response to the inquiry about the audit, I provided the information I have received from Mazars about the tax audit but stated I could not obtain information directly from the Internal Revenue Service until I submit a Power of Attorney. In fact, I have submitted the Power of Attorney in anticipation of my retention as CRO and was informed by the agent that once an order is entered, they will process my requests. I refrained from providing comments on my investigations without

2

reaching a full conclusion. I offered to provide the results of my investigation as soon as they were available.

5.  When asked about the pre-petition debt payment, I reminded them that I caused the Debtor to hire a bookkeeper with bankruptcy experience that is locating every invoice for these payments and is correcting the Debtor's records so that I can determine the course of action to be taken with regards to these payments. An additional bookkeeper is expected to commence work on November 8, 2023. Before I made these recommendations to the Debtor, it was utilizing one staff member to make payments and was not maintaining the Debtor's books and records on a regular basis. In addition, because the Debtor was recording invoices on a cash basis, the books did not reflect when the debt was incurred. This has been a tedious and time-consuming process.

6.  My power to reduce or alter officer compensation is limited until I am appointed as CRO. I have already informed Chloe Cai and Dr. John Zhang, directly and through their respective counsel, that I intend to make changes to officer compensation and will report those changes as soon as they are implemented. I caused the Debtor to eliminate payments to Ms. Cai through Soyo Wellness Inc. Ms. Cai and the Debtor have initially reduced Ms. Cai's compensation to $600,000 annually which started in August and is paid to directly to Ms. Cai. This temporary voluntary reduction does not conclude my determination of the appropriate amount of officer compensation.

7.  I disagree with the Landlord that this Debtor requires the appointment of a CRO with medical practice experience. As set forth in the recent report filed by the Patient Care Ombudsman, the Debtor provides high-quality medical services to its patients. It is in need of financial and managerial restructuring for its business operations. The issues raised by the

3

Landlord and the Subchapter V Trustee in the hearings, reports and the Objection filed with the court involve financial issues that must be addressed.

7. In addition to serving in multiple financial and accounting aspects of bankruptcy cases, I have the requisite restructuring experience to guide the Debtor through its reorganization. I have successfully operated, advised and liquidated numerous businesses without prior experience in those industries, such as telecommunications, a ski lodge, a recycling business, real estate (under construction), among others, and have provided advisory, valuation and expert services service to companies in numerous industries including a damage calculation for an Oil Refinery. I have the support of the professionals at Bederson LLP to assist if and when needed. I also conferred with the Patient Care Ombudsman who confirmed he is available to address any legal or regulatory issue that may arise in connection with the medical practice and feels that patient care for the Debtor is not a problem.

8. Finally, the Landlord has no objective basis for asserting that Bederson and I are not disinterested because we were hand-picked by the Debtor and cannot be independent. Neither I nor my firm had any contact with the Debtor or its officers until we were contacted and retained in September 2023. The assertion that I cannot serve as an independent CRO would mean that I would not exercise my professional and fiduciary duties to the creditors and estate once approved by the Court. I am a highly-regarded and long-standing bankruptcy professional that frequently serves as an officer of these courts. Any suggestion that I would compromise my standing in the restructuring community by not properly fulfilling my duties as CRO is unfounded and not supported by the facts in this case.

Dated: October 31, 2023

*s/Charles N. Persing*
Charles N. Persing, Partner
Bederson LLP

5