RUBIN LLC
Paul A. Rubin
Hanh V. Huynh
11 Broadway, Suite 715
New York, New York 10004
Tel: 212.390.8054
Fax: 212.390.8064
prubin@rubinlawllc.com
hhuynh@rubinlawllc.com

*Counsel for GLL BVK Columbus Circle LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
|  |  |
|---|---|
| In re: | Chapter 11 |
| ZHANG MEDICAL P.C., d/b/a NEW HOPE FERTILITY CENTER, | Case No.: 23-10678-pb |
| Debtor. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**NOTICE OF MOTION TO APPOINT AN**
**EXAMINER PURSUANT TO 11 U.S.C. § 1104(c)**

**PLEASE TAKE NOTICE** that a hearing to consider the motion (the "Motion") of GLL BVK Columbus Circle LLC (the "Landlord"), by its counsel, Rubin LLC, for entry an order appointing an examiner pursuant to section 1104(c) of title 11 of the United States Code in the above-captioned chapter 11 case of Zhang Medical P.C. d/b/a New Hope Fertility Center, shall be held before the Honorable Philip Bentley, Bankruptcy Judge, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, NY 10004, on **December 20, 2023 at 11:00 a.m.**, or as soon thereafter as counsel may be heard (the "Hearing").

**PLEASE TAKE FURTHER NOTICE** that the Hearing will be held remotely via Zoom for Government. Parties requiring active participant access must register appearances through

eCourt Appearances in advance of the Hearing.  Instructions for registering appearances are available on the Court's website at www.nysb.uscourts.gov/ecourt-appearances.

**PLEASE TAKE FURTHER NOTICE** that objections to the Motion, if any, must be in writing, shall conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court, shall be filed with the Bankruptcy Court, and shall be served upon (a) counsel for the Landlord, Rubin LLC, 11 Broadway, Suite 715, New York, NY 10004 (Attn.: Paul A. Rubin); and (b) all parties who have timely filed requests for notice under Rule 2002 of the Bankruptcy Rules, so as to be received no later than **December 13, 2023 at 4:00 p.m.** (the "Objection Deadline").

**PLEASE TAKE FURTHER NOTICE** that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Court may enter an order granting the relief sought without a hearing.

**PLEASE TAKE FURTHER NOTICE** that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: New York, New York
　　　 November 17, 2023

RUBIN LLC

By:  ___*/s/ Paul A. Rubin*_____
　　　 Paul A. Rubin
　　　 Hanh V. Huynh
11 Broadway, Suite 715
New York, New York 10004
Tel: 212.390.8054
Fax: 212.390.8064
prubin@rubinlawllc.com
hhuynh@rubinlawllc.com

*Counsel for GLL BVK Columbus Circle*
*LLC*

RUBIN LLC
Paul A. Rubin
Hanh V. Huynh
11 Broadway, Suite 715
New York, New York 10004
Tel: 212.390.8054
Fax: 212.390.8064
prubin@rubinlawllc.com
hhuynh@rubinlawllc.com

*Counsel for GLL BVK Columbus Circle LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
In re:                                    :    Chapter 11
                                          :
ZHANG MEDICAL P.C., d/b/a NEW HOPE        :    Case No.: 23-10678-pb
FERTILITY CENTER,                         :
                                          :
                    Debtor.               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

<u>**MOTION TO APPOINT AN EXAMINER PURSUANT TO 11 U.S.C. § 1104(c)**</u>

GLL BVK Columbus Circle LLC (the "<u>Landlord</u>"), by its undersigned counsel, submits

this motion (the "<u>Motion</u>") for entry of an order, in the form annexed hereto as <u>Exhibit A</u>,

appointing an examiner pursuant to section 1104(c) of title 11 of the United States Code (the

"<u>Bankruptcy Code</u>") in the above-captioned chapter 11 case (the "<u>Chapter 11 Case</u>") of Zhang

Medical P.C. d/b/a New Hope Fertility Center (the "<u>Debtor</u>").  In support of this Motion, the

Landlord respectfully represents as follows:

<u>**PRELIMINARY STATEMENT**</u>

1.      The appointment of an examiner to undertake an impartial investigation of

discrete areas of concern in this case would be in the best interest of creditors.  There are strong

indications that wrongdoing has been committed.  The Court raised such concerns at the

September 7, 2023 conference in this case, in which there was discussion of the potential

appointment of a chapter 11 trustee.  At that conference, the Court indicated it would support the appointment of an examiner with expanded powers.  By this Motion, the Landlord seeks only the appointment of an examiner, not an examiner with expanded powers.

2.      There are credible allegations of mismanagement, potential fraud, and insider and related party transactions.  There are potentially valuable claims against insider and related parties that should be investigated.  Creditors and the Court cannot rely on the Debtor to investigate and self-report potential misconduct and matters of concern identified by the Landlord below, and no statutory committee has been appointed in this case that could conduct these investigations.  An examiner should be appointed so that a full, unfettered and independent investigation of these concerns and claims can be made for the benefit of the estate and creditors.

