UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

In re:                                                                            Chapter 11

    ZHANG MEDICAL P.C. d/b/a                           Case No. 23-10678 (PB)
    NEW HOPE FERTILITY CLINIC,

                             Debtor.

------------------------------------------------------------------x

# MODIFIED BENCH RULING GRANTING LANDLORD'S OBJECTION TO DEBTOR'S SUBCHAPTER V DESIGNATION

**APPEARANCES:**

PARDALIS & NOHAVICKA LLP
*Proposed Counsel for the Debtor and*
*Debtor-in-Possession*
950 Third Avenue, 11th Floor
New York, New York 10022
By: Norma E. Ortiz

RUBIN LLC
*Counsel for GLL BVK Columbus Circle LLC*
11 Broadway, Suite 715
New York, New York 10004
By: Paul A. Rubin


**Hon. Philip Bentley**
**U.S. Bankruptcy Judge**

1

#### INTRODUCTION[1]

Zhang Medical P.C. (the "Debtor") is not a typical subchapter V debtor. The Debtor operates a fertility clinic in Manhattan with an international clientele and a reputation for employing cutting-edge techniques. The Debtor has over 90 employees and generated gross revenues of over $27 million during the last fiscal year.

Before the Court is the objection of the Debtor's landlord, GLL BVK Columbus Circle LLC (the "Landlord"), to the Debtor's designation as a small business debtor under subchapter V of Chapter 11 of the Bankruptcy Code. The Landlord contends that the debts scheduled by the Debtor or reflected in filed proofs of claim exceed the $7.5 million debt limit for subchapter V debtors set forth in Bankruptcy Code § 1182(1)(A). The Landlord also contends that, even if those debts did not exceed $7.5 million, the Debtor would still be ineligible for subchapter V because the future payments it owes over the term of its lease greatly exceed $7.5 million. For the latter argument, the Landlord relies on a recent bankruptcy court decision, *In re Macedon Consulting, Inc.*, 652 B.R. 480 (Bankr. E.D. Va. 2023), holding that future payments owed under unexpired leases and executory contracts count toward the subchapter V debt limit.[2]

The Court rules for the Landlord on the first of these two contentions, finding that the debts scheduled by the Debtor or reflected in proofs of claim exceed $7.5 million. While this finding

---

[1] On September 8, 2023, the Court read into the record its bench ruling granting the Landlord's objection to the Debtor's subchapter V designation. This decision formalizes and expands upon the Court's bench ruling.

[2] The Landlord advances a third argument as well: that the Court should strip the Debtor of subchapter V eligibility because of its post-petition failure to comply with multiple deadlines required of subchapter V debtors. Given its ruling on the Landlord's principal arguments, the Court need not and does not reach this issue. The Court notes that this issue has generated thoughtful but conflicting decisions by well-regarded bankruptcy judges across the country. *Compare In re Free Speech Sys., LLC*, 649 B.R. 729, 735 (Bankr. S.D. Tex. 2023) (Lopez, J.), and *In re ComedyMX, LLC*, 647 B.R. 457, 462–64 (Bankr. D. Del. 2022) (Goldblatt, J.), *with In re Nat'l Small Bus. All., Inc.*, 642 B.R. 345, 348–49 (Bankr. D.C. 2022) (Gunn, J.).

obviates the need for the Court to reach the *Macedon Consulting* issue, the Court addresses that issue nevertheless, because of the enormous—and in the Court's view detrimental—impact that ruling, if followed, would have in limiting eligibility for subchapter V relief. The Court concludes that, contrary to *Macedon Consulting*, a debtor's future payment obligations under its unexpired leases and executory contracts should rarely, if ever, be counted toward the subchapter V debt cap.