3.      The appointment of an examiner is also appropriate from a cost-benefit perspective.  The appointment of an examiner is a less drastic alternative than seeking the appointment of a trustee, and is the proper remedy where discrete issues to be investigated call for a scalpel rather than a hacksaw.  *See, e.g., In re Michigan Biodiesel, LLC*, 466 B.R 413, 421 (Bankr. W.D. Mich. 2011) ("Faced with a Debtor that is performing well, post-petition, but which showed poor judgment regarding an arcane and admittedly confusing aspect of its [tax] affairs, the court reaches for a scalpel rather than a hacksaw.  Under these circumstances, it favors an examiner over a trustee.").  Where there is no unsecured creditor's committee to investigate these claims, the benefit of appointing an examiner to investigate potentially valuable claims greatly outweighs the cost of an examiner.  *See, e.g., In re ProFlo Indus., LLC*, 2018 WL 615122, at *8 (Bankr. N.D. Ohio Jan. 29, 2018) ("Known to be at issue is approximately $360,000 transferred prepetition to [a related foreign entity], as well as insider payments in currently undisclosed amounts.  The court believes that the interests of creditors would be best

served by the appointment of an examiner for the limited purpose of investigating these transactions and whether there exists claims relating to them.  Unlike the substantial cost to Debtor of appointing a trustee, the cost of an examiner for this limited purpose is not disproportionately high compared to the potential benefit, particularly in the absence of an unsecured creditors' committee form this case.").

## JURISDICTION

4.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1134.

5.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

6.      The statutory predicate for the relief requested herein includes sections 105(a) and 1104(c).

## BACKGROUND

7.      The Landlord is the owner of real property located at 4 Columbus Circle, New York, New York (the "Building").  The Landlord leased to the Debtor the entire second, third, fourth and fifth floors (the "Leased Premises") in the Building pursuant to that certain Agreement of Lease dated December 31, 2018 (together with all amendments, the "Lease").  The Debtor operates a fertility clinic at the Leased Premises.  The Debtor has more than 90 employees and generated $27 - $28 million in revenue in each of the two years preceding the bankruptcy filing.

8.      On April 30, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), commencing the above-captioned case.  On its petition, the Debtor elected to proceed as a subchapter V debtor.  Eric Huebscher (the "Subchapter V Trustee") was appointed as the subchapter V trustee for the Debtor's case.  The Court has since ruled that the Debtor does not

qualify as a subchapter V debtor, and the Court entered an order [ECF No. 189] striking the

Debtor's designation as a subchapter V debtor on its petition.

9.      On July 27, 2023, the Court entered an order authorizing the Debtor to reject the

Lease, effective as of July 20, 2023.  The Debtor has vacated the fifth floor of the Building, but

continues to occupy the third and fourth floors and a portion of the second floor.

10.     The Debtor's bankruptcy has been beset with issues that have seriously hindered

the Debtor's reorganization efforts.  On September 5, 2023, the Subchapter V Trustee filed his

*Subchapter V Trustee Status Report* (the "Status Report") [ECF No. 115], which included the

following categories of concerns in the Debtor's case that he identified at the time:

- CCOGS.  The Debtor did not clearly identify the relationship between the Debtor and Columbus Circle OB/GYN Services, Inc. ("CCOGS"), which accounts for approximately ***40%*** of the Debtor's cashflow.  Only after the issue was raised by the Subchapter V Trustee and pressed by the Landlord did the Debtor enter into an agreement to conduct daily sweeps of the funds in CCOGS bank accounts to the Debtor's DIP accounts, with concomitant weekly reporting confirming these sweeps.

- Disguised Compensation to Chloe Cai.  The Debtor's CEO, Chloe Cai, stated at the Debtor's Initial Debtor Interview that payments to Soyo Wellness, Inc. ("Soyo") were expenses of a marketing nature.  The Subchapter V Trustee and the Landlord would only later learn that substantially all of her over $650,000 annual compensation was made in disguised payments through Soyo.

- Monthly Operating Reports ("MORs").  The May, June, and July MORs that had been filed at the time of the Status Report were materially deficient because they did not include the cash balances or accounting for CCOGS and another non-debtor affiliate, New Hope MSO, Inc. ("MSO").

- IRS Audit.  The Subchapter V Trustee had been informed at the beginning of this case that the Debtor's principal, Dr. Zhang, was the subject of an ongoing IRS audit, only to be advised later that the audit was related to the Debtor and CCOGS, and not Dr. Zhang.  At the time of the Status Report, the Debtor had failed or refused to provide any information regarding the IRS audit.

11.     The Subchapter V Trustee concluded in his Status Report that "[t]he aggregation

of these issues calls into question whether there are other matters that have not and should be

4

disclosed." Status Report p. 3. At the September 7, 2023 hearing shortly after the filing of the Status Report, the Court strongly urged the Debtor to retain an independent party to take over control of the Debtor's non-medical operations.

12.    As a result of the filing of the Status Report, on September 12, 2023, the Court entered an order [ECF No. 129] directing the Debtor to make certain disclosures addressing the concerns raised in the Status Report. On September 27, 2023, the Debtor filed a declaration from Dr. Zhang [ECF No. 154] making certain of the disclosures as required by the Court. Among other things, the Debtor disclosed the identities of seven different accounting firms it has retained just during the period from 2020 to 2022, which does not include the two additional firms providing services to the Debtor on a post-petition basis (Schulman Lobel and Mazars). *See* Declaration of John Zhang at Exh. E [ECF No. 154]. The Debtor has engaged ***nine*** different accounting firms in the last three years, which is typically a red flag for most companies.

13.    On October 24, 2023, the Debtor filed a motion [ECF No. 177] for authorization to retain Bederson LLP and appoint Charles Persing as the Debtor's Chief Restructuring Officer ("CRO"). On November 3, the Court entered an order [ECF No. 190] authorizing the retention of Bederson LLP and appointing Mr. Persing as CRO.