## FACTUAL BACKGROUND

For more than two decades, the Debtor has operated a medical office in Manhattan, providing fertility services under the name New Hope Fertility Clinic. Its medical director and founder, Dr. John Zhang, is a recognized researcher and innovator in the field of *in vitro* fertilization and other forms of assisted reproductive technology.[3] With more than 90 employees, the Debtor serves an international clientele and claims to enjoy a worldwide reputation. In the fiscal year preceding the bankruptcy, the Debtor generated gross revenues of over $27 million.

Since 2001, the Debtor has operated out of medical offices located on Columbus Circle, which it leases from the Landlord. In 2018, anticipating the potential expansion of its business, the Debtor entered into an amended lease (the "Lease") with the Landlord, under which it leased an additional two floors in the building, doubling the amount of its leased space. The Debtor planned to sublet these two additional floors until it needed to use them, but following the onset of the COVID-19 pandemic, it was unable to do so. As a result of its inability to sublet these two floors, coupled with other pandemic-related business strains, the Debtor fell far behind on its rent. On April 30, 2023, the Debtor commenced this case under subchapter V of chapter 11 of the

---

[3] Dr. Zhang gained international attention in 2016, when he employed a novel technique to create the world's first "three-parent baby." Working with a Jordanian couple who had lost six babies to a heritable neurological disorder, Dr. Zhang extracted the portion of the woman's DNA not linked to the disorder and inserted it into a healthy donor egg, which the woman's husband fertilized. The apparent success of this technique was widely noted.

3

Bankruptcy Code. The Debtor moved to reject the Lease two months later, and the Court granted that motion the following month.

On August 15, 2023, the Landlord filed its objection, pursuant to Rule 1020(b) of the Federal Rules of Bankruptcy Procedure, to the Debtor's designation as a subchapter V debtor (the "Objection").[4] The Court heard oral argument on September 7, 2023, after the completion of briefing. The facts at issue were undisputed, and the parties relied solely on the paper record. On September 8, the Court issued a bench ruling sustaining the Objection.

## DISCUSSION

**I.    General Standards Governing Eligibility for Subchapter V**

In 2019, to help small businesses navigate bankruptcy more effectively, Congress enacted the Small Business Reorganization Act (the "SBRA"). The SBRA created a new subchapter—subchapter V—within chapter 11 of the Bankruptcy Code to address the hurdles small businesses had been facing in attempting to reorganize. *See* 11 U.S.C. §§ 1181-1195.

Subchapter V simplifies and streamlines the reorganization process in a host of ways designed to reduce the cost and length of chapter 11 cases and to increase the prospects for a successful reorganization. *See generally* Christopher D. Hampson & Jeffrey A. Katz, *The Small Business Prepack: How Subchapter V Paves the Way for Bankruptcy's Fastest Cases*, 92 GEO. WASH. L. REV. __ (forthcoming 2024); Christopher G. Bradley, *The New Small Business Bankruptcy Game: Strategies for Creditors Under the Small Business Reorganization Act*, 28 AM. BANKR. INST. L.R. 251 (2020). The subchapter also makes it easier for the debtor's owners to

---

[4] The Objection was filed prior to the completion of the Debtor's meeting of creditors under Bankruptcy Code § 341 and was therefore timely. *See* FED. R. BANKR. P. 1020(b) (objection to subchapter V designation must be filed within 30 days after completion of § 341 meeting).

4

retain ownership of the company, by eliminating the absolute priority rule in cramdown cases and, in its place, requiring the debtor to pay off its secured debt and to pay its "disposable income" to unsecured creditors for three to five years. *See* 11 U.S.C. § 1191.

To be eligible for subchapter V, the debtor must have "noncontingent liquidated" debts as of the petition date that do not exceed $7.5 million. Specifically, Bankruptcy Code § 1182 defines an eligible debtor as "a person engaged in commercial or business activities . . . that has aggregate noncontingent liquidated secured and unsecured debts, as of the date of the filing of the petition or the date of the order for relief, in an amount not more than $7,500,000 (excluding debts owed to 1 or more affiliates or insiders) . . . ." 11 U.S.C. § 1182(1)(A).