14.    Despite the Debtor's retention of a CRO, the issues raised in the Status Report continue to be of concern. For example, the disguised compensation payments to Soyo still have not been addressed, it is still unclear why the Debtor is under audit, and the MORs continue to be untimely filed, are incomplete/inaccurate, and the Debtor has indicated it will have to file further amended MORs. Since the filing of the Status Report, additional concerns remain or have arisen, including: (i) substantial amounts were paid on a post-petition basis to overseas entities on account of pre-petition debts; (ii) the Debtor's former COO, Adnan Tahirovic, was suddenly

terminated without a full explanation other than references to his receipt of "overpayments;" (iii) Ms. Cai retained a personal attorney and refused to appear to testify at the Debtor's continued section 341 meeting; and (iv) no information has been provided to explain why Dr. Zhang's compensation was inflated to over $2.6 million in the year preceding the Debtor's bankruptcy filing.

## **ARGUMENT**

15.     By this Motion, the Landlord respectfully requests that the Court order the appointment of an examiner to investigate the transactions and areas of concern described herein.

16.     Section 1104(c) of the Bankruptcy Code governs the appointment of an examiner in a chapter 11 case, and provides as follows:

> If the court does not order the appointment of a trustee under this section, then at any time before the confirmation of a plan, on request of a party in interest or the United States trustee, after notice and a hearing, the court shall order the appointment of an examiner to conduct such investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current of former management of the debtor, if—
>
> (1) such appointment is in the interests of creditors, any equity security holders, and other interests of the estate; or
>
> (2) the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000.

11 U.S.C. § 1104(c).

17.     Section 1106(b) of the Bankruptcy Code provides that "[a]n examiner appointed under section 1104(d) of this title shall perform the duties specified in [sections 1106(a)(3) and (a)(4)] and, except to the extent that the court orders otherwise, any other duties of the trustee that the court orders the debtor in possession no to perform."  11 U.S.C. § 1106(b).  Sections 1106(a)(3) and (4) provide that the examiner shall "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the

desirability of the continuance of such business, and any other matter relevant to the case or the formulation of a plan," and "file a statement of any investigation conducted … including any fact ascertained pertaining to fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor, or to a cause of action available to the estate." 11 U.S.C. § 1106(a)(3) & (4).

18.    Under the plain language of the statute, four requirements must be met to mandate the Court's appointment of an examiner: (i) no trustee has been appointed, (ii) no plan has been confirmed, (iii) a party in interest or the U.S. Trustee has requested an examiner, and (iv) either (a) the appointment of an examiner is in the interests of creditors, or (b) the debtor has more than $5 million in fixed, liquidated, unsecured debts to non-insiders.  Here, the first three conditions are plainly satisfied—no trustee has been appointed, no plan has been confirmed, and a party in interest (the Landlord) has requested the appointment of an examiner.  With respect to the last prong, the Landlord satisfies both conditions for the appointment of an examiner, even though the presence of either condition is sufficient to establish grounds for the appointment of an examiner.  The appointment of an examiner in this case is both in the interests of creditors and the estate, and appropriate because the Debtor's fixed, liquidated, unsecured non-insider debts exceed $5 million.

I.    **The Appointment Of An Examiner Under Section 1104(c)(1)
Is In The Interests of Creditors And The Estate**

19.    Appointment of an examiner is in the interests of creditors and warranted "whenever allegations of corporate fraud or misconduct are substantiated by credible evidence." *In re Keene Corp.*, 164 B.R. 844, 856 (Bankr. S.D.N.Y. 1994) (internal quotations omitted). Courts have appointed examiners where there are allegations of insider and related party transactions. *See, e.g., Id.*; *JNL Funding Corp.*, 2020 WL 3448221, at *3-4 (Bankr. E.D.N.Y.

2010); *In 96 Wyeth Acquisition LLC*, Case No. 21-22108 (RDD) (Bankr. S.D.N.Y. Nov. 8, 2021)

[ECF No. 178]. The existence of avoidance claims and other actions against insiders and related

parties presents "a textbook case calling for the appointment of an examiner in the interest of

creditors." *In re Keene*, 164 B.R. at 856.

20.     In this case, there are credible allegations of mismanagement and potential claims

against insiders and related parties. The areas of inquiry relating to claims that may exist on

behalf of the estate include the following:

- **Claims Against Zhang Owned Entities, Including CCOGS and MSO**. The estate may have claims against Dr. Zhang-owned Debtor affiliates, including CCOGS and MSO. Although CCOGS and MSO have no employees or operations, pre- and post-petition they received funds from the Debtor or from third parties on account of services provided solely by the Debtor and its employees. Indeed, the funds received by CCOGS for services provided by the Debtor account for approximately 40% of the Debtor's over $28 million in revenues. Other Debtor affiliated entities may have received funds from the Debtor or from third parties on account of services provided by the Debtor. The Debtor did not disclose its transactions with CCOGS and MSO until the Subchapter V Trustee specifically inquired about the Debtor's relationship with these entities. An examiner should also investigate whether funds in CCOGS and MSO accounts were transferred pre-petition to parties other than the Debtor. The investigation into these transfers should reach back four years prior to the Petition Date.

- **Claims Against Dr. Zhang**. The estate may have claims against Dr. Zhang on account of the inflation of his compensation for the two-year preceding the Debtor's bankruptcy filing. Dr. Zhang may also have caused the Debtor to make improper payments to him or for his benefit (including by paying his personal expenses) that may be recoverable for the benefit of the estate.