The Second Circuit Court of Appeals addressed the meaning of the terms "noncontingent" and "liquidated" at some length in *Mazzeo v. United States (In re Mazzeo)*, 131 F.3d 295 (2d Cir. 1997). That case was not a subchapter V case; instead, it arose in the analogous context of the debt limit for chapter 13 eligibility.[5] *Id.* at 298. Mazzeo was a corporate officer, whose eligibility for chapter 13 hinged on the characterization of his liability, under New York State's "responsible person" statute, for having failed to remit employee withholding taxes to the state. *Id.* at 298-99. The bankruptcy court held that Mazzeo's resulting liability was both noncontingent and liquidated, causing his total noncontingent, liquidated, unsecured debts to exceed the chapter 13 debt cap. *Id.* at 300.

---

[5] Eligibility for chapter 13, like subchapter V, is subject to a debt cap. For a debtor to be eligible to proceed under chapter 13, his or her "noncontingent, liquidated, unsecured debts" may not exceed a specified amount ($250,000 at the time *Mazzeo* was decided, but subsequently increased to $ 2,750,000). *See* 11 U.S.C. § 109(e). The Court is aware of no reason why the Second Circuit's construction of the terms "noncontingent" and "liquidated" as used in § 109(e) should be any less applicable to those terms as used in § 1182(1)(A).

5

The Second Circuit affirmed, based on a careful review of the statutory terms "noncontingent" and "liquidated." *Id.* at 301. Starting with the first of these, the court held that the debtor's responsible-person liability was noncontingent because, under the governing statute, his obligation to pay had arisen when he failed to remit the taxes collected from the company's employees:

> It is generally agreed that a debt is contingent if it does not become an obligation until the occurrence of a future event, but is noncontingent when all of the events giving rise to liability for the debt occurred prior to the debtor's filing for bankruptcy.

*Id.* at 303 (2d Cir. 1997); *see also id.* ("A taxpayer's duty to pay taxes . . . arises upon his nonpayment of the taxes when due.").

Turning to the second requirement—"liquidated"—the Second Circuit held that the debtor's statutory liability was liquidated because the amount could be easily ascertained by reference to the statute and the company's tax returns:

> If the value of the claim is easily ascertainable, it is generally viewed as liquidated. If that value depends instead on a future exercise of discretion, not restricted by specific criteria, the claim is unliquidated.

*Id.* at 304 (internal citations and quotations omitted); *see also id.* ("'courts have generally held that a debt is "liquidated" . . . where the claim is determinable by reference to an agreement or by a simple computation.'") (quoting 2 L. King, *Collier on Bankruptcy* ¶ 109.06[2][c] (15th ed. rev. 1997)).

The procedural requirements for determining a debtor's total noncontingent liquidated debt are also well established. The court may look both to the debtor's schedules and to creditors' proofs of claim. *See In re Hall*, 650 B.R. 595, 600 (Bankr. M.D. Fla. 2023); *In re Stebbins*, Case No. 15-CV-1196, 2016 WL 1069077, at *4 (Bankr. E.D.N.Y. Mar. 17, 2016). Proofs of claim are *prima facie* valid. *See* FED. R. BANKR. P. 3001(f). Because the debtor bears the ultimate burden of proving

its eligibility for subchapter V, proofs of claim that the debtor does not challenge may be deemed valid for subchapter V eligibility purposes. *See In re Port Arthur Steam Energy, L.P.*, 629 B.R. 233, 235 (Bankr. S.D. Tex. 2021).

    **II.**    **The Debtor's Noncontingent Liquidated Debts as of the Petition Date Exceed $7.5 Million**

Applying these principles, it is clear that the noncontingent liquidated debts scheduled by the Debtor or reflected in proofs of claim substantially exceeded $7.5 million as of the petition date.