- **Disguised Compensation to Chloe Cai**. The estate may have claims against the Debtor's CEO, Chloe Cai, and/or Soyo based on Ms. Cai's compensation scheme with the Debtor. Hundreds of thousands of dollars (that we know of) were paid to Soyo, but Soyo provided no services to the Debtor. This disguised compensation was never willingly disclosed by the Debtor. Indeed, the compensation scheme was initially characterized—by Ms. Cai herself—as marketing expenses.

- **Interviews of Accountants**. An examiner should investigate the reasons for dismissal of the Debtor's prior accountants and whether the accountants were

terminated after uncovering either wrongdoing by an insider or improper bookkeeping practices.

- <u>Post-Petition Payments of Pre-Petition Debts</u>.  An examiner should investigate the post-petition payments of pre-petition debts, including reporting the amounts, dates, recipients, and purpose of transfers, and determine the propriety of such transfers and whether any such transfers can or should be recovered for the benefit of the estate.

- <u>Potential Claims Against the Debtor Resulting from the IRS Audit</u>.  The estate may have claims against Dr. Zhang in connection with any additional tax liabilities or penalties that the Debtor may incur upon the conclusion of the tax audit.  If the incurrence of claims against the Debtor by the IRS was caused by actions taken by Dr. Zhang, the estate may have claims against Dr. Zhang.

- <u>Dismissal of Adnan Tahirovic</u>.  The Debtor has provided vague disclosures regarding its termination of its former COO, Adnan Tahirovic, based on purported overpayments received by Mr. Tahirovic.  An examiner should investigate the circumstances of and grounds for Mr. Tahirovic's termination.  In addition, an examiner should investigate whether claims can be brought against Mr. Tahirovic on behalf of the estate.

21.    No statutory committee has been appointed in this case, so no committee has ever investigated these claims.  Nor has any truly independent, unconflicted party ever investigated these claims.  Investigation of these issues may uncover valuable claims for the estate.  The Landlord requests that, at a minimum, the scope of the examiner's investigation encompass the above areas of investigation.

## II.    **Appointment Of An Examiner Is Also Appropriate Under Section 1104(c)(2)**

22.    The appointment of an examiner is appropriate under section 1104(c)(2) as well where a party in interest moves for an examiner and the debtor's fixed, liquidated, unsecured non-insider debts exceed $5 million.  11 U.S.C. § 1104(c)(2).

23.    The Debtor scheduled $5.7 million unsecured, liquidated non-insider claims in its Schedules of Assets and Liabilities (collectively, the "<u>Schedules</u>").  The Court has further determined that the amount of liquidated, non-contingent debt is well above $7.5 million in

connection with the Court's ruling on the Landlord's objection to the Debtor's designation as a subchapter V debtor.

24.     Based on the credible allegations of mismanagement and insider transactions, the absence of any statutory committee to investigate claims, and the Debtor's own reluctance to even disclose (never mind investigate) these issues, together with the satisfaction of the condition under section 1104(c)(2) that the Debtor's fixed, liquidated, unsecured non-insider debts exceed $5 million, appointment of an examiner is appropriate in this case.

**III.     The Examiner Should Be Granted Unfettered Access To Privileged Materials And Control Over The Debtor's Privileges With Respect To The Transactions Under Investigation**

25.     The Court's order appointing an examiner also should provide that the examiner has (i) unfettered access to documents and information otherwise subject to a privilege held by the Debtor, including the attorney-client privilege, and (ii) the right to include such privileged information in the report provided to the Court, with a redacted copy to be made available to other interested parties.  The examiner should also be granted control over the privilege, including the right, in his or her discretion, to include otherwise privileged information in a publicly filed report, even if doing so could operate to waive any such privilege.  If allowed to control access to privileged documents and information, the Debtor's management could use the privilege as a shield to frustrate and thwart the examiner's investigation and report.

26.     A number of courts have recognized that an examiner (even without expanded powers) is entitled to access to privileged documents and has the right to waive the privilege. For example, in *In re Enron Corp.*, the court appointed an examiner to investigate various transactions and order the debtors to provide the examiner with "all documents and information that the Enron Examiner deems relevant to discharge duties under this Order," without any exception for privileged materials.  *In re Enron Corp.*, Case No. 01-16034 (AJG) (Bankr.

S.D.N.Y. Apr. 9, 2002) [ECF No. 2838]. The *Enron* court further granted the examiner the power to waive the privilege on a limited, issue-by-issue basis subject to consultation with the debtors and the creditors' committee. *Id.*

27.     Similarly, in *In re Dynegy Holdings*, the court ordered the appointment of an examiner and provided that the examiner's investigation would be "unfettered," and must include access to information designated as "privileged" or "work product" by the debtors. *In re Dynegy Holdings*, Case No. 11-38111 (CGM) (Bankr. S.D.N.Y. Dec. 29, 2011) [ECF No. 276]. The *Dynegy* court further authorized the examiner to include "confidential or privileged material in any report submitted to the Court," with the caveat that the complete report would be filed under seal and, to the extent any party claimed privilege or confidentiality as to any portion of the report, a redacted copy would be transmitted to other parties and filed on the docket. *Id.* A copy of the order appointing an examiner in the *Dynegy Holdings* case is annexed hereto as Exhibit B.

28.     The examiner appointed in this case should also be governed by similar protocols regarding privileged materials implemented by the courts in *Enron* and *Dynegy Holdings*. The procedures in those cases balance, on the one hand, the need for an examiner to have "unfettered" access to privileged materials in a manner that does not thwart the examiner's investigation and report and, on the other hand, the need to protect privileged information from inadvertent waiver.