The Debtor scheduled $5,797,128 in noncontingent liquidated debts as of the petition date. In addition, 27 of the scheduled creditors filed proofs of claim asserting claims in larger amounts than the Debtor had scheduled. If one adds up all the claims scheduled by the Debtor as noncontingent and liquidated and, for each claim, takes the higher of the scheduled amount or the amount stated in the proof of claim, the resulting total is $10,468,441 in noncontingent liquidated debts.

At the hearing on the Landlord's Objection, the Debtor challenged only one of the filed proofs of claim—the Landlord's claim—and, in addition, objected to only one portion of that claim, namely, a $1,338,757 charge triggered by the filing of a mechanic's lien. The Debtor did not contest the remainder of the Landlord's claim or any other proofs of claim. As a result, it is undisputed that the Debtor had at least $9,129,684 in noncontingent liquidated debts as of the petition date (*i.e.*, $10,468,441 minus $1,338,757). This alone is a sufficient basis to sustain the Landlord's objection.

As a double-check on the validity of this conclusion, the Court conducted its own review of the Landlord's proof of claim, which totals $7,007,487 and is by far the largest claim filed against the Debtor. The Landlord's claim has five components:

7

1. Unpaid rent ($1,628.745);

2. A rent credit clawback ($1,418,147);

3. Replenishment of the security deposit ($2,458,665);

4. A claim arising from the filing of a mechanic's lien securing the Debtor's unpaid obligations for materials and services ($1,338,757); and

5. Other charges, including interest ($152,344), legal fees ($56,646), and late fees ($3,500).

A review of these components confirms that four of the five—all but the claim relating to the mechanic's lien—should be counted toward the subchapter V debt limit.

 A. Unpaid rent. The Landlord's claim for unpaid rent is noncontingent, under the Second Circuit's definition of that term, since it was triggered by prepetition events. *See Mazzeo,* 131 F.3d at 303. It is also liquidated, since the amount of rent is specified in the Lease and the unpaid amount is easily calculable. *See id.* at 304.

 B. Rent credit clawback. The Landlord's rent credit clawback claim is also noncontingent and liquidated. This claim arose from the Second Amendment to the Lease, which abated the Debtor's obligation to pay rent for two of the leased floors for a seven-month period (January to July 2022), contingent on there being no monetary default under the Lease prior to December 31, 2024. There is no dispute that the Debtor committed a monetary default under the Lease between the execution of the Second Amendment and the petition date. Thus, the rent credit clawback is a noncontingent claim because it is based entirely on pre-petition events. It is also liquidated because it is easily calculable under the Lease.

 C. Replenishment of security deposit. Similarly, the Landlord's claim attributable to the Debtor's failure to replenish the security deposit is noncontingent, because the event triggering the Debtor's duty to replenish that deposit (the Landlord's application of the deposit to rent arrearages)

8

occurred prepetition. And the claim is liquidated, because the amount of the security deposit is provided for in the Lease.

D. Mechanic's lien. The Debtor is correct that the portion of the Landlord's claim attributable to the mechanic's lien, for breach of the Debtor's obligation to keep the leased premises free of liens, should be excluded from the debt calculation. The Court's calculation of the Debtor's noncontingent liquidated debts, discussed above, includes the full amount of the mechanic's lienholder's claim, and this portion of the Landlord's claim duplicates that amount. Consequently, to include this portion of the Landlord's claim in the subchapter V debt calculation would "double count" the same debt.

E. Other charges. The Landlord's claims for other charges—late fees, attorneys' fees and interest—are also noncontingent and liquidated. Each of these claims arose entirely from pre-petition events, and each is readily calculable.

For these reasons, the Debtor's noncontingent liquidated debts as of the petition date exceed the $7.5 million debt limit set forth in Bankruptcy Code § 1182(1)(A), and the Debtor is ineligible to proceed under subchapter V.