**IV.     Eric Huebscher Should Be Appointed As The Examiner**

29.     The Landlord recognizes that selection of the examiner is a decision to be made by the Office of the United States Trustee. The Landlord respectfully submits that Eric Huebscher should be appointed as the examiner, with the ability for Mr. Huebscher to retain counsel if he deems it necessary. He was appointed the Subchapter V Trustee when the case was

commenced as a subchapter V case, and all parties (including the Debtor) acknowledged his qualifications and experience with medical practices. Mr. Huebscher is uniquely qualified to be appointed as the examiner in this particular case because of his depth of experience with the operations of medical practices generally, and his substantial involvement in this case as a subchapter V trustee specifically. With the head-start Mr. Huebscher has, his appointment as the examiner will be cost effective and the estate will benefit from the information about this case that he already knows. The appointment of Mr. Huebscher as examiner would allow any investigation of the areas of inquiry set forth above to proceed both effectively and efficiently.

WHEREFORE, for all the reasons set forth herein, the Landlord respectfully requests that the Court order the appointment of an examiner to investigate the transactions and areas of concern described herein, and grant the Landlord such other and further relief as the Court deems just and proper.

Dated: New York, New York
        November 17, 2023

RUBIN LLC

By: ___*/s/ Paul A. Rubin*_____
        Paul A. Rubin
        Hanh V. Huynh
        11 Broadway, Suite 715
        New York, New York 10004
        Tel: 212.390.8054
        Fax: 212.390.8064
        prubin@rubinlawllc.com
        hhuynh@rubinlawllc.com

        *Counsel for GLL BVK Columbus Circle LLC*

# EXHIBIT A

# (PROPOSED ORDER)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                        :
In re:                                                  :    Chapter 11
                                                        :
ZHANG MEDICAL P.C., d/b/a NEW HOPE                      :    Case No.:  23-10678-pb
FERTILITY CENTER,                                       :
                                                        :
               Debtor.                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## ORDER APPOINTING EXAMINER

Upon the motion (the "Motion")[1] [ECF No.  ] of GLL BVK Columbus Circle LLC (the

"Landlord") for entry of an order appointing an examiner pursuant to section 1104(c) of title 11 of

the United States Code (the "Bankruptcy Code") in the above-captioned chapter 11 case (the

"Chapter 11 Case") of Zhang Medical P.C. d/b/a New Hope Fertility Center (the "Debtor"); and

this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to

28 U.S.C. § 1334; and consideration of the Motion and the relief requested therein being a core

proceeding pursuant to 28 U.S.C. § 157(b); and proper and adequate notice of the Motion having

been given; and a hearing to consider the Motion having been held before this Court on [  ], 2023

(the "Hearing"); and upon the record of the Hearing and all of the other proceedings had before

the Court, and after due deliberation and sufficient cause appearing therefor; it is **HEREBY**

**ORDERED AS FOLLOWS:**

1.     The Motion is granted to the extent set forth herein.

2.     Pursuant to section 1104(d) of the Bankruptcy Code, the United States Trustee,

after consultation with parties in interest, shall appoint an examiner in the Chapter 11 Case, with

the examiner's investigation to run for a 45-day period from the date of entry of this Order (the

---

[1] Capitalized terms not defined in this Order shall have the meaning ascribed to them in the Motion.

"Approval Date"), without prejudice to the examiner to seek one or more extensions of the 45-day

investigation period.

3.    Pursuant to section 1106 of the Bankruptcy Code, the examiner shall conduct an

unfettered investigation of the Debtor and report to the Court and parties in interest in the Chapter

11 Case with respect to the following areas:

- Claims Against Zhang Owned Entities, Including Columbus Circle OB/GYN Services, Inc. ("CCOGS") and New Hope MSO, Inc. ("MSO").  The examiner shall investigate whether funds in CCOGS and MSO accounts were transferred pre-petition to parties other than the Debtor in the four-year period preceding the Petition Date.

- Claims Against Dr. Zhang.  The examiner shall investigate whether the estate has claims against Dr. Zhang on account of the inflation of his compensation for the two-year preceding the Debtor's bankruptcy filing, and whether Dr. Zhang may also have caused the Debtor to make improper payments to him or for his benefit (including by paying his personal expenses) that may be recoverable for the benefit of the estate.

- Disguised Compensation to Chloe Cai.  The examiner shall investigate whether the estate has claims against the Debtor's CEO, Chloe Cai, and/or Soyo Wellness, Inc. ("Soyo").

- Interviews of Accountants.  The examiner shall investigate the reasons for dismissal of the Debtor's prior accountants and whether the accountants were terminated after uncovering either wrongdoing by an insider or improper bookkeeping practices.

- Post-Petition Payments of Pre-Petition Debts.  The examiner shall investigate the Debor's post-petition payments of pre-petition debts, including reporting the amounts, dates, recipients, and purpose of transfers, and determine the propriety of such transfers and whether any such transfers can or should be recovered for the benefit of the estate.

- Potential Claims Against the Debtor Resulting from the IRS Audit.  The examiner shall investigate whether the estate has claims against Dr. Zhang in connection with any additional tax liabilities or penalties that the Debtor may incur upon the conclusion of the tax audit.

- Dismissal of Adnan Tahirovic.  The examiner shall investigate the circumstances of and grounds for the termination of the Debtor's former COO, Adnan Tahirovic, and whether claims can be brought against Mr. Tahirovic on behalf of the estate.

4.      The examiner shall be permitted to interview any party in interest, including, but not limited to, the Debtor, Dr. Zhang, Chloe Cai, Adnan Tahirovic, and the Debtor's present and prior employees, advisors and professionals, to the extent the examiner reasonably believes such persons have information relevant to the topics of investigation set forth herein.  Such persons shall make themselves available to the examiner at such times and places as the examiner may reasonably request and upon reasonable notice.