### III. A Debtor's Future Payment Obligations Under Executory Contracts and Unexpired Leases Should Rarely, if Ever, Be Included in the Subchapter V Debt Limit Calculation

As an alternate basis for its objection to the Debtor's subchapter V designation, the Landlord asks the Court to follow a recent decision by a bankruptcy court in Virginia, holding that, in determining the amount of a debtor's noncontingent liquidated debts for subchapter V eligibility purposes, courts should include the debtor's future payment obligations under its executory contracts and unexpired leases. *In re Macedon Consulting, Inc.*, 652 B.R. 480, 485-86 (Bankr. E.D. Va. 2023).

Pg 10 of 13

The debtor in *Macedon Consulting* was a software developer that, like the Debtor here, had fallen on hard times and, as a result of the COVID-19 pandemic, needed less office space than it had previously leased. *Id.* at 482. Unlike the Debtor here, Macedon Consulting moved on the petition date to reject its unexpired office leases. *Id.* at 484. The debtor's two landlords moved to dismiss the bankruptcy, and alternatively asked the court to revoke the debtor's subchapter V designation on the ground that its future rent under the leases exceeded $14 million. *Id.* Applying essentially the same definition of noncontingent debt that the Second Circuit applied in *Mazzeo,* the court held that the debtor's future rent obligations were noncontingent, because the debtor's liability for all rent over the term of the leases "arose pre-petition, on the dates the Leases were fully executed." *Id.* at 485 (quoting *In re Parking Mgmt.*, 620 B.R. 544, 556 (Bankr. D. Md. 2020)).[6]

If this ruling were followed, it would greatly restrict subchapter V eligibility, since many debtors otherwise eligible for that subchapter are parties to long-term leases or contracts with future payment obligations well in excess of $7.5 million. In this case, for example, the Debtor's future base rent payments under the Lease exceed $60 million.

The Court declines to follow *Macedon Consulting.* In the Court's view, that decision overlooks the distinctive nature of a debtor's obligations under its executory contracts and unexpired leases, which differ in key respects from other debtor obligations. As the Supreme Court has observed, an executory contract "represents both an asset (the debtor's right to the performance) and a liability (the debtor's own obligations to perform)." *Mission Products*

---

[6] The court did not base its decision on the unusual fact that the debtor had moved on the petition date, rather than on a later date, to reject its leases, even though this fact arguably could have provided a sounder basis for the court's conclusion that the debtor's lease liability was noncontingent on the petition date. *See infra,* fn. 8.

10

*Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1658 (2019). That is, a debtor's obligations under an executory contract or unexpired lease are part and parcel of a reciprocal agreement that involves benefits as well as burdens. In many instances, the benefits exceed the burdens, making the contract or lease a net asset, rather than a net liability, for the debtor.

Because some executory contracts or unexpired leases on balance are beneficial and others are detrimental to the estate, the Bankruptcy Code gives the debtor the option either to assume or to reject each such contract or lease. *See* Code § 365(a); *see generally In re Orion Pictures Corp.*, 4 F.3d 1095, 1098-99 (2d Cir. 1993) (court should approve assumption or rejection if debtor, in its reasonable business judgment, has determined that to be in the estate's best interest). If the debtor assumes a contract or lease, its obligations going forward are treated on an administrative expense basis, entitled to the highest priority. If the debtor rejects, the counterparty's future performance obligations are excused, and the counterparty is given a "rejection damages" claim against the debtor—that is, a pre-petition breach of contract claim, payable at the same cents on the dollar as other unsecured claims. *See id.* at 1098. For rejected leases, the debtor's liability is further limited by the statutory cap provided by Bankruptcy Code § 502(b)(6).

Several conclusions follow from this. First, when a debtor assumes an executory contract or unexpired lease, it is doubtful, at best, whether the debtor's future payment obligations under that contract or lease should even be considered "debts" for purposes of subchapter V's eligibility formula. As just noted, a debtor may not assume a contract or lease unless it reasonably determines this is in the estate's best interest—that is, that the contract or lease is a net asset. *Id.* at 1098-99. To consider the assumed obligations in isolation and treat them as debts would ignore that the contract as a whole is an asset, not a liability.