5.      The examiner will meet and confer with the advisors for the Debtor and the Landlord to receive regular updates with respect to investigations of the topics of investigation and to assure that such investigations are progressing in an independent, expeditious, and cost-effective manner.

6.      Pursuant to section 1106(a)(4) of the Bankruptcy Code, the examiner shall file on the docket of the Chapter 11 Case a written report (redacted as necessary to comply with the provisions of this Order) of his or her investigation no later than forty-five (45) days after the Approval Date, and shall transmit a copy of any such report (redacted as necessary to comply with the provisions of this Order) to the Debtor, the United States Trustee, the Landlord, and any other entity that the Court may designate.  To the extent that the examiner must include confidential or privileged material in any report submitted to the Court, the complete report shall be made only to the Court, under seal, with a copy to the party claiming privilege or confidentiality, and such report shall be redacted or otherwise protected prior to the examiner's transmission of it to other parties. The redacted report, if any, shall be filed on the docket of the Chapter 11 Case.  The Debtor may designate any information as "privileged," "work product" or "confidential," in which case the examiner shall treat such information as designated, unless otherwise ordered by the Court;

*provided, however,* that the examiner or any party in interest may challenge such designation and the Court shall have jurisdiction to determine any such challenge.

7.      In accordance with Rule 502(d) of the Federal Rules of Evidence, all privileges, protections, confidentiality and immunities (including, without limitation, the attorney-client privilege and the work product doctrine) shall remain in full force and effect as to any information provided to the examiner, and shall not be waived or in any way impaired in connection with the Chapter 11 Case (including in connection with any current or subsequent adversary proceeding or contested matter in the Chapter 11 Case) or in any other Federal, State or other proceeding outside the Chapter 11 Case by disclosure or production to the examiner of any materials protected by such privileges, protections, confidentiality and immunities, or compliance with any other aspect of this Order.

8.      The examiner may retain counsel and other professionals if he or she determines that such retention is necessary to discharge his or her duties, with such retention to be subject to Court approval under standards equivalent to those set forth in sections 327 and 330 of the Bankruptcy Code.

9.      The examiner and any professionals retained by the examiner pursuant to any order of this Court shall be compensated and reimbursed for their expenses pursuant to any procedures for interim compensation and reimbursement of professionals that are established in the Chapter 11 Case, with compensation and reimbursement of the examiner being determined pursuant to section 330 of the Bankruptcy Code, and compensation and reimbursement of the examiner's professionals being determined pursuant to standards equivalent to those set forth in section 330 of the Bankruptcy Code.

10.     The examiner shall have the standing of a party in interest with respect to matters that are within the scope of his or her investigation; *provided, however*, that the examiner may not be called to testify except by this Court.

11.     The examiner is authorized, upon motion(s) made and order(s) issued pursuant to Bankruptcy Rule 2004, to issue subpoenas as may be necessary to compel the production of documents and the testimony of witnesses in connection with his or her investigation.

12.     The Debtor is directed to cooperate fully and to utilize reasonable best efforts to cause its present and former directors, officers, employees and professionals, to cooperate fully with the examiner and to provide unfettered access to the examiner in conjunction with the performance of any of the examiner's duties and investigation and to promptly turn over, and otherwise promptly make available to, the examiner all information (including witness interviews) requested by the examiner.

13.     If the examiner seeks the disclosure of documents or information (whether written or oral) as to which the Debtor asserts a claim of privilege or other protection from disclosure, including, without limitation, the attorney-client privilege and/or the work product doctrine, or documents or information (whether written or oral) that are confidential (including pursuant to any confidentiality agreement), (i) the Debtor shall not claim or assert, (ii) the Debtor shall utilize reasonable best efforts to cause its present and former directors, officers, employees and professionals not to claim or assert that any privilege, protection, confidentiality or immunity belonging to or assertable by the Debtor precludes the production or disclosure of documents or information (whether written or oral, including witness interviews) requested by the examiner; *provided, however*, that pursuant to the above provisions of this Order, no such production or disclosure shall constitute a waiver of any applicable privilege, protection, confidentiality or

immunity (including, without limitation, the attorney-client privilege or the work product doctrine) pursuant to Rule 502(d) of the Federal Rules of Evidence.

14.    Until the examiner has filed his or her report (and any subsequent report as may be ordered by the Court), neither the examiner nor the examiner's professionals or agents shall make any disclosures other than to the Court (or as ordered by the Court), if requested, concerning the results of the examiner's investigation and any conclusions reached.

15.    Nothing in this Order shall impede the rights of the United States Trustee, the Debtor, the examiner, the Landlord or any other party in interest to request any other lawful relief, not limited to a request to further modify the scope of the investigation, if during the investigation other relevant matters are revealed which the examiner or other party believes should be brought to the attention of the Court.

16.    The Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated:  New York, NY
        [  ], 2023

_____
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT B

## (DYNEGY HOLDINGS EXAMINER ORDER)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                               :

In re:                          :        **Chapter 11**
                                 :

**DYNEGY HOLDINGS, LLC, et al.,**[1]   :     **Case No. 11-38111 (CGM)**
                               :

            **Debtors.**         :        **Jointly Administered**
                               :
-------------------------------------------------------------------x

## ORDER GRANTING THE MOTION OF U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE, FOR APPOINTMENT OF AN EXAMINER PURSUANT TO SECTION 1104(c) OF THE BANKRUPTCY CODE

Upon the *Motion of U.S. Bank National Association, as Indenture Trustee, for Appointment of an Examiner Pursuant to Section 1104(c) of the Bankruptcy Code* (the "**Motion**", ECF No. 48)[2] requesting entry of an order approving and directing the appointment of an independent examiner in Dynegy Holdings' ("**DH**") case pursuant to section 1104(c) of the Bankruptcy Code; and upon the *Joinder of Appaloosa Management L.P. to Motion of U.S. Bank National Association for Mandatory Appointment of an Examiner Pursuant to Section 1104(c) of the Bankruptcy Code* (ECF No. 149), and the *Response of the Official Committee of Unsecured Creditors to (A) the Lease Rejection Motion, (B) the Motion to Appoint an Examiner and (C) the Application to Retain White & Case, LLP as Special Counsel* (ECF No. 181); and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and due and proper notice of the Motion having been provided; and it appearing that

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are Dynegy Holdings, LLC (8415); Dynegy Northeast Generation, Inc. (6760); Hudson Power, L.L.C. (NONE); Dynegy Danskammer, L.L.C. (9301); and Dynegy Roseton, L.L.C. (9299).

[2] Terms used but not defined herein shall have the meaning ascribed to them in the Motion.

no other or further notice need be provided; and the Court having heard the statements in support of and against the relief requested in the Motion at the hearing before the Court held on December 16, 2011 (the "**Hearing**"); and the Court having determined that appointment of an examiner in DH's chapter 11 case is mandatory as the statutory predicates of section 1104(c)(2) of the Bankruptcy Code have been satisfied; and upon all of the proceedings had before the Court and after due deliberation; it is hereby

      **ORDERED** that the Motion is granted to the extent provided herein; and it is further

      **ORDERED** that pursuant to section 1104(d) of the Bankruptcy Code, the United States Trustee shall, in consultation with DH, the official creditors' committee (the "**Creditors' Committee**"), and other parties in interest, appoint an examiner in DH's chapter 11 case, with the examiner's investigation to run for a sixty-day period from the date of entry of the Court's order approving the appointment of the examiner (the "**Approval Date**"), without prejudice to renewal by the Court; and it is further

      **ORDERED** that pursuant to section 1106 of the Bankruptcy Code, the examiner shall conduct an **_unfettered_** investigation of the Debtors and report to the Court and parties in interest in the Debtors' cases, with respect to: (i) the conduct of the Debtors in connection with the prepetition 2011 restructuring and reorganization of the Debtors and their non-Debtor affiliates (including, without limitation, **_pre-petition transactions_** ~~those transactions which were described in the Motion~~)**_; (ii) any possible fraudulent conveyances;_** and (ii**_i_**) whether DH is capable of confirming a chapter 11 plan; and it is further

      **ORDERED** that the Creditors' Committee cannot "tag along" in the examiner's investigation; and it is further

**ORDERED** that pursuant to section 1106(a)(4) of the Bankruptcy Code, the examiner shall file on the docket for DH's chapter 11 case a written report (redacted as necessary to comply with the provisions of this Order) of his or her investigation no later than sixty (60) days after the Approval Date as ordered above, and shall transmit a copy of any such report (redacted as necessary to comply with the provisions of this Order) to the Debtors, the United States Trustee, the Creditors' Committee, any other official committee, any indenture trustee (including the Indenture Trustee), and any other entity that the Court may designate*. **_To the extent that the examiner must include confidential or privileged material in any report submitted to the Court, the complete report shall be made only to the Court, under seal, with a copy to the party claiming privilege or confidentiality, and such report shall be redacted or otherwise protected prior to the examiner's transmission of it to other parties. The redacted report, if any, shall be filed on the docket of Case No. 11-38111._*~~; provided, that to the extent the examiner's report attaches, discusses, references or otherwise discloses documents or information that are confidential or privileged, the examiner shall (a) file a redacted copy of the examiner's report (to remove any privileged or confidential information) on the docket for these cases and (b) provide (i) an unredacted copy of the examiner's report only to the Court for *in camera* review and to counsel for the Debtors and (ii) a redacted copy of the examiner's report (to remove any privileged information) on a confidential basis to the United States Trustee, the Creditors' Committee, any other official committee, any indenture trustee, Dynegy, Inc., and any other entity that the Court may designate, subject to each such above-referenced entity (other than the United States Trustee) executing a confidentiality agreement, *mutatis mutandis*, in the form attached as **Exhibit A** hereto or otherwise in form acceptable to the Debtors and the Creditors' Committee (the "***Confidentiality Agreement***"), and subject in all respects to the~~

provisions of such Confidentiality Agreement; ~~provided, however, that for purposes of clause (ii)~~ ~~above, the version of the examiner's report that is provided to the Indenture Trustee and its~~ ~~advisors shall redact all privileged information, and any confidential information to the extent it~~ ~~is specifically related to any issues raised by the Indenture Trustee in its pending adversary~~ ~~proceeding in this Court, Adv. No. 11-09083-cgm (the "*Lease Adversary*"), or, to the extent not~~ ~~raised in the Lease Adversary, any claims litigation related to rejection damages claims or~~ ~~administrative claims asserted by the Indenture Trustee related to the Facility Leases, it being~~ ~~understood that this restriction is without prejudice to (x) the Indenture Trustee's ability to seek~~ ~~discovery from the Debtors in connection with the Lease Adversary or any claims litigation~~ ~~related to the Facility Leases, and (y) the Creditors' Committee's ability to contest the Debtors'~~ ~~designation of information as "Restricted Information" as to the Indenture Trustee and its~~ ~~advisors pursuant to the Confidentiality Agreement~~. The Debtors (or any of them) may designate any information as "privileged", "work product" or "confidential", in which case the examiner shall treat such information as designated, unless otherwise ordered by this Court; provided, that the examiner or any party in interest may challenge such designation and the Court shall have jurisdiction to determine any such challenge; and it is further

**ORDERED** that in accordance with Rule 502(d) of the Federal Rules of Evidence, all privileges, protections, confidentiality and immunities (including, without limitation, the attorney-client privilege and the work product doctrine), shall remain in full force and effect as to any information provided to the examiner, and shall not be waived or in any way impaired in connection with these chapter 11 cases (including in connection with any current or subsequent adversary proceeding or contested matter in these chapter 11 cases) or in any other Federal, State or other proceeding outside these chapter 11 cases by disclosure or production to

the examiner of any materials protected by such privileges, protections, confidentiality and immunities, or compliance with any other aspect of this Order; and it is further

**ORDERED** that the examiner may retain counsel and other professionals if he or she determines that such retention is necessary to discharge his or her duties, with such retention to be subject to Court approval under standards equivalent to those set forth in sections 327 _**and 330**_ of the Bankruptcy Code; and it is further

**ORDERED** that, subject to the provisions below regarding a proposed budget for the examiner's investigation (which proposed budget shall include a good faith estimate of the fees and expenses of the examiner's proposed retained professionals), the examiner and any professionals retained by the examiner pursuant to any order of this Court shall be compensated and reimbursed for their expenses pursuant to any procedures for interim compensation and reimbursement of professionals that are established in DH's chapter 11 case, with compensation and reimbursement of the examiner being determined pursuant to section 330 of the Bankruptcy Code, and compensation and reimbursement of the examiner's professionals being determined pursuant to standards equivalent to those set forth in section 330 of the Bankruptcy Code; and it is further

**ORDERED** that the examiner shall have the standing of a party in interest with respect to matters that are within the scope of his or her investigation; provided, that the examiner may not be called to testify except by this Court; and it is further

**ORDERED** that the examiner is authorized, upon motion(s) made and order(s) issued pursuant to Bankruptcy Rule 2004, to issue subpoenas as may be necessary to compel the production of documents and the testimony of witnesses in connection with his or her investigation; and it is further

**ORDERED** that the Debtors are directed to cooperate fully and to (i) cause their respective present directors, officers, employees and professionals, and (ii) utilize reasonable best efforts to cause their respective former directors, officers, employees and professionals, to cooperate fully with the examiner and to provide unfettered access to the examiner in conjunction with the performance of any of the examiner's duties and investigation and to promptly turn over, and otherwise promptly make available to, the examiner all information (including witness interviews) requested by the examiner; and it is further

**ORDERED**, that if the examiner seeks the disclosure of documents or information (whether written or oral) as to which DH or any of the other Debtors asserts a claim of privilege or other protection from disclosure, including, without limitation, the attorney-client privilege and/or the work product doctrine, or documents or information (whether written or oral) that are confidential (including pursuant to any confidentiality agreement), (i) the Debtors shall not claim or assert, (ii) the Debtors shall cause their respective present directors, officers, employees and professionals not to claim or assert, and (iii) the Debtors shall utilize reasonable best efforts to cause their respective former directors, officers, employees and professionals not to claim or assert, that any privilege, protection, confidentiality or immunity belonging to or assertable by DH or any of the other Debtors precludes the production or disclosure of documents or information (whether written or oral, including witness interviews) requested by the examiner; provided, that pursuant to the above provisions of this Order, no such production or disclosure shall constitute a waiver of any applicable privilege, protection, confidentiality or immunity (including, without limitation, the attorney-client privilege or the work product doctrine) pursuant to Rule 502(d) of the Federal Rules of Evidence; and is further

**ORDERED** that within ten (10) business days after the Approval Date, the examiner shall file with the Court a proposed work plan that shall include, but not be limited to, (a) an estimated budget of the costs and expenses related to the examiner's investigation, (b) a preliminary list of issues the examiner believes will be the subject of his or her investigation, and (c) a proposed timeline for requesting and obtaining information from the Debtors and other parties and conducting the investigation; and it is further

**ORDERED** that until the examiner has filed his or her report (and any subsequent report as may be ordered by the Court), neither the examiner nor the examiner's professionals or agents shall make any disclosures other than to the Court (or as ordered by the Court), if requested, concerning the results of the examiner's investigation and any preliminary and final conclusions reached; and it is further

**ORDERED** that the examiner may make reasonable efforts to facilitate discussions among parties in interest regarding issues of contention in the Debtors' cases (including with respect to plan negotiations), and may act as mediator between or among parties in interest to the extent the examiner determines mediation may be beneficial to the progress of these cases; provided, that all discussions and correspondence relating to mediation shall be confidential and not admissible (or discoverable) in any proceeding and no party may disclose any document, information, offer, or counteroffer provided by another party in connection with mediation without the consent of the parties in mediation; and it is further

**ORDERED** that nothing in this Order shall impede the rights of the United States Trustee, the Creditors' Committee, DH, the other Debtors, the examiner, the Indenture Trustee or any other party in interest to seek (or oppose) any other relief from this Court; and it is further

**ORDERED** that the Court shall retain jurisdiction with respect to all matters

arising from or related to the implementation of this Order.


Dated:    Poughkeepsie, New York
            December 29, 2011

                                        */s/ Cecelia G. Morris*
                                        UNITED STATES BANKRUPTCY JUDGE