11

Second, until the debtor elects either to assume or to reject an executory contract or unexpired lease, the amount and nature of its obligations under that contract or lease are contingent and unliquidated. If it assumes, it will be responsible to pay all contractual obligations in hundred-cent dollars. But if it rejects, its obligations will be payable on a pre-petition basis, and the amount of those obligations will usually be much smaller—for contracts, the amount of damages caused by the debtor's breach, and for leases, the capped amount set by Code § 502(b)(6). Because the amount and nature of the debtor's obligations, as well as whether these are even "debts," depend on an uncertain future event—the debtor's election to either assume or reject—any eventual debt is both contingent and unliquidated prior to that election. *See Mazzeo*, 131 F.3d at 303; *see also* 11 U.S.C. § 1182(1)(A) (only debts that are noncontingent and liquidated "as of the date of the filing of the petition" are counted toward the subchapter V debt cap).

If a debtor were to reject a contract or lease on the petition date, it could be argued that the debtor's rejection damages liability is a noncontingent debt as of that date for purposes of the subchapter V debt limit.[7] However, such a circumstance is relatively rare, since the decision to assume or reject often turns on post-petition developments, such as negotiations with the landlord or contract counterparty, the development of a plan of reorganization, or (if the business is sold) the buyer's plans. And even a debtor that rejects a contract or lease on the petition date may well have strong arguments that its rejection liability is contingent and/or unliquidated. For example, at least one court has held that a debtor's rejection liability is contingent, for subchapter V eligibility

---

[7] In contrast to an assumed contract, which is an estate asset, a rejected contract is generally a pure liability to the estate, with no offsetting benefits. Consequently, the debtor's rejection damages liability can fairly be considered a "debt," as the Bankruptcy Code defines that term. *See* Code § 101(12) ("'debt' means liability on a claim"); § 101(5)(A) ("'claim' means right to payment, whether or not such right is . . . liquidated, unliquidated, fixed [or] contingent . . .").

12

purposes, until the court approves the debtor's decision to reject rather than assume. *See Parking Management,* 620 B.R. at 553-54. In addition, a debtor's rejection liability may be unliquidated, if the amount of liability is subject to factual disputes or other uncertainties that make it not readily calculable.[8]

In the present case, the Debtor did not reject the Lease on the petition date, but instead spent several months in post-petition negotiations with the Landlord before finally moving to reject. Consequently, the Court need not reach the issues just discussed, and the Court expresses no view on those issues. Because the Debtor did not move to reject the Lease until after the petition date, its eventual liability under the Lease was contingent and unliquidated as of that date. That liability therefore is not properly counted toward the subchapter V debt cap.

## CONCLUSION

The Debtor's noncontingent liquidated debts as of the petition date exceed the $7.5 million debt limit set forth in Bankruptcy Code § 1182(1)(A), and the Debtor therefore is ineligible to proceed under subchapter V.

Dated: New York, New York
       November 30, 2023

/s/ Philip Bentley
**Honorable Philip Bentley**
**United States Bankruptcy Judge**

---

[8] In *Macedon Consulting*, the debtor moved to reject its leases on the petition date, *see* 652 B.R. at 484, but the court did not base its decision on this fact and, as a result, did not address these issues. Curiously, the court did not hold that the debtor's petition-date motion made its rejection damages liability noncontingent by eliminating any uncertainty as to whether it would reject. Instead, the court treated the debtor's rejection as a contingent post-petition event that it should not consider. *See id.* at 485 ("post-petition events should not be used to determine eligibility for subchapter V.") On this ground, the court computed the debtor's debt under its rejected leases as the total amount of all future rent, rather than the capped rent amount specified by Bankruptcy Code § 502(b)(6). *Id.* at 485-486.

